**No. 25-14507**

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE ELEVENTH CIRCUIT

---

United States of America,

*Plaintiff-Appellee*,

v.

Knight First Amendment Institute at Columbia University, American Oversight,

*Interested Parties-Appellants*

Donald J. Trump; Waltine Nauta; Carlos de Oliveira,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Florida

No. 9:23-cr-80101-AMC

---

### JOINT APPENDIX TO APPELLANTS' OPENING BRIEFS, VOLUME IV

---

Scott Wilkens
Jameel Jaffer
Alex Abdo
 Knight First Amendment Institute at
    Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
Tel: (646) 745-8500
scott.wilkens@knightcolumbia.org

Loree Stark
Daniel Martinez
Ronald Fein
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
Tel: (304) 913-6114
loree.stark@americanoversight.org

David Buckner
Buckner + Miles
2020 Salzedo Street
Suite 302
Coral Gables, FL 33134
Tel: (305) 964-8003

*Attorneys for Interested Party-Appellant
Knight First Amendment Institute at
Columbia University*

Barbara R. Lllanes
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Ste. 2600
Miami, FL 33131
Tel: (305) 728-0950
bllanes@gsgpa.com

*Attorneys for Interested Party-Appellant
American Oversight*

<u>INDEX OF APPENDIX</u>

Volume I

<u>Docket/Tab #</u>

District Court Docket Sheet  ......................................................................... A

Indictment, filed June 8, 2023 ...................................................................... 3

Superseding Indictment, filed July 27, 2023 ............................................... 85

## INDEX OF APPENDIX

### Volume II

Docket/Tab #

District Court's Dismissal of Superseding Indictment, filed July 15, 2024 ........................................................................................................672

Notice of Appeal by Special Counsel, filed July 17, 2024 ...................................673

Dismissal of Trump, filed July 17, 2024 ..............................................................677

Defendants' Motion to Preclude Dissemination of Special Counsel Report, filed Jan. 6, 2025 .......................................................................................679

President Donald J. Trump's Motion for Leave to Intervene or Participate as Amicus Curiae, filed Jan. 7, 2025 ...................................................681

Order Temporarily Enjoining Dissemination of Special Counsel Report, filed Jan. 7, 2025 .......................................................................................682

Order, filed Jan. 13, 2025 .....................................................................................697

Notice of Compliance to Jan. 15, 2025 Order, filed Jan. 16, 2025 ......................708

Order Granting Defendants' Emergency Motion to Preclude Release of Volume II of Special Counsel's Report, filed Jan. 21, 2025 ...........................714

Dismissal of Nauta and De Oliveira, filed Feb. 11, 2025......................................716

American Oversight's Motion to Intervene, filed Feb. 14, 2025 ..........................717

<u>INDEX OF APPENDIX</u>

Volume III

<u>Docket/Tab #</u>

Knight First Amendment Institute at Columbia University's Motion to
Intervene, filed Feb. 24, 2025 ................................................................721

Joint Status Report, filed Mar. 14, 2025...............................................738

Defendants' Waltine Nauta and Carlos De Oliveira's Opposition to
Motions to Intervene, filed Mar. 14, 2025.............................................739

United States' Response in Opposition to Motions to Intervene, filed
Mar. 24, 2025 ........................................................................................740

Reply by Knight First Amendment Institute in Support of Motion to
Intervene, filed Mar. 31, 2025 ..............................................................745

American Oversight's Consolidated Reply in Support of Motion to
Intervene, filed Mar. 31, 2025 ..............................................................746

Joint Status Report and Exhibit A (Order Holding Mandamus Petition
in Abeyance), filed Dec. 1, 2025 ...........................................................753

Order Denying Non-Party Motions to Intervene, filed Dec. 22, 2025.................760

Order Following Joint Status Report Addressing January 21, 2025
Order, filed Dec. 22, 2025 .....................................................................761

Notice of Appeal by Knight First Amendment Institute, filed Dec. 23,
2025........................................................................................................762

Notice of Appeal by American Oversight, filed Dec. 29, 2025 ...........................763

Transcript of Jan. 17, 2025 Hearing on Defendants' Emergency
Motion to Preclude Release of Volume II of Special Counsel's Report,
filed Jan. 12, 2026 .................................................................................768

## INDEX OF APPENDIX

### Volume IV

Docket/Tab #

President Trump's Unopposed Motion for an Order Prohibiting the
Release of Volume II, filed Jan. 20, 2026 ................................................... 772

United States' Response to December 22, 2025 Order, filed Jan. 23,
2026 ........................................................................................................... 773

Waltine Nauta's and Carlos De Oliveira's Expedited Motion For, and
Response in Support of, an Order Permanently Prohibiting Release of
Volume II of the Final Report Unlawfully Prepared by Jack Smith,
filed Jan. 30, 2026 ...................................................................................... 774

Joint Expedited Motion of the Knight First Amendment Institute at
Columbia University and American Oversight to Intervene for the
Purpose of Seeking a Stay of Proceedings, filed Feb. 9, 2026 ..................... 775

TAB 772

Case No. 23-cr-80101-AMC, S.D. Fla.,

Doc. 772

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DONALD J. TRUMP, WALTINE NAUTA,
and CARLOS DE OLIVEIRA,

        Defendants.

**Case No. 23-80101-CR
CANNON/REINHART**

**EXPEDITED MOTION**

## PRESIDENT DONALD J. TRUMP'S UNOPPOSED EXPEDITED MOTION FOR AN ORDER PROHIBITING THE RELEASE OF VOLUME II OF THE FINAL REPORT UNLAWFULLY PREPARED BY JACK SMITH AND HIS OFFICE

President Donald J. Trump respectfully moves, in his individual capacity and as a former defendant in this since-dismissed criminal action, for an order prohibiting the release of Volume II of the Final Report prepared by so-called "Special Counsel" Jack Smith and his office (hereafter "Volume II"). This expedited motion is filed in response to the Court's December 22, 2025, order permitting current and former parties to seek appropriate relief before the February 24, 2026, expiration of the current injunction barring release.[1]

This motion follows from the Court's prior determinations that Smith's appointment and funding violated the Appointments and Appropriations Clauses of the United States Constitution, rendering all acts undertaken by Smith—including his preparation and submission of Volume II— *ultra vires* and void. The potential, improper release of Volume II would constitute an irreversible violation of this Court's constitutional rulings in the underlying criminal action and of bedrock principles of the separation of powers. Release would also lead to the public dissemination of

---

[1] This expedited motion is filed pursuant to Local Rule 7.1 to request a ruling before the February 24, 2026, expiration of the current order enjoining the release of Volume II.

sensitive grand jury materials, attorney-client privileged information, and other information derived from protected discovery materials, raising significant statutory, due process, and privacy concerns for President Trump and his former co-defendants.

Despite the Court's dismissal of Smith's indictment, this Court retains ancillary jurisdiction and supervisory authority to regulate the disclosure and other use of materials generated during the criminal proceedings. For these reasons, and as further explained below, President Trump respectfully requests that the Court exercise its jurisdiction under all federal law and its inherent supervisory powers to permanently prohibit the release of Volume II.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Smith's Unconstitutional Appointment and Funding

On November 18, 2022, Attorney General Merrick Garland issued an order improperly appointing Jack Smith, an attorney from outside the United States Government, to serve as Special Counsel for the United States Department of Justice (the "Appointment Order"). *See* ECF No. 672 at 6-7. The Appointment Order cited authority "vested" in the Attorney General—namely, those authorities found at 28 U.S.C. §§ 509, 510, 515, and 533. *Id*. at 7. The Appointment Order also indicated the application of 28 C.F.R. §§ 600.4 to 600.10, known as the "Special Counsel Regulations," which stem from a final rule issued in 1999 to replace the statutory procedures of the then-expiring Independent Counsel Reauthorization Act of 1994. *Id*. at 8. Much like the Appointment Order, the extant Special Counsel Regulations cite 28 U.S.C. §§ 509, 510, 515-519 as authority for the appointment of a special counsel. *Id*.[2]

From its inception, the sprawling activities of Jack Smith's office were funded by a permanent, indefinite appropriation established by Congress in 1987 within the Department of

---

[2] As this Court noted, 28 U.S.C. § 533, cited in the Appointment Order, is not among the purported authorities listed in the final rule. *See* ECF No. 672 at 8 n.7.

Justice to pay all necessary expenses of investigations and prosecutions by "independent counsel" appointed pursuant to the statutory procedures of the since-expired Independent Counsel Act or "other law." ECF No. 672 at 85-86 (quoting Department of Justice Appropriations Act of 1988, Pub. L. No. 100-202, 101 Stat. 1329 (Dec. 22, 1987)).  As of March 31, 2024, the expenditures of Smith's office had already exceeded $19.4 million, and another $16.3 million had been expended by unspecified "DOJ components" in support of his investigation and protective detail. *See* Statements of Expenditures, Special Counsel Jack Smith, U.S. Department of Justice, *available at* https://www.justice.gov/archives/sco-smith ("Smith Statements of Expenditures").  No public accounting of Smith's expenditures has been provided for any period after March 2024.  It is our belief, however, that the Biden Justice Department and so-called Special Counsel spent more than $60 million in taxpayer money over the course of Smith's investigation.

## B. Smith's Unlawful Investigation and Prosecution of President Trump

Over the course of Smith's various investigations of President Trump, his office issued an extraordinary number of subpoenas calling for testimony and documents from various persons and organizations, including testimony and documents protected by attorney-client privilege and attorney work product, and led aggressive, first-of-its-kind litigation in the District of Columbia to pierce those vital privileges belonging to President Trump. *See* ECF No. 566 at 15-26.[3]  By its own accounting, Smith's office spent more than $12.8 million on salaries and benefits, travel, information technology, and related expenses in just the *first eight months* of his investigation,

---

[3] *See also* Maggie Haberman et al., *Justice Dept. Intensifying Efforts to Determine if Trump Hid Documents*, N. Y. TIMES (May 4, 2023), https://www.nytimes.com/2023/05/04/us/politics/trump-documents-subpoenas-justice-department.html; Luke Barr, *Secret Service agents subpoenaed in special counsel's probe of Mar-a-Lago documents*, ABC NEWS (Apr. 3, 2023), https://abcnews.go.com/Politics/secret-service-agents-subpoenaed-special-counsels-probe-mar/story?id=98331631; Katelyn Polantz et al., *EXCLUSIVE: Dozens of Mar-a-Lago staff, from servers to aides, are subpoenaed in classified documents probe*, CNN (Mar. 17, 2023), https://www.cnn.com/2023/03/16/politics/mar-a-lago-trump-subpoenas/index.html.

with another $11 million having been spent by other components of the Department of Justice. *See* Smith Statements of Expenditures.  By contrast, Special Counsel Robert Hur, who was appointed shortly after Smith in January 2023 to investigate then-President Biden's treatment of classified documents discovered at his private residence in Delaware, the Penn Biden Center, and other personal locations, spent only $3.4 million over the same period of his investigation. *See* Statements of Expenditures, Special Counsel Robert K. Hur, U.S. Department of Justice, *available at* https://www.justice.gov/archives/sco-hur ("Hur Statements of Expenditures").  Another $3 million was reportedly spent by other Department of Justice components—approximately one-quarter of the amount spent in connection with Smith's investigation during the same period. *See id*.

On June 8, 2023, a grand jury in the Southern District of Florida returned an Indictment, signed by Smith, charging President Trump and a member of his staff, Waltine Nauta, with thirty-eight federal criminal charges. ECF No. 3.  On July 27, 2023, the grand jury returned a Superseding Indictment, also signed by Smith, increasing the number of total charges to forty-two and adding a third defendant, Carlos De Oliveira. ECF No. 85.  All accompanying filings were signed by staff of Smith's office. *See id*. (Certificate of Trial Attorney); ECF No. 86 (Notice of Superseding Indictment).

### C.    The Court's July 15, 2024, Decision Invalidating Smith's Indictment

On July 15, 2024, this Court dismissed the Superseding Indictment, concluding that Smith's appointment violated the Appointments Clause and that the funding of his office violated the Appropriations Clause of the United States Constitution. ECF No. 672 at 1.  The Court's dismissal order stated that Smith's appointment was defective, as none of the authorities cited by the Department of Justice authorized the Attorney General to appoint a special counsel like Smith, and that all *ultra vires* actions taken by Smith pursuant to his purported authority must be set aside.

*Id*. at 22, 82-84 ("In such cases, which necessarily involve a Government actor's exercise of power that the actor did not lawfully possess, the proper remedy is invalidation of the *ultra vires* action. Invalidation follows directly from the government actor's lack of authority to take the challenged action in the first place.") (cleaned up).  The Court further held, with respect to the funding of Smith's office from the permanent, indefinite appropriation for independent counsels, that Smith was not lawfully appointed pursuant to "other law," but declined to reach the appropriate remedy for the Appropriations Clause violation. *Id*. at 87-91.

Smith subsequently appealed the Court's dismissal order, urging the Eleventh Circuit to reverse the dismissal based on the Attorney General's purported "broad" and "overarching authority" to appoint inferior officers, including a special counsel like Smith. Brief of Appellant at 22, *United States v. Trump*, No. 24-12311 (11th Cir. Aug. 26, 2024).  Only after President Trump's overwhelming victory in the November 2024 Presidential Election did Smith move to dismiss the appeal as to President Trump, citing Department of Justice policy forbidding the prosecution of a sitting President. Motion to Dismiss at 13, *United States v. Trump*, No. 24-12311 (11th Cir. Nov. 25, 2024) (citing Motion to Dismiss, *United States v. Trump*, No. 23-cr-257 (D.D.C. Nov. 25, 2024)).  Smith did so without prejudice, attempting to preserve the Department of Justice's ability to bring criminal charges against President Trump after he leaves office. *Id*.; *see also* Motion to Dismiss at 6, *United States v. Trump*, No. 23-cr-257 (D.D.C. Nov. 25, 2024) (claiming that "immunity from prosecution for a sitting President would not preclude such prosecution once the President's term is over or he is otherwise removed from office by resignation or impeachment").

On December 30, 2024, Smith and his staff moved to withdraw from the Eleventh Circuit appeal, indicating that Smith had referred the case to the United States Attorney's Office for the Southern District of Florida. Motion to Withdraw Appearances at 13, *United States v. Trump*, No.

24-12311 (11th Cir. Dec. 30, 2024).  On January 29, 2025, the Department of Justice, through the United States Attorney, moved to dismiss the Eleventh Circuit appeal *with prejudice*. Unopposed Motion to Dismiss at 8, *United States v. Trump*, No. 24-12311 (11th Cir. Jan. 29, 2025).

### D.    Smith's Unlawful Preparation and Transmittal of Volume II

Months after the Court's dismissal order, but before Smith withdrew from the Eleventh Circuit appeal, news reports indicated that Smith was preparing and would submit a "Final Report" to the Attorney General summarizing the findings of his unlawful investigation.[4]  Smith's intent was to have the Attorney General release the Final Report to political allies in Congress and to the public pursuant to the Special Counsel Regulations. *See* 28 C.F.R. §§ 600.8(c), 600.9(c).  Smith's plan was subsequently confirmed to defense counsel the week of December 9, 2024, by members of the media. ECF No. 679, Ex. A at 2.

On December 11, 2024, defense counsel contacted Smith's office to express concerns about these reports from the press. The office confirmed the accuracy of the reporting, and defense counsel were initially informed that they (1) would be permitted only to access a draft in Washington, D.C. during the week of Christmas, (2) would be permitted only to take handwritten notes, and (3) would have to submit any objections or comments to Smith's staff by December 29, 2024. ECF No. 679, Ex. A at 2-3.  Smith's team eventually permitted counsel to review the two-volume report in a conference room at their office between January 3 and January 6, 2025, but without access to electronic devices or the internet. *Id*. at 3.  Smith's team further demanded that defense counsel delete all prior discovery productions in advance of reviewing the Final Report. *Id*. at 1.

---

[4] Breanne Deppisch, *Special Counsel Jack Smith required to submit Trump findings to DOJ before leaving. What happens next?*, FOX NEWS (Dec. 7, 2024), https://www.foxnews.com/politics/jack-smith-submit-trump-findings-doj-before-leaving-what-happens-next.

625

On January 6, 2025, counsel for President Trump submitted a letter to Attorney General Garland demanding that Smith terminate all efforts toward the preparation and release of the Final Report. ECF No. 679, Ex. A.  On the same day, counsel for Nauta and De Oliveira filed an emergency motion with this Court to prevent the Department of Justice from transmitting the Final Report and filed a similar emergency motion with the Eleventh Circuit on the next day. ECF No. 679; Emergency Motion for Injunction, *United States v. Trump*, No. 24-12311 (11th Cir. Jan. 7, 2025).

On January 7, 2025, this Court issued a temporary injunction prohibiting the Department of Justice from "releasing, sharing, or transmitting the Final Report or any drafts . . . outside the Department of Justice . . ., or from otherwise releasing, distributing, conveying, or sharing with anyone outside of the Department of Justice and information or conclusions in the Final Report or in drafts thereof." ECF No. 682 at 2.  On the same day, Smith transmitted the two-volume report to Attorney General Garland. ECF No. 685.  In a cover letter directed to the Attorney General, Smith stated that "[w]ith this Report, my service and the service of my staff is complete."[5]

### E.    Collateral Litigation Concerning Volume II

Volume I of Smith's report, describing his unlawful investigation into supposed election interference, was subsequently released to the public.  After initially entering a temporary restriction encompassing both volumes of Smith's Final Report, ECF No. 682, this Court declined to extend its injunction to the first volume. ECF No. 697 at 2-3 ("[T]his Court's authority to enforce its own orders is . . . confined to this proceeding . . . .").  The Department of Justice, under the

---

[5] A copy of Volume I, including Smith's cover letter, was subsequently released by the Department of Justice and remains publicly available on an archived version of the Department of Justice's webpage for Smith's office: https://www.justice.gov/archives/sco-smith.

oversight of then-Attorney General Garland, publicly released Volume I on January 14, 2025. *See* ECF No. 760 at 4.

Volume II has been the subject of ongoing litigation. Following compressed briefing and oral argument, this Court entered an order on January 21, 2025, enjoining the Department of Justice from "releasing, sharing, or transmitting" Volume II or any drafts, or "otherwise releasing, distributing, conveying, or sharing" any information or conclusions in Volume II or in drafts, outside of the Department. ECF No. 714. The Court grounded its ruling on concerns regarding the due process rights of the remaining criminal defendants, Mr. Nauta and Mr. De Oliveira, *id*. at 12-13, and expressly stated that it did not take into consideration arguments concerning Smith's authority (or lack thereof) to prepare or issue Volume II due to the Department of Justice's then-pending appeal in the Eleventh Circuit. *Id*. at 2 n.2 ("[T]he Court has not considered those arguments in deciding the Emergency Motion . . . ."); *see also* ECF No. 760 at 6.

Since the Court's entry of the January 21, 2025, order, multiple liberal organizations, including American Oversight and Knight First Amendment Institute at Columbia University ("Knight Institute"), have sought access to Volume II through Freedom of Information Act ("FOIA") requests and federal litigation. *The New York Times* was the first to initiate federal litigation against the Department of Justice, filing a FOIA case in the Southern District of New York on the same day as this Court's January 21, 2025, order, alleging that the Department delayed and then denied its expedited FOIA request for Volume II. Complaint, *The New York Times Co. v. U.S. Dep't of Justice*, No. 25-cv-562 (S.D.N.Y. Jan. 21, 2025). American Oversight, a so-called "nonpartisan, non-profit section 501(c)(3) organization" led by a former senior aide to Rep. Jamie Raskin (D-MD), the Ranking Member of the House Judiciary Committee and a former member of

the January 6th Committee,[6] filed a parallel FOIA action in the District of Columbia on February 10, 2025, seeking immediate release of Volume II. Complaint at 1, 2, *American Oversight v. U.S. Dep't of Justice*, No. 25-cv-383 (D.D.C. Feb. 10, 2025).   Underlining the political nature of their litigation, Raskin and other Democrats in Congress have reportedly "back[ed]" American Oversight's legal efforts and renewed their own calls for the unlawful public release of Volume II.[7]

The courts in both the Southern District of New York and the District of Columbia have treated this Court's injunction as dispositive.   The District of Columbia court denied American Oversight's request for a preliminary injunction, holding that FOIA cannot compel an agency to violate another federal court's order. Mem. Op. at 12-13, *American Oversight v. DOJ*, No. 25-cv-383 (D.D.C. Feb. 20, 2025).   The Southern District of New York initially stayed proceedings but later addressed the case against the backdrop of the Department of Justice's position that it lacks discretion to disclose Volume II while the Court's injunction remains in effect. Mem. Op. & Order at 15-16, *The New York Times v. DOJ*, No. 25-cv-562 (S.D.N.Y. Sept. 4, 2025).

American Oversight also sought to intervene in this closed criminal case on February 14, 2025, seeking immediate lifting of the Court's January 21, 2025, order. ECF No. 717.   Knight Institute, a purported "non-partisan, not-for-profit" institute at Columbia University, followed suit on February 24, 2025, seeking recission of the Court's January 21, 2025, order and public release of Volume II. ECF No. 721.   The Court denied their motions to intervene in the criminal action on December 22, 2025, ECF No. 760, and separately ruled that the January 21, 2025, order will

---

[6] *See* Legistorm, https://www.legistorm.com/person/bio/321091/Chioma_I_Chukwu.html (last visited Jan. 20, 2025).

[7] *See* Press Release, House Committee on the Judiciary, Ahead of Jack Smith Deposition, Judiciary Democrats Back Legal Challenge to Trump DOJ's Unjustified Withholding of Full Special Counsel Report (Dec. 12, 2025), https://democrats-judiciary.house.gov/media-center/press-releases/ahead-of-jack-smith-deposition-judiciary-democrats-back-legal-challenge-to-trump-doj-s-unjustified-withholding-of-full-special-counsel-report.

automatically expire on February 24, 2026. ECF No. 761.  The Court expressly stated that nothing

in its December 22, 2025, order prohibits any "former or current party to this action from moving

for leave to intervene, if warranted, and/or from timely seeking appropriate relief before that

deadline." *Id*.  Both American Oversight and Knight Institute have appealed the Court's orders

denying their requests for intervention. *See* ECF Nos. 764 & 765 (*appeals docketed*, No. 25-14507

(11th Cir. Dec. 31, 2025)).

### F.      The Surviving Protective Orders and Rule 6(e) Protections

Multiple protective orders remain in place governing President Trump's and his former co-

defendants' use of discovery materials and classified information in this case—materials to which

they and their counsel no longer have access.  On June 19, 2023, before Mr. De Oliveira was even

a party to the case, this Court issued a Rule 16 protective order covering all non-classified

discovery materials produced by Jack Smith's office "in preparation for, or in connection with, any

stage of this case." ECF No. 27.  The protective order, which remains in force today, directs that

"[t]he Discovery Materials, along with any information derived therefrom, shall not be disclosed

to the public or the news media, or disseminated on any news or social media platform, without

prior notice to and consent of the United States or approval of the Court." *Id*. at 3.  On September

13, 2023, the Court also entered protective orders applicable to each defendant prohibiting their

unauthorized use, disclosure, or dissemination of classified national security information and

documents made available in connection with the case. ECF Nos. 150-152.[8]  No comparable

---

[8] Smith repeatedly sought even further restraints on President Trump's public speech, arguing that a gag order was necessary to restrict his public commentary about the case, even where his speech did not disclose protected materials or information. *See, e.g.*, ECF No. 592 at 1, 10; ECF No. 665 at 7-8.  Although the Court declined to impose such a generalized gag order prior to dismissal, the Special Counsel's requests reflected a clear effort to unconstitutionally silence President Trump, who was at the time an active and leading presidential candidate.

restrictions presently apply to Smith and the Department of Justice.  Rather, they are bound by

federal rules governing grand jury secrecy and by this Court's expiring January 21, 2025, order.[9]

## II.     ARGUMENT

### A.     As a Former Defendant and Subject of Volume II, President Trump Has Direct and Substantial Interests in Preventing Its Future Release

Because President Trump is a former defendant in this since-dismissed criminal action, he

unquestionably has direct, substantial, and compelling interests in obtaining a protective order to

prevent the dissemination of Smith's *ultra vires* work product.  It is also "settled law" that non-

parties such as President Trump, who may be affected by the disclosure of attorney-client or other

privileged materials, may intervene in criminal proceedings to seek such relief. *In re Sealed Search*

*Warrant & Application for a Warrant*, 2020 U.S. Dist. LEXIS 198004, at *15 (S.D. Fl. Oct. 26,

2020) (quoting *United States v. RMI Co.*, 599 F.2d 1183, 1186 (3d Cir. 1979)); *see also United*

*States v. Feeney*, 641 F.2d 821, 824 (10th Cir. 1981) (acknowledging non-party's right to intervene

to protect himself from "disclosure of accusations made against him before the grand jury").  As

the D.C. Circuit recognized in *United States v. Hubbard*, 650 F.2d 293, 311 n.67 (D.C. Cir. 1980),

"[f]ederal courts have frequently permitted third parties to assert their interests in preventing

disclosure of material sought in criminal proceedings or in preventing further access to materials

already so disclosed."

This rule is particularly applicable here, where the *ultra vires* report at issue is derived from

unlawfully obtained documents and grand jury testimony.  As detailed in numerous filings in this

case and related proceedings, Smith and his staff repeatedly and flagrantly undertook unlawful

actions in this district and elsewhere to violate federal protections afforded to President Trump and

---

[9] *See* Transcript, Deposition of Jack Smith, Committee on the Judiciary, U.S. House of Representatives at 12-13 (Dec. 17, 2025) (addressing restrictions on Smith's congressional testimony).

his communications with his attorneys. *See* ECF Nos. 561 at 22, 566 at 13-25, 568 at 8-10, 679 at 1-15, 712 at 6, 738 at 6.  This Court has already acknowledged Smith's "myriad references" in Volume II to grand jury and other protected discovery materials, including "information as to which President[] Trump has asserted the attorney-client privilege in motions in this proceeding." ECF Nos. 714 at 5-6 & 760 at 16 n.13; *see also* ECF No. 760 at 3 (noting President Trump's "still-contested assertions of attorney-client privileged material contained within Volume II").  The *ultra vires* preparation and the public release of a report reflecting the fruits of such efforts would not only circumvent this Court's dismissal order but would also directly and substantially impair the constitutional and privacy interests of President Trump in ways that this Court must protect. *See* ECF No. 672 at 82-84 (concluding that Smith's lack of authority requires invalidation of *all* of his *ultra vires* acts).

    **B.**    **This Court Retains Jurisdiction and Inherent Supervisory Authority to Issue an Order Preventing the Release of Volume II**

As recognized by this Court in its January 21, 2025, order, "[f]ederal courts may exercise their supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials." ECF No. 714 at 7 (quoting *United States v. DiBernardo*, 775 F.2d 1470, 1475–76 (11th Cir. 1985)); *see also* 28 U.S.C. § 1651 (empowering federal courts to issue all orders necessary to protect their respective jurisdictions and effectuate their judgments).  Most relevant here, absent contrary law, courts possess inherent supervisory power "to impose secrecy orders incident to matters occurring before them." *In re Grand Jury Proceedings*, 417 F.3d 18, 26 (1st Cir. 2005).  This "general power" is routinely exercised through orders limiting access to discovery materials, sealing sensitive filings, and regulating access to judicial proceedings. *Id.*; *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (recognizing courts' supervisory power over their own records and files).

631

Dismissal of the underlying action does not divest the Court of authority over collateral matters arising from the criminal proceedings previously conducted before it. Courts retain jurisdiction over issues that are ancillary to, and inextricably linked with, their prior exercise of jurisdiction, including disputes concerning the protection or disclosure of materials generated in the case. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending."); *Zow v. Regions Fin. Corp.*, 595 Fed. Appx. 887, 889 (11th Cir. 2014) (district courts retain jurisdiction over collateral issues such as discovery and contempt). Consistent with these principles, courts may enter and enforce protective orders "under the inherent equitable powers . . . over their own process, to prevent abuses, oppression, and injustices." *United States v. Meyer*, 2023 U.S. Dist. LEXIS 53070, at *10 (S.D. Fl. Mar. 27, 2023) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984)). That authority survives dismissal. *See id.*; *see also* Fed. R. Crim. P. 16(d)(1) (authorizing discovery restrictions "[a]t any time"). Accordingly, this Court retains jurisdiction to address disputes concerning the disclosure and use of materials generated during the pendency of the criminal proceedings, including Volume II.

### C. The Court Should Exercise Its Authority to Issue an Order Preventing the Release of Volume II

#### 1. Release of Volume II Would Improperly Give Legal Effect to Smith's *Ultra Vires* Acts

The release of Volume II would improperly endorse and give legal effect to Smith's unlawful investigation and prosecution in the Southern District of Florida and would irreparably harm President Trump and his former co-defendants. The Court has already rightly determined that Smith was an unconstitutionally appointed and funded officer who could not, and did not, lawfully exercise executive power. The appropriate remedy is the invalidation of *all* of Smith's *ultra vires* acts, including his subsequent preparation and submission of Volume II. *See* ECF No.

672 at 83-84.[10]  Having made a timely and successful challenge to the constitutional validity of Smith's appointment, President Trump and his former co-defendants are entitled to this relief.  As the Supreme Court held in *Lucia v. SEC*, "one who makes a timely challenge to the constitutional validity of the appointment of an officer . . . is entitled to relief." 585 U.S. 237, 251 (2018).

As established in the Court's July 15, 2024, dismissal order, Smith's appointment and the funding of his office violated the Appointments and Appropriations Clauses of the U.S. Constitution, rendering his investigation and all other official actions constitutionally invalid.  ECF No. 672 at 81-85, 91.[11]  The purported application of the Special Counsel Regulations is also therefore invalid.  *See id*. at 84 ("[T]he problem is the absence of a statutorily created office to fill in the first place.").  To permit the release of Volume II would effectively legitimize those *ultra vires* acts, undermining the Court's prior rulings and the separation of powers, and irreparably harm President Trump and his former co-defendants.  This Court must therefore act to enforce its own judgment and protect the integrity of the constitutional role of the judiciary. *See Casa Express Corp. v. Bolivarian Republic of Venez.*, 158 F.4th 1176, 1184 (11th Cir. 2025) (discussing federal courts' ancillary jurisdiction to dispose of factually dependent claims and effectuate their decrees or judgments); *United States v. Mims*, 143 F.4th 1311, 1315 (11th Cir. 2025) ("[W]ithout jurisdiction to enforce a judgment entered by a federal court, the judicial power would be

---

[10] Smith continued to advance his lawfare against President Trump even after this Court ruled that he was unconstitutionally appointed and funded from the permanent, indefinite appropriation.  While there has not been a public accounting of Smith's expenditures since the Court's July 15, 2024, dismissal order, Smith continued to expend significant sums of taxpayer dollars to advance the preparation of his so-called "Final Report," including Volume II.  Smith's apparent disdain and disrespect for this Court's rulings should not be tolerated.

[11] While reserving judgment on the appropriate remedy for the Appropriations Clause violation, the Court appropriately noted: "For more than 18 months, Special Counsel Smith's investigation and prosecution [was] financed by substantial funds drawn from the Treasury without statutory authorization, and to try to rewrite history at this point seems near impossible." ECF No. 672 at 91.

incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution."

(quoting P*eacock v. Thomas*, 516 U.S. 349, 356 (1996)).

### 2. Release Would Improperly Divulge Information Protected by Rule 6(e) and Attorney-Client Privilege

Disclosure of Volume II would also undermine a vital purpose of Rule 6(e): to protect those who are accused before a grand jury but exonerated. *See Pitch v. United States*, 2020 U.S. App. LEXIS 9619, at *11 (11th Cir. March 27, 2020) (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 219 n.10 (1979)). This Court has already found that Volume II contains detailed and voluminous discovery information, including various materials obtained by grand jury subpoena. *See* ECF No. 714 at 5-6; *see also* ECF No. 760 at 16 n.13. While Smith's staff claimed to have redacted all Rule 6(e) protected material, this Court previously expressed doubts, noting that current Department counsel have only secondhand information about the process that was undertaken by Smith and his office and its adequacy. ECF No. 714 at 6.

Rule 6(e) covers not only grand jury transcripts but also "anything that will reveal what transpired during the grand jury proceedings." *Phillips v. United States*, 843 F.2d 438, 441 (11th Cir. 1988); *United States v. Stanton*, 689 F. Supp. 1103, 1104 (S.D. Fla. 1988) (documents that would "reveal the pattern of investigation by the grand jury" were protected by Rule 6(e)). The release of Volume II would inappropriately risk violating this Court's obligations to ensure grand jury secrecy and to protect the integrity of grand jury proceedings. *See Pitch*, 2020 U.S. App. LEXIS 9619, at *20 (holding that district courts lack legal authority to authorize the disclosure of grand jury materials outside the bounds of Rule 6(e)).

The Court's protection of Rule 6(e) material is further complicated by the reality that defense counsel no longer have access to the very materials that would be necessary to assess the adequacy of Smith's redactions. In fact, defense counsel have not had access to discovery in this

case for more than a year because Smith's staff demanded that they delete all such productions before reviewing Volume II. ECF No. 679, Ex. A at 1.  Given this, it is virtually impossible for defense counsel to engage in a line-by-line analysis of Volume II.  Such a process would necessitate the restoration of extensive discovery materials and renewed access to Volume II, extensive steps that would improperly perpetuate the unauthorized and *ultra vires* actions of a disqualified prosecutor.

Further, this Court has already acknowledged that Volume II is derived from communications over which President Trump has consistently asserted attorney-client privilege. *See* ECF Nos. 714 at 5-6, 760 at 16 n.13.  President Trump's still-contested assertions of privilege were pending at the time of dismissal, and the disclosure of such sensitive materials without court approval would cause irreparable harm to President Trump's rights and compromise the integrity of these and future proceedings. *United States v. Zolin*, 491 U.S. 554, 562 (1989) (protection of the privilege "promote[s] broader public interests in the observance of law and administration of justice"); *United States v. Stein*, 2023 U.S. Dist. LEXIS 47808, at *5 (S.D. Fla. Mar. 21, 2023) ("Traditionally, the attorney-client privilege, like the privilege extending to attorney work product, is sacrosanct." (internal quotations omitted)).

### 3.    The Inherently Biased and One-Sided Nature of Volume II Further Supports an Order Barring Its Release

Volume II is an inherently biased and one-sided document that reflects the work product and opinions of an unconstitutionally appointed and funded federal official.  It relies on evidence unlawfully obtained and crafted to serve a specific, political purpose, which was to imprison and destroy the reputations of President Trump and his former co-defendants, thereby preventing President Trump from regaining the Presidency, which is exactly what he did.  Volume II contains "myriad references" to protected discovery information, including illegally obtained search

warrant materials, interview transcripts, business records, toll records, video footage, and other non-public information. ECF No. 714 at 5-6.  Yet, the former defendants, who remain bound by protective orders, no longer have access to these materials and are constrained in their ability to respond to Smith's false allegations and opinions.  This creates a fundamentally unfair situation in which Smith and his allies could publicize the report's allegations, giving them unwarranted credibility, while the individuals targeted by those accusations cannot defend themselves from Smith's false and baseless attacks.  For this reason, too, the Court should exercise its supervisory authority to prohibit the release of Volume II.

### III.    CONCLUSION

For the foregoing reasons, President Trump respectfully requests that this Court enter an order permanently enjoining the Department of Justice, as well as its current, former, and future officers, agents, officials, and employees, from (a) releasing, sharing, or transmitting Volume II or any drafts of Volume II outside of the Department of Justice, or (b) otherwise releasing, distributing, conveying, or sharing with anyone outside the Department of Justice any information or conclusions contained in Volume II or its drafts.

Dated: January 20, 2026                     Respectfully submitted,

*/s/ Kendra Wharton*
Kendra L. Wharton
Fla. Bar No. 1048540
WHARTON LAW PLLC
500 S Australian Ave., Ste. 600-1139
West Palm Beach, FL 33401
(561) 247-5279
k.wharton@whartonlawpllc.com

*Counsel for President Donald J. Trump*

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 19 and 20, 2026, counsel for President Trump conferred with counsel for former defendants Waltine Nauta and Carlos De Oliveira and the United States. Counsel for Mr. Nauta and Mr. De Oliveira advised that they join in the arguments made by President Trump in this motion and the requested relief, and advised that they will separately move for relief, including on grounds specific to their individual cases. Counsel for the United States indicated that they consent to the filing of this motion and the relief requested herein. The United States also intends to submit a filing in response to the Court's December 22, 2025, order.

*/s/ Kendra L. Wharton*
Kendra L. Wharton

**CERTIFICATE OF SERVICE**

I, Kendra L. Wharton, certify that on January 20, 2026, I electronically filed the foregoing

motion with the Clerk of Court using CM/ECF.

_/s/ Kendra L. Wharton_
Kendra L. Wharton

TAB 773

Case No. 23-cr-80101-AMC, S.D. Fla.,

Doc. 773

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

UNITED STATES OF AMERICA,

vs.

WALTINE NAUTA, *et ano.*,

　　　　　Defendants.

**Case No. 23-80101-CR
CANNON/REINHART**

---

<u>**UNITED STATES' RESPONSE TO DECEMBER 22, 2025 ORDER**</u>

The United States respectfully submits this response to the Court's December 22, 2025 order, in which the Court announced that its order enjoining the release of Volume II of Jack Smith's Final Report outside the Department of Justice would expire on February 24, 2026. ECF 761.

The United States agrees with the former defendants in this case that Volume II should not be released outside of the Department of Justice. As this Court correctly determined in its July 15, 2024 dismissal order, Jack Smith's investigation was unlawful from its inception. Smith not only weaponized the Department of Justice against a leading presidential candidate in pursuit of an anti-democratic end, but he did so without legal authority and while targeting constitutionally protected activity. *See* ECF 672 at 1 (dismissing the Superseding Indictment because "Special Counsel Smith's appointment violates the Appointments Clause of the United States Constitution"); *id.* at 41 ("Mr. Smith is a private citizen exercising the full power of a United States Attorney, and with very little oversight or supervision."). Put simply, Smith's tenure was marked by illegality and impropriety, and under no circumstance should his work product be given the full weight and authority of this Department.

In addition to Attorney General Garland's unconstitutional appointment of Smith as Special Counsel, Attorney General Pam Bondi has determined that Volume II is an internal deliberative communication that is privileged and confidential and should not be released outside the Department of Justice. *See* 5 U.S.C. § 552(b)(5); *see also* ECF 738 at 2 (explaining that, in the absence of an order barring release, the decision to release Volume II outside the Department of Justice should "rest with the sound discretion of the Attorney General of the United States"). The Department of Justice further acknowledges that it cannot provide the Court with additional assurance regarding the scope and adequacy of Smith's proposed redactions of Rule 6(e) materials from Volume II. As the Court previously observed, current Department counsel has only secondhand information about the process by which Smith made redactions for Rule 6(e). ECF 714 at 6. Current Department counsel was not involved in Smith's investigation, and the Department does not believe that a line-by-line analysis of Smith's report, and the underlying discovery and grand jury materials, is warranted. *See* ECF 738 at 2-3.

**[THIS SECTION INTENTIONALLY LEFT BLANK]**

Especially when considering the extraordinary unfairness and prejudice that would fall to former defendants President Donald J. Trump, Waltine Nauta, and Carlos De Oliveira, including the release of information over which President Trump has assertions of attorney-client privilege, *see* ECF 566 at 1, 6, it is the position of the Attorney General and this Department that release of Volume II is unjustified. The illicit product of an unlawful investigation and prosecution belongs in the dustbin of history. The United States will leave it there.

<div style="margin-left:40%;">

Respectfully submitted,

JASON A. REDING QUIÑONES
United States Attorney

By:     */s/ Manolo Reboso*
        Manolo Reboso
        Assistant United States Attorney
        Florida Bar No. 75397
        99 Northeast 4th Street
        Miami, Florida 33132-2111
        Tel: (305) 961-9091
        Email: Manolo.Reboso@usdoj.gov

</div>

TAB 774

Case No. 23-cr-80101-AMC, S.D. Fla.,

Doc. 774

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **Case No. 23-80101-CR CANNON/REINHART** |
| vs. | **EXPEDITED MOTION** |
| DONALD J. TRUMP, WALTINE NAUTA, and CARLOS DE OLIVEIRA, | |
| Defendants. | |

**WALTINE NAUTA'S AND CARLOS DE OLIVEIRA'S EXPEDITED MOTION FOR, AND RESPONSE IN SUPPORT OF, AN ORDER PERMANENTLY PROHIBITING RELEASE OF VOLUME II OF THE FINAL REPORT UNLAWFULLY PREPARED BY JACK SMITH**

Waltine Nauta and Carlos De Oliveira, through undersigned counsel, respectfully move for an order permanently prohibiting the release of Volume II of the Final Report ("Report") prepared by Jack Smith, who this Court previously determined was unconstitutionally appointed as "Special Counsel," and unconstitutionally funded through a permanent indefinite appropriation for independent counsels. *See* DE 672. Mr. Nauta and Mr. De Oliveira seek this relief in the form of an order requiring the destruction of all copies of Volume II and/or permanently enjoining their release. "[W]here motions for expungement challenge an unconstitutional conviction or an illegal arrest or are otherwise based upon a constitutional claim, federal courts may have jurisdiction to consider the motion." *United States v. Field*, 756 F.3d 911, 915 (6th Cir. 2014) (collecting cases); *see also United States v. Batmasian*, 66 F.4th 1278, 1282 (11th Cir. 2023) (agreeing with *Field* that ancillary jurisdiction might exist for a constitutional expungement).

This expedited motion is made in light of the Court's December 22, 2025, Order, which permitted current and former parties to this action to seek appropriate relief before the February

24, 2026, expiration of this Court's current injunction barring release of Smith's Report.[1] *See* DE 761. Former defendants Nauta and De Oliveira hereby adopt the arguments and request for relief presented by President Donald J. Trump on January 20, 2026, *see* DE 772, and offer the following additional reasons why the Court should continue to enjoin the Report's release.

## I.   The Unconstitutionality of Jack Smith's Appointment and Funding is Already Decided and is the Law of the Case

It has already been established in this case that Jack Smith's appointment was unconstitutional, and there is no reason for this Court or the Court of Appeals to revisit that determination. The doctrine of the law of the case "preclude[s] courts from revisiting issues that were [already] decided." *Cambridge Univ. Press v. Albert*, 906 F.3d 1290, 1299 (11th Cir. 2018); *see also Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1288 (11th Cir. 2000) (The doctrine bars consideration of "those legal issues that were actually, or by necessary implication, decided in the former proceeding."). In particular, "a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation . . . ." *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997); *see also Alphamed, Inc. v. B. Braun Medical, Inc.*, 367 F.3d 1280, 1285-86 (11th Cir. 2004) ("[B]oth district and appellate courts are generally bound by a prior appellate decision in the same case.").

In dismissing the underlying criminal case brought by Smith, this Court expressly decided the unconstitutionality of Smith's appointment and funding. *See* DE 672. Given the Government's appeal and subsequent dismissal of that appeal *with prejudice*, the Eleventh Circuit's dismissal order constituting its mandate establishes the law of the case, making this

---

[1] Pursuant to Local Rule 7.1(d), Mr. Nauta and Mr. De Oliveira respectfully request that the Court rule on this expedited motion in advance of the February 24, 2026, expiration of the Court's current order enjoining release.

Court's order the final word on the matter. *Wylie v. Island Hotel Co.*, 774 Fed. Appx. 574, 577 (11th Cir. 2019); *see also Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005) ("The doctrine's central purposes include bringing an end to litigation, protecting against the agitation of settled issues, and assuring that lower courts obey appellate orders."); *Escobar-Urrego*, 110 F.3d at 1560 ("Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.").

Smith's Report, which he improperly composed and wrongly sought to disseminate as a "Special Counsel" report, is undoubtedly the fruit of his unauthorized actions as an unlawfully appointed and funded official. Thus, the law of the case doctrine requires that the treatment and effect of that document must be considered in light of this Cout's ruling concerning Smith's unconstitutional appointment and associated misappropriation of tens of millions of taxpayer dollars.

## II.   The Primary Legal Basis for the Court's January 21, 2025, Order Remains Valid

In addition to the unconstitutional nature of Smith's investigation and Report, the primary basis for the Court's January 21, 2025, Order barring release of the Report—*i.e.*, the "substantial and unacceptable risk of prejudice to Defendants"—remains valid. DE 714 at 13. Mr. Nauta and Mr. De Oliveria still face legal jeopardy. This Court dismissed the Superseding Indictment without prejudice on January 21, 2025. DE 761. The Government subsequently dismissed its appeal with respect to Mr. Nauta and Mr. De Oliveira on January 29, 2025. While the dismissal of the appeal was *with prejudice*, its apparent result was to leave this Court's dismissal *without prejudice* in place. The offenses charged in the Superseding Indictment are subject to a five-year statute of limitations, with the latest alleged conduct occurring on January 12, 2023, meaning the

Government arguably has until January 12, 2028, to recharge that count.

While the Justice Department apparently has no current interest in to reinitiating charges, *see* DE 773 ("The illicit product of an unlawful investigation and prosecution belongs in the dustbin of history."), the fact remains that jeopardy persists for Mr. Nauta and Mr. De Oliveira unless and until this case is dismissed with prejudice. Therefore, the release of Smith's Report carries the same threat of substantial and unacceptable risk of prejudice as it did in January 2025. Even Special Counsel Smith agreed in January 2025 that the Report should not be released to the public given the Government's then-pending appeal of this Court's dismissal order as to defendants Nauta and De Oliveira. The same logic continues to apply while Mr. Nauta and Mr. De Oliveira remain in legal jeopardy.

### III.   Release of the Report Would be Unduly Burdensome and Prejudicial to Mr. Nauta and Mr. De Oliveira

Mr. Nauta and Mr. De Oliveira have been through enough. This unconstitutional process has now subjected them to three years of investigation, litigation, and character assassination. Over the course of those three years, they have endured repeated Government interviews and testimony, undue media scrutiny and reputational damage, and threats to their freedom.  Indeed, just as President Trump was, Mr. De Oliveira was even "debanked" during the pendency of this case, further compounding the personal and financial toll of Smith's unconstitutional investigation and prosecution of the former defendants.

Allowing the release of the Report, which is essentially Smith's closing argument and final salvo, would be fundamentally unfair and prejudicial. The Report was created to justify Smith's unconstitutional investigation and contains information and references to documents that are subject to this Court's Rule 16 protective order. DE 27. That order explicitly requires the destruction or return of all discovery materials "[w]ithin 90 days of the conclusion of all stages

4

645

of this case, including all related appeals . . . unless otherwise ordered by the Court." *Id*. at ¶ 8. Without access to these materials or the ability to use them, Mr. Nauta and Mr. De Oliveira would be unable to effectively respond to the Report's allegations.

The procedural posture of this case has also placed the former defendants at a significant disadvantage in addressing the contents of the Report. Defense counsel had only limited opportunities to review portions of the Report without access to the underlying discovery materials, making it impossible to fully rebut its claims. Additionally, the Report apparently contains extensive confidential grand jury information, as well as attorney-client privileged material and attorney work product that were the subject of a pending defense motion at the time the Superseding Indictment was dismissed.

It would be severely prejudicial at this late stage to require the former defendants to obtain renewed access to the extensive discovery in this case, likely including the classified portion of that discovery,[2] and undergo the necessary line-by-line analysis—and shoulder the associated financial burden—required to make their arguments to this Court. It would be even more prejudicial to allow Smith or others to use information subject to this Court's protective order to make a public closing argument, while prohibiting the defendants from using that same information to defend themselves.

## IV.    There is No Public Right of Access to the Report

Mr. Nauta and Mr. De Oliveira are private figures who were the target of an unconstitutional prosecution. Illegally collected and highly prejudicial investigative material and

---

[2] The Government has indicated that the Report itself does not contain classified information. Even assuming that is correct, which would also require access to the materials referenced in the Report, the classified nature of the information at issue remained an open question and the Government's burden to prove at the time the Court dismissed the Superseding Indictment. For former defendants to properly respond to Smith's one-sided report, they might well require new access to the classified materials in order to make their argument.

opinions—that is, a closing-argument-style summary of Jack Smith's view of selected facts—are not information to which the public's First Amendment or common law right of access attaches. This is particularly the case where the protected material referenced in the narrative was gathered only via an unconstitutional process due to which the charges against both Mr. Nauta and Mr. De Oliveira were ultimately dismissed.

To the extent anyone may seek access to the Report on the theory that it is a "judicial record," that supposition is not true. The Report was never docketed as part of the court record, and it was never put before the Court or any judicial factfinder for a decision on the merits or on a dispositive question. Rather, the Report "contains extensive, non-public discovery materials governed by Rule 16, including large quantities of '[s]tatements concerning anticipated evidence or argument in the case.'" DE 714 at 9 (quoting Justice Manual § 1-7.610(E)).

Further, it has been clearly established in this Circuit that the public's "right of access is not absolute." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007). "The right of access does not apply to discovery and, where it does apply, may be overcome by a showing of good cause." *Id.* "[T]he prospect of all discovery material being presumptively subject to the right of access would likely lead to an increased resistance to discovery requests," *id.* at 1245 (citation omitted), which in turn would hamper defendants' constitutional trial rights. Even documents *filed* in court in connection with discovery motions "are not subject to the common-law right of access," *id.* Indeed, "the need for public access to discovery is low because discovery is 'essentially a private process . . . the sole purpose [of which] is to assist trial preparation." *Id.* (quoting *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 2007)).

The Report here reflects a one-sided and cherry-picked summary of improperly and unconstitutionally conducted grand jury investigative actions. Discovery in this matter was even

more of a "private process," *Romero*, 480 F.3d at 1245, than it is in the ordinary case, due to the unconstitutionality of the appointment and the highly sensitive nature of discovery materials to which even the defendants no longer have the requisite access to defend themselves from the continued excesses by Smith.  The Report should never be released.

## V.  Release of the Report Would Also Inappropriately Risk Violating Grand Jury Secrecy Rules

Grand jury materials are, of course, shielded from the public's right of access.  "The long-established policy of upholding the secrecy of the grand jury helps to protect the innocent accused from facing unfounded charges, encourages full and frank testimony on the part of the witnesses, and prevents interference with the grand jury's deliberations." *Pitch v. United States*, 953 F.3d 1226, 1229 (11th Cir. 2020). "Rule 6 of the Federal Rules of Criminal Procedure, which governs matters related to the grand jury, continues this traditional practice of secrecy." *Id*. The Report cannot be unmoored from the grand jury; the unconstitutional federal investigation ran parallel to the grand jury and witnesses interviewed by the FBI were brought before the grand jury. Grand jury secrecy does not vanish simply because a witness before the grand jury previously was interviewed by the FBI. The public airing of such confidential discovery materials would improperly further a lopsided narrative to which the former defendants cannot adequately respond because they no longer have full access to the claimed discovery on which the Report relies and which is premised on Smith's improper access to, and use of, the grand jury process.

In *Pitch*, the Eleventh Circuit reversed a district court's decision to release grand jury materials relating to a historical event that occurred in 1946. It thus limited district courts' ability to provide access to such materials, finding that the statutory command of Rule 6(e) governed. But it did not in any way restrict district courts' authority to *protect* such confidential materials,

and such plenary authority is properly exercised here where the report itself was not created by the grand jury but is fundamentally intertwined with the investigative grand jury process. Indeed, the *Pitch* decision emphasized the extent to which Rule 6(e) shrouds the workings of the grand jury in secrecy—as there, *even nearly a century after the fact*. *See id.* at 1232 ("The questions before us implicate the long-established policy that grand jury proceedings in federal court should be kept secret.").

Even where other Circuits have reached a contrary conclusion as to the scope of Rule 6(e) and have allowed for release of confidential grand jury materials, they have only done so decades after the events—not where, as here, the case could still be prosecuted. The Seventh Circuit, for example, in *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016) allowed access *70 years after the fact* to grand jury transcripts *that were actual judicial documents, sealed at the time. See id*. at 755 ("During World War II, the U.S. Office of War Information warned the populace that 'loose lips sink ships.' But what if the ships sailed some 70 years before the tongues wag?'"); *id*. at 760 (emphasizing the "sharp line" between pre-trial discovery documents that were never filed with the court and documents that were filed with the court). Contemporaneous access to non-judicial records, particularly those that relate to matters before the grand jury, is inappropriate here and does not warrant an exception to Rule 6—particularly where the record at issue is a lopsided investigative narrative that amounts to a draft of a closing argument, written by a private actor using unconstitutionally appropriated government funds.

## VI.    Further Disclosure of Smith's Opinions and Sensitive Investigatory Materials Is Both Unnecessary and Unwarranted

Smith has had ample, undeserved, opportunity to explain his unconstitutional investigation and false allegations in this case. The case involves nearly 800 docket entries, including a 53-page Superseding Indictment and countless other filings detailing Smith's

allegations, theories of his case, and evidence that he anticipated introducing at trial. Smith has also defended his prosecutions in a deposition and a public hearing held by the U.S. House Judiciary Committee on December 17, 2025, and January 22, 2026, respectively. Indeed, in his December 17, 2025, deposition, which resulted in a 255-page transcript,[3] Smith repeatedly answered questions about this case, relying on the documents in the record, while claiming not to be discussing the contents of the Report because of this Court's January 21, 2025, Order. The Superseding Indictment was entered into the Committee record (Ex. 13), and Smith testified extensively about its contents (Tr. at 197-218). Smith discussed his office's responses filed in this case concerning the unlawful collection and use of evidence (Ex. 17) (Tr. 219-22, 232-34). Committee staff even used a book written by *Washington Post* reporters to ask Smith questions about this case (Tr. 31-32, 48, 223-24, 229-30).

As further explained below, Democrats on the House Judiciary Committee have indicated that they will "bring[] Special Counsel Smith back" as soon as this Court's January 21, 2025, Order expires, if that were to occur.[4] This Court should not afford Smith yet another opportunity to present his unlawful theories and opinions to the continued detriment of Mr. Nauta and Mr. De Oliveira, individuals whose lives and reputations have already been irreparably harmed by this unconstitutional prosecution. To enable the unlawfully appointed prosecutor to describe in detail his view of the evidence at a Congressional hearing—while the former defendants' own defense

---

[3] Transcript, Deposition of Jack Smith, Committee on the Judiciary, U.S. House of Representatives (Dec. 17, 2025), *available at* https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/2025-12/Smith-Depo-Transcript_Redacted-w-Errata.pdf.

[4] Press Release, House Committee on the Judiciary Ranking Member Jamie Raskin, At Hearing with Special Counsel Jack Smith, Republicans Peddle Lies as Smith Forcefully Defends Investigations Exposing Trump's Rampant Criminality and Condemns Trump's Retaliation Against Career Staff (Jan. 23, 2026), https://democrats-judiciary.house.gov/media-center/press-releases/at-hearing-with-special-counsel-jack-smith-republicans-peddle-lies-as-smith-forcefully-defends-investigations-exposing-trump-s-rampant-criminality-and-condemns-trump-s-retaliation-against-career-staff.

attorneys lack complete access to discovery materials to rebut his allegations—would be the epitome of unfair prejudice.

## VII.   This Court Retains the Plenary Authority to Block the Release of the Report

Courts possess inherent supervisory power "to impose secrecy orders incident to matters occurring before them." *In re Grand Jury Proceedings*, 417 F.3d 18, 26 (1st Cir. 2005). *See also Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 598 (1978) (courts have supervisory power over their own records and files). The Report, though never docketed with this court (and thus not a judicial document to which the public right of access attaches), heavily implicates the discovery and other materials protected from disclosure by orders entered in this case, including at the express demand of the government. The dismissal as to these defendants may be deemed to be without prejudice and thus they remain subject to re-prosecution within any applicable statute of limitations. Courts of course have the right to preclude attorneys from making extrajudicial and inflammatory statements, designed to poison the jury pool. More broadly, district courts have plenary authority to ensure that no unfair prejudice results to former defendants—particularly those who could be future defendants.

## VIII.  Absent a Court Order Barring Release, Third Parties Are Likely to Seek the Report's Release in Other Forums

If the Court's January 21, 2025, Order expires, there is a substantial risk that the Report will be disclosed publicly, causing substantial and irreparable harm to former defendants Nauta and De Oliveira.[5] There are parties in at least two other districts seeking to force release of the Report after the Justice Department declined to produce it in response to their Freedom of Information Act requests due to this Court's Order. *See The New York Times v. U.S. Dep't of*

---

[5] Although the Department of Justice has not indicated that it allowed Smith to maintain prior drafts, it is unclear the extent to which portions of the Report are in the possession of anyone outside of the Justice Department.

*Justice*, No. 25-cv-562 (S.D.N.Y. 2025); *American Oversight v. U.S. Dep't of Justice*, No. 25-cv-383 (D.D.C. 2025). House Judiciary Committee Ranking Member Jamie Raskin (D-MD), who has resorted to calling this Court offensive names, has also "backed" these efforts, has renewed his own demands that the Department of Justice release the Report, and has indicated that he will "bring[] Special Counsel Smith back" to publicly speak at a hearing about his unlawful investigation and prosecution of this case as soon as the Court's January 21, 2025, Order expires, if it is allowed to do so.[6]

Outside parties who seek the Report to engender political and personal scandal should not be permitted to forum-shop to seek its release, thereby interfering with this Court's handling of matters properly before it. This Court is the proper venue in which to determine the question of release. Without a continued injunction, there is a substantial risk that a flurry of forum-shopping will occur—resulting in decision by an outside court that lacks familiarity with the underlying matter and is not properly tasked with determining the propriety of public release of confidential and protected discovery materials, including those related to the grand jury.

<div align="center">*     *     *</div>

Whether via Rule 6(e) or via its own plenary authority, this Court should permanently prohibit the release of Smith's Report. Release of the Report would improperly give effect to Smith's unconstitutional investigation and prosecution in this District. It would also prejudice

---

[6] *See* Press Release, House Committee on the Judiciary Ranking Member Jamie Raskin, *Ahead of Jack Smith Deposition, Judiciary Democrats Back Legal Challenge to Trump DOJ's Unjustified Withholding of Full Special Counsel Report* (Dec. 12, 2025), https://democrats-judiciary.house.gov/media-center/press-releases/ahead-of-jack-smith-deposition-judiciary-democrats-back-legal-challenge-to-trump-doj-s-unjustified-withholding-of-full-special-counsel-report; Press Release, House Committee on the Judiciary Ranking Member Jamie Raskin, *At Hearing with Special Counsel Jack Smith, Republicans Peddle Lies as Smith Forcefully Defends Investigations Exposing Trump's Rampant Criminality and Condemns Trump's Retaliation Against Career Staff* (Jan. 23, 2026), https://democrats-judiciary.house.gov/media-center/press-releases/at-hearing-with-special-counsel-jack-smith-republicans-peddle-lies-as-smith-forcefully-defends-investigations-exposing-trump-s-rampant-criminality-and-condemns-trump-s-retaliation-against-career-staff.

and defame the former defendants, who cannot correct the factual record as they no longer have access to the full spectrum of discovery materials. For these reasons, and those outlined by President Trump in his January 20, 2026 motion, Mr. Nauta and Mr. De Oliveira respectfully request that the Court enter an order directing the Report's destruction and/or permanently enjoining its release.[7]

<div align="center">Respectfully submitted,</div>

By:     **/s/ Richard C. Klugh**
Richard C. Klugh
Jenny Wilson
Klugh Wilson LLC
40 NW 3rd Street, PH1
Miami, Florida 33128
Telephone: (305) 536-1191
Email: rickklu@aol.com
Counsel for Waltine Nauta

By:     **/s/ Larry Donald Murrell, Jr.**
Larry Donald Murrell, Jr.
Florida Bar No: 326641
400 Executive Center Drive
Suite 201—Executive Center Plaza
West Palm Beach, FL 33401
Telephone: (561) 686-2700
Facsimile: (561) 686-4567
Email: ldmpa@bellsouth.net
Counsel for Carlos De Oliveira

By:     **/s/ John S. Irving**
John S. Irving
SECIL Law PLLC
1701 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C. 20006
Telephone: (301) 807-5670
Email: John.Irving@SECILLaw.com
Counsel for Carlos De Oliveira

---

[7] Mr. Nauta and Mr. De Oliveira further request that this Court extend its order barring release of the Report pending resolution of the former defendants' motions on the matter. Additionally, in the event that the Court orders a hearing on the motions, former defendants respectfully request that the Court only requires attendance by counsel.

<div align="center">12</div>

<div align="center">653</div>

## CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that on January 30, 2026, counsel for Waltine Nauta and Carlos De Oliveira conferred with counsel for President Donald J. Trump and counsel for the United States. Counsel for President Trump advised that President Trump consents to the relief sought in this motion and joins in and adopts the arguments set forth herein. Counsel for the United States also indicated that they consent to the filing of this motion and do not oppose the requested relief.

/s/ Richard C. Klugh

TAB 775

Case No. 23-cr-80101-AMC, S.D. Fla.,

Doc. 775

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 23-CR-80101-AMC**

UNITED STATES OF AMERICA,

               Plaintiff,

     v.

DONALD J. TRUMP, WALTINE NAUTA,
and CARLOS DE OLIVEIRA,

               Defendants.

**JOINT EXPEDITED[1] MOTION OF THE KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY AND AMERICAN OVERSIGHT TO INTERVENE FOR THE PURPOSE OF SEEKING A STAY OF PROCEEDINGS**

Pursuant to Local Rules 7.1 and 88.9, the Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute") and American Oversight (together "Prospective Intervenors"), respectfully move to intervene in this case to seek a stay of proceedings pending the Eleventh Circuit's resolution of their appeals filed on December 23 and 29.

The only issue remaining in this closed case is public access to Volume II of Special Counsel Jack Smith's final report. That issue is currently before the Eleventh Circuit, but President Trump, Walt Nauta, and Carlos De Oliveira ("Defendants") and the United States have moved this Court for a permanent injunction barring Volume II's release and requiring its destruction. Dkt. 772-774. If granted, this relief would nullify Prospective Intervenors' statutory, common law, and

---

[1] Defendants filed "expedited" unopposed motions seeking a permanent injunction against the release of Volume II of Special Counsel Jack Smith's final report and, as to Nauta and De Oliveira, an order requiring destruction of all copies of Volume II.  Dkt. 772-774. Movants here request similar treatment of the instant motion so that it is considered and resolved before Defendants' "unopposed" motions.

First Amendment rights of access to Volume II, would thwart the jurisdiction of the Court of Appeals, and would obstruct the appeal in this matter. *See Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943).[2] Prospective Intervenors therefore move for a stay of these proceedings until the Eleventh Circuit has resolved their appeals. A stay of proceedings is appropriate and necessary because this Court lacks jurisdiction to adjudicate the motions, and because the motions are without merit and seek relief that would violate the Federal Records Act.

## **BACKGROUND**

On December 22, 2025, the Court issued an Order Denying 717 721 Non-Party Motions to Intervene.[3] Dkt. 760. Shortly after denying the intervention motions, the Court issued an order regarding the Injunction. Dkt. 761. Acknowledging that the "immediate basis" for the Injunction ceased to exist on February 11, 2025, when the Eleventh Circuit dismissed the criminal appeal, the Court ordered that the Injunction will automatically expire on February 24, 2026, absent further order of the court. *Id.* At the same time, the Court gave "any former or current party to this action" the opportunity to seek "appropriate relief" before that deadline. It specifically referenced Defendants' earlier contention that Volume II should not be released because it is the work product of an unconstitutionally appointed Special Counsel. *Id.* at 1–2.

On December 23 and December 29, 2025, the Knight Institute and American Oversight, respectively, filed notices of appeal of the Court's order denying their motions to intervene. Dkt. 762 & 763.

---

[2] The Knight Institute's and American Oversight's first motions to intervene sought rescission of the Court's Injunction barring the release of Volume II. The Knight Institute also asserted common law and First Amendment rights of access to Volume II.

[3] Prospective Intervenors incorporate by reference their original motions to intervene Dkt. 717 and 721.

On January 20, 2026, President Trump filed an Unopposed Expedited Motion for an Order Prohibiting the Release of Volume II of the Final Report Unlawfully Prepared by Special Counsel Jack Smith. Dkt. 772. President Trump's motion asserts that this Court "retains jurisdiction to address disputes concerning the disclosure and use of materials generated during the pendency of the criminal proceedings, including Volume II." *Id.* at 2. He "requests that this Court enter an order permanently enjoining the Department of Justice, as well as its current, former, and future officers, agents, officials, and employees, from (a) releasing, sharing, or transmitting Volume II or any drafts of Volume II outside of the Department of Justice, or (b) otherwise releasing, distributing, conveying, or sharing with anyone outside the Department of Justice any information or conclusions contained in Volume II or its drafts." *Id.* at 17.

On January 23, 2026, the United States filed a Response to the December 22, 2025 Order, stating that "[t]he United States agrees with the former defendants in this case that Volume II should not be released outside of the Department of Justice." Dkt. 773, at 1. The Response further stated that "it is the position of the Attorney General and this Department that release of Volume II is unjustified. The illicit product of an unlawful investigation and prosecution belongs in the dustbin of history." *Id.* at 3.

On January 30, 2026, Nauta and De Oliveira filed an Expedited Motion for, and Response in Support of, an Order Permanently Prohibiting Release of Volume II of the Final Report Unlawfully Prepared by Jack Smith. Dkt. 774. They "request[ed] that the Court enter an order directing the Report's destruction and/or permanently enjoining its release." *Id.* at 12.

## ARGUMENT

**I.    Prospective Intervenors have standing to intervene.**

As Prospective Intervenors argued in their respective motions to intervene, Dkt. 717, 721, Prospective Intervenors have standing to intervene because Defendants' motions directly implicate

their statutory rights of access to Volume II under FOIA.  The threat to Prospective Intervenors' statutory rights under FOIA is clear and acute. They have standing to intervene because the motions seek relief that would, if granted, nullify their rights. Moreover, intervention is the only means they have to protect those rights.

The Knight Institute also has standing to assert the public right of access to Volume II under the common law and the First Amendment.[4]  As this Court correctly observed, the "law is settled" in this Circuit that the press and public have standing to intervene in criminal cases to assert common law and First Amendment rights of access to judicial proceedings and documents. Dkt. 760 at 8–9 (citing *Petition of Trib. Co.*, 784 F.2d 1518, 1521 (11th Cir. 1986); *United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993)). In denying the Knight Institute's first motion to intervene on standing grounds, the Court "improperly conflated the standing inquiry with the merits inquiry." *Okeelanta Corp. v. U.S. Army Corps of Eng'rs*, 132 F.4th 1320, 1332 (11th Cir. 2025). The Court stated that "[w]hen a prospective intervenor seeks material under a theory of access to 'judicial records,' courts need not allow non-party intervention to vindicate such a right if the material sought is not properly considered a 'judicial record' to begin with." Dkt. 760, at 9. However, "[t]he Supreme Court has been clear that 'standing in no way depends on the merits of the plaintiff's' claim." *Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1211 (11th Cir. 2025) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). In determining a party's standing, a court must "accept

---

[4] American Oversight, in a mandamus petition to the Eleventh Circuit seeking the lifting of the injunction, asserted its common law and constitutional rights to access public records but relied primarily on its statutory right under FOIA in its motion to intervene. *See* Pet. Writ Mandamus, 25-13400 (11th Cir. Sept. 30, 2025), Dkt. 1-2 at 15-19. American Oversight does not waive those arguments in these or related proceedings but believes its statutory right under FOIA is sufficient to establish standing for the purpose of this motion.

as valid the merits of [the plaintiff's] legal claims . . . ." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022). Under these authorities, the Knight Institute clearly had standing to intervene.

## II.   Prospective Intervenors' notices of appeal divested this Court of jurisdiction to take any action with respect to Volume II.

It is a "longstanding tenet of American procedure" that the filing of a notice of appeal confers jurisdiction on the court of appeals and "divests the district court of its control over those aspects of the case involved in the appeal." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam)). The district court retains jurisdiction over "collateral matters that are separate and distinct from the questions presented on appeal." *Burke v. Ocwen Financial Corp.*, No. 21-12160, 2022 WL 599153, at *1 (11th Cir. March 1, 2022) (citing *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 & n.4 (11th Cir. 1999)).[5] Accordingly, this Court lacks jurisdiction to adjudicate Defendants' motions or take any action with respect to Volume II while Prospective Intervenors' appeals are pending. Dkt. 764 and 765 (No. 25-14507 (11th Cir. Dec. 31, 2025)).

Defendants' motions plainly concern questions currently before the Eleventh Circuit—this Court's authority to enjoin the Department of Justice from releasing Volume II outside the Department and the common law and First Amendment rights of access to the copy of Volume II in the Court's possession. For example, the Knight Institute's appeal challenges this Court's supervisory authority to enjoin the Department of Justice from releasing Volume II, but Defendants' motions expressly invoke that authority in seeking an order from this Court directing Volume II's destruction and/or permanently enjoining its release.[6] Dkt. 772 at 2, 12–13; Dkt. 774

---

[5] This Court has previously recognized that a district court's supervisory powers are subject to the "divestiture of jurisdiction over matters before the court of appeals." Dkt. 714, at 7 (citing *Griggs*, 459 U.S. at 58).

[6] American Oversight's appeal does not directly challenge this Court's supervisory authority, but

at 3–4, 10. President Trump's motion, for example, includes sections titled, "This Court Retains Jurisdiction and Inherent Supervisory Authority to Issue an Order Preventing the Release of Volume II," and "The Court Should Exercise Its Authority to Issue an Order Preventing the Release of Volume II." Dkt. 772 at 12–13. Nauta and De Oliveira's motion adopts those arguments and adds a section of its own titled, "This Court Retains the Plenary Authority to Block the Release of the Report." Dkt. 774, at 10.

Another example: The Knight Institute's appeal asserts the presumptive common law and First Amendment right of access to Volume II, and argues that the presumption cannot be overcome. Defendants' motions argue the opposite. Nauta and De Oliveira's motion includes a section titled, "There is No Public Right of Access to the Report." Dkt. 774, at 5. In addition, Defendants' motions argue that the report must be suppressed or destroyed because of the risk of prejudice to Defendants' fair trial rights, the burden to them of having to respond to the allegations in the report, and the report's purported inclusion of unredacted grand jury material, information covered by the attorney/client privilege, and undisclosed discovery material. Nauta and De Oliveira's motion, for example, includes sections titled, "The Primary Legal Basis for the Court's January 21, 2025, Order Remains Valid," "Release of the Report Would be Unduly Burdensome and Prejudicial to Mr. Nauta and Mr. De Oliveira," and "Release of the Report Would Also Inappropriately Risk Violating Grand Jury Secrecy Rules." Dkt. 774, at 3–5, 7–8. President Trump's motion states that "[r]elease would also lead to the public dissemination of sensitive grand jury materials, attorney-client privileged information, and other information derived from

---

rather, American Oversight's right to intervene to challenge that authority. In any event, the question raised by American Oversight's appeal is directly related to this Court's supervisory authority, which is in no way a "collateral matter[] that [is] separate and distinct from the questions presented on appeal." *Burke*, 2022 WL 599153, at *1.

protected discovery materials, raising significant statutory, due process, and privacy concerns for President Trump and his former co-defendants." Dkt. 772, at 1–2. His motion also includes a section titled, "Release Would Improperly Divulge Information Protected by Rule 6(e) and Attorney-Client Privilege." *Id.* at 15–16.

A stay of proceedings is warranted because Defendants' motions raise questions currently before the Eleventh Circuit. There is no argument that these are "collateral matters that are separate and distinct from the questions presented on appeal." *Burke*, 2022 WL 599153, at *1.

## III.  The constitutionality of the Special Counsel's appointment has no bearing on the public right of access to Volume II.

Defendants' motions assert that Volume II should be suppressed because it is the work product of an unconstitutionally appointed Special Counsel. However, none of the statutory, common law, or constitutional access rights at issue depend on the constitutionality of Smith's appointment.

The constitutionality of the Special Counsel's appointment is irrelevant to the statutory right of access created by FOIA. Volume II is subject to the act because it is a record in the possession of the Justice Department. The act "mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Milner v. Dep't of Navy,* 562 U.S. 562, 565 (2011). "These exemptions are explicitly made exclusive and must be narrowly construed." *Id.* (citations omitted). They "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act*." Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). None of the exemptions mentions or has any connection to the Appointments Clause. *See* 5 U.S.C. §§ 552 (b)(1)–(9). And Prospective Intervenors know of no case holding that an agency record otherwise subject to FOIA is not subject to it because it was created by an unconstitutionally appointed official. This is unsurprising. It is plain that a judge-made FOIA carve-out shielding

documents prepared by unconstitutionally appointed officials would flatly contradict the "basic purpose" of the statute, which is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also The News–Press v. U.S. Dep't of Homeland Security*, 489 F.3d 1173, 1190 (11th Cir. 2007).

Nor does the public right of access to judicial documents under the common law or First Amendment turn on the constitutionality of a government official's appointment. The primary function of these access rights is to safeguard public trust in the judicial system. *See Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 606 (1982) ("public access . . . fosters an appearance of fairness, thereby heightening public respect for the judicial process"); *In re Providence Journal Co., Inc.*, 293 F.3d 1, 9 (1st Cir. 2002) ("public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system") (citation omitted). The public's right of access to the report stems from the role the report played in the court's decision to enjoin the report's release. The right does not turn in any way on the constitutionality of the Special Counsel's appointment.

## IV.    The Court lacks authority to order the destruction of Volume II.

Nauta and De Oliveira request that this Court order the "destruction of all copies" of Volume II, with the express purpose of evading FOIA's obligations. Dkt. 774 at 1, 12.[7] Any

---

[7] There is no merit to Nauta and De Oliveira assertion that the Rule 16 protective order requires the destruction of Volume II. Dkt. 774, 4-5 (referring to Dkt. No. 27). The protective order covers "Discovery Material," but the Special Counsel's final report was not produced in discovery. Notably, Defendants did not object to the order and apparently made no effort to include the Special Counsel's final report within the scope of the order, even though Department of Justice regulations clearly required the Special Counsel to prepare and submit such a report to the Attorney General. Every final report of a Special Counsel has been released to the public, with the exception of Volume II.

individual or entity carrying out such an order on behalf of the federal government would be violating federal law—specifically, the Federal Records Act. *See* 44 U.S.C. § 3101, *et seq.*

The FRA "governs the creation, management, and disposal of federal records." *Armstrong v. Bush*, 924 F.2d 282, 284 (D.C. Cir. 1991). The statute requires the head of each federal agency to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures and essential transactions of the agency," 44 U.S.C. § 3101, and further requires "that the federal Archivist promulgate rules regarding record management and preservation that agency heads are obligated to follow." *Doyle v. DHS*, 959 F.3d 72, 79 (2d Cir. 2020) (citing 44 U.S.C. §§ 2904(a), (c)(1), 3105).

The FRA defines "records" to include:

> all recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them.

44 U.S.C. § 3301. "Due to the importance of maintaining federal records (which are generally accessible to the public through the Freedom of Information Act), the act strictly limits the circumstances under which records can be removed from federal custody or destroyed." *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 953 (D.C. Cir. 2016) (citing 44 U.S.C. § 3105(1)). "Federal agencies may not destroy records subject to the FRA without first receiving the Archivist's approval." *Doyle*, 959 F.3d at 79 (citing 44 U.S.C. §§ 3302, 3314) ); *see also* 44 U.S.C. § 3106 (each agency head must "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records").

Volume II—Special Counsel Jack Smith's final report on his investigation and prosecution of President Trump for alleged violations of the Espionage Act—falls squarely within the definition of federal records protected by the FRA, a statute that Congress intended to operate as the exclusive legal framework governing the disposition or destruction of federal records. *See* 44 U.S.C. § 3314.[8]

## CONCLUSION

For the foregoing reasons, the Court should grant the Knight Institute's and American Oversight's Joint Motion to Intervene and stay all proceedings pending the outcome of Prospective Intervenors' appeals.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(2), I hereby certify that counsel for the movants conferred with all parties or nonparties who may be affected by the relief sought in this motion—including counsel for the United States and the three former Defendants—in a good faith effort to resolve the issues. The United States and Defendants Trump, Nauta, and De Oliveira oppose the relief sought herein.

Dated: February 9, 2026                    Respectfully submitted,

                                           /s/ *David Buckner*
                                           David Buckner
                                           Florida Bar No.:
                                           Buckner + Miles
                                           2020 Salzedo Street
                                           Suite 302
                                           Coral Gables FL 33134
                                           Phone: (305) 964-8003
                                           david@bucknermiles.com

---

[8] Letter from Jack Smith, Special Couns., Dep't of Justice, to Merrick Garland, Att'y Gen., Dep't of Justice (Jan. 7, 2025) ("Smith Letter to Garland"), https://www.justice.gov/storage/Report-of-Special-Counsel-Smith-Volume-1-January-2025.pdf.

Scott Wilkens (*pro hac vice*)
Alex Abdo (*pro hac vice*)
Jameel Jaffer (*pro hac vice*)
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, N.Y. 10115
Phone: (646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Prospective Intervenor Knight
First Amendment Institute at Columbia
University*

*/s/ Barbara Llanes*
Adam M. Schachter
Florida Bar No. 647101
aschachter@gsgpa.com
Barbara R. Llanes
Florida Bar No.1032727
bllanes@gsgpa.com
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

Loree Stark (*pro hac vice*)
Elizabeth Haddix (*pro hac vice*)
American Oversight
1030 15th Street NW, B255
Washington, DC 20005
Telephone: (304) 913-6114
E-mail: loree.stark@americanoversight.org

*Counsel for Prospective Intervenor American
Oversight*

## CERTIFICATE OF SERVICE

I, David Buckner, do hereby certify that I have filed the foregoing Joint Expedited Motion of the Knight First Amendment Institute at Columbia University and American Oversight to Intervene for the Purpose of Seeking a Stay of Proceedings with the Clerk of the Court for the United States District Court for the Southern District of Florida on February 9, 2026, via CM/ECF, through which service will be made on all parties in this matter.

Dated: February 9, 2026                    Respectfully submitted,

                                           /s/ *David Buckner*
                                           David Buckner
                                           Buckner + Miles
                                           2020 Salzedo Street
                                           Suite 302
                                           Coral Gables FL 33134
                                           (305) 964-8003

                                           *Counsel for Prospective Intervenor Knight*
                                           *First Amendment Institute at Columbia*
                                           *University*

666