No. 25-14507

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

## United States of America,

*Plaintiff-Appellee,*

v.

## Knight First Amendment Institute at Columbia University; American Oversight,

*Interested Parties-Appellants,*

## Donald J. Trump; Waltine Nauta; Carlos De Oliveira,

*Defendants-Appellees.*

———————————

On Appeal from the United States District Court
for the Southern District of Florida
No. 9:23-cr-80101-AMC

———————————

## UNOPPOSED BRIEF OF *AMICUS CURIAE* AMERICA FIRST LEGAL FOUNDATION SUPPORTING DEFENDANTS-APPELLEES AND SUPPORTING AFFIRMANCE

Crystal Clanton
Daniel Z. Epstein
Emily Percival
Robert A. Crossin
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
Phone: (202) 964-3721
crystal.clanton@aflegal.org

*Counsel for Amicus Curiae*

*United States v. Knight First Amendment Institute, et al.*, No. 25-14507

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

As required by Eleventh Circuit Rules 26.1-1, 28-1, and 29-2, I certify that in addition to the individuals listed in the appellants' briefs (Dkt. 38, 41) and the *amicus curiae* brief (Dkt. 50), the following persons and entities have an interest in the outcome of this matter:

1. America First Legal Foundation, *Amicus Curiae*

2. Clanton, Crystal, *Counsel for Amicus Curiae America First Legal Foundation*

3. Crossin, Robert, *Counsel for Amicus Curiae America First Legal Foundation*

4. Epstein, Daniel, *Counsel for Amicus Curiae America First Legal Foundation*

5. Percival, Emily, *Counsel for Amicus Curiae America First Legal Foundation*

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1, *amicus curiae* America First Legal Foundation declares that it has no parent corporation nor any shares that could be owned by a publicly held corporation.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT** ................................... C-1

**TABLE OF CITATIONS** ...................................................................... iii

**INTEREST OF *AMICUS CURIAE*** ........................................................ 1

**SUMMARY OF THE ARGUMENT** ....................................................... 2

**STATEMENT OF THE ISSUES** ............................................................. 5

**ARGUMENT** ......................................................................................... 5

**I.    Volume II is not an "agency record" under the Federal Records Act or the Records Disposal Act because the Special Counsel's appointment and work were unauthorized.** ................... 5

    A.    Smith's appointment violated the Appointments Clause. ......... 6

    B.    Smith's operation violated the Appropriations Clause. ........... 11

    C.    Volume II is not an "agency record" under the FRA. .............. 12

**II.    Because Volume II is not an agency record, it is not subject to preservation or disposition schedules.** ........................ 15

    A.    Nonrecords are not subject to the FRA's preservation obligations. ......................................................................... 15

    B.    Nonrecords are not subject to the RDA's disposition schedules. ......................................................................... 15

**III.    Even if this Court holds that Volume II is an agency record under the FRA, it qualifies for disposition under the RDA.** ......................................................................................... 16

    A.    Volume II is not needed for current agency business ............... 16

    B.    The current administration's determination that preservation is unnecessary is entitled to deference. ........................ 19

**IV.   Even if this Court holds that Volume II is an agency record under the FRA, dissemination violates the Privacy Act of 1974.** ............................................................. 20

    A.   Volume II is a "record" subject to the Privacy Act. .................. 21

    B.   The Privacy Act forbids dissemination of Volume II. ............... 22

    C.   Disposal is permissible under the Privacy Act. ........................ 26

**CONCLUSION** ........................................................ 28

**CERTIFICATE OF COMPLIANCE** ..................................... 30

**CERTIFICATE OF SERVICE** ........................................... 31

# TABLE OF CITATIONS

**Page(s)**

## Supreme Court of the United States Cases

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ................................................................ 10

*Carr v. United States,*
    560 U.S. 438 (2010) .............................................................. 9

*CFPB v. Cmty. Fin. Servs. Ass'n of Am. Ltd.,*
    601 U.S. 416 (2024) ............................................................ 11

*Forsham v. Harris,*
    445 U.S. 169 (1980) ............................................................ 15

*Heckler v. Chaney,*
    470 U.S. 821, 833 (1985) .................................................... 13

* *Kissinger v. Reps. Comm. for Freedom of the Press,*
    445 U.S. 136 (1980) ...................................................... 15, 19

* *Lucia v. SEC,*
    585 U.S. 237 (2018) .................................................. 6, 10, 11

*Nat'l Aeronautics & Space Admin. v. Nelson,*
    562 U.S. 134 (2011) ............................................................ 26

*Off. of Pers. Mgmt. v. Richmond,*
    496 U.S. 414 (1990) ............................................................ 11

*Trump v. United States,*
    603 U.S. 593 (2024) .............................................................. 7

*U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.,*
    510 U.S. 487 (1994) ............................................................ 24

\* *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*,
489 U.S. 749 (1989) ................................................................ 24, 25

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
592 U.S. 261 (2021) ........................................................................ 23

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) .............................................................................. 6

*United States v. Germaine*,
99 U.S. 508 (1878) ............................................................................ 6

*United States v. Perkins*,
116 U.S. 483 (1886) ........................................................................ 11

*United States v. Wilson*,
503 U.S. 329 (1992) .......................................................................... 9

## Other Federal Cases

\* *Armstrong v. Exec. Off. of the President*,
1 F.3d 1274 (D.C. Cir. 1993) ..................................................... 13, 14

*Bartel v. Fed. Aviation Admin.*,
725 F.2d 1403 (D.C. Cir. 1985) ...................................................... 28

*Bureau of Nat'l Affs. v. U.S. Dep't of Just.*,
742 F.2d 1484 (D.C. Cir. 1984) ...................................................... 14

*Clarkson v. IRS*,
678 F.2d 1368 (11th Cir. 1982) ...................................................... 21

*Cochran v. United States*,
770 F.2d 949 (11th Cir. 1985) ........................................................ 21

*CSX Transp. v. Ala. Dep't of Revenue*,
888 F.3d 1163 (11th Cir. 2018) ...................................................... 10

*Horowitz v. Peace Corps*,
    428 F.3d 271 (D.C. Cir. 2005) ........................................................ 24

*United States v. Bd. of Trs. for Univ. of Ala.*,
    908 F.2d 740 (11th Cir. 1990) ........................................................ 20

*United States v. Trump*,
    740 F. Supp. 3d 1245 (S.D. Fla. 2024) ............................................ 2

## Constitution

U.S. CONST. art. I, § 9, cl. 7 ....................................................... 11

U.S. CONST. art. II, § 2, cl. 2 ...................................................... 6

## Federal Statutes

5 U.S.C. § 552a ............................................................... 20–28

7 U.S.C. § 610 .................................................................... 10

20 U.S.C. § 3461 ................................................................. 10

28 U.S.C. § 509 ................................................................... 7

28 U.S.C. § 510 ................................................................ 7, 8

28 U.S.C. § 515 ................................................................ 7, 8

28 U.S.C. § 533 ............................................................. 7, 9, 10

28 U.S.C. § 591 .................................................................. 12

42 U.S.C. § 913 .................................................................. 10

44 U.S.C. §§ 2101–2118, 2901–2911, 3101–3107 ............................... 5, 12

44 U.S.C. § 3301 ............................... 4, 5, 6, 13, 14, 15, 16, 20

44 U.S.C. § 3303.........................................................................16, 17, 19

44 U.S.C. § 3314...........................................................................5, 15, 16

49 U.S.C. § 323.....................................................................................10

Department of Justice Appropriation Act of 1988
    Pub. L. No. 100–102, 101 Stat. 1329 (1987)....................................12

## Federal Regulations

28 C.F.R. § 600.3....................................................................................8

28 C.F.R. § 600.6..................................................................................10

28 C.F.R. § 600.8..................................................................................18

36 C.F.R. § 1220.18........................................................................14, 16

36 C.F.R. § 1222.10..............................................................................13

## Other Authorities

Dep. of Jack Smith Before the H. Comm. on the Judiciary,
119th Cong. 68:5–6 (Dec. 17, 2025), https://perma.cc/7H66-YLWX.......18

DRUG ENF'T ADMIN., RECORDS SCHEDULE DAA-0170-2013-0004,
SEQUENCE NUMBER 1.1, DISPOSITION AUTHORITY
DAA-0170-2013-0004-0001 ...................................................................17

NAT'L ARCHIVES & RECS. ADMIN., GENERAL RECORDS SCHEDULE 5.6:
SECURITY MANAGEMENT RECORDS, ITEM 200,
DISPOSITION AUTHORITY DAA-GRS 2017-00060027 (2024)....................17

OFF. OF THE ATT'Y GEN., ORDER NO. 5559-2022, APPOINTMENT OF
JOHN L. SMITH AS SPECIAL COUNSEL (Nov. 18, 2022) ...............................6

*The Presidential Records Act Cannot Supersede a Former President's Authority Over Presidential Papers*, AM. FIRST LEGAL FOUND. (Oct. 10, 2023), https://perma.cc/USB6-YCKL. ...................................... 19

## INTEREST OF *AMICUS CURIAE*[1]

America First Legal Foundation ("AFL") is a nonprofit organization dedicated to promoting the rule of law in the United States and defending individual rights guaranteed under the Constitution.

AFL has a strong interest in this case because it regularly litigates matters involving the statutory schemes implicated here, including the Federal Records Act and the Freedom of Information Act. *See, e.g.*, Compl., *Am. First Legal Found. v. U.S. Gov't Accountability Off.*, No. 25-cv-662 (D.D.C. Mar. 6, 2025), Dkt. No. 1, *appeal docketed*, No. 26-5052 (D.C. Cir. Feb. 11, 2026); Compl., *Solomon v. Garland*, No. 23-cv-759 (D.D.C. Mar. 21, 2023), Dkt. No. 1.

AFL also produces scholarship regarding the statutory schemes implicated here. *See, e.g.*, *The Presidential Records Act Cannot Supersede a Former President's Authority Over Presidential Papers*, AM. FIRST LEGAL FOUND. (Oct. 10, 2023), https://perma.cc/USB6-YCKL.

---

[1] No party's counsel authored the brief in whole or in part, and no entity or person aside from *amicus*, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief. *See* FED. R. APP. P. 29(a)(4)(E).

## SUMMARY OF THE ARGUMENT

In November 2022, then-Attorney General Merrick Garland appointed Jack Smith as Special Counsel to oversee federal investigations into President Donald J. Trump concerning alleged election interference and the alleged retention of classified documents.

In July 2023, at Smith's request, a federal grand jury in the Southern District of Florida returned a superseding indictment charging President Trump, Waltine Nauta, and Carlos De Oliveira with various offenses related to the allegedly unlawful retention of national defense information. *See* Superseding Indictment, *United States* v. *Trump*, No. 23-cr-80101 (S.D. Fla. July 27, 2023), Dkt. No. 85. In July 2024, the district court dismissed the superseding indictment, concluding that Smith's appointment violated the Constitution. *United States* v. *Trump*, 740 F. Supp. 3d 1245, 1252 (S.D. Fla. 2024). Smith appealed the dismissal as to all three defendants. Following the 2024 presidential election, however, Smith moved to dismiss the appeal as to President-elect Trump. And last year, at the request of the United States Attorney for the Southern District of Florida, the Eleventh Circuit dismissed the appeal as to Nauta and De Oliveira. The criminal case is now over.

2

In early January 2025, while the appeal as to Nauta and De Oliveira remained pending, Smith transmitted a two-volume confidential "Final Report" to the Attorney General. The first volume addressed the investigation and charges brought in the District of Columbia relating to alleged interference with the lawful transfer of power following the 2020 election and has been publicly released. The second volume ("Volume II") concerned the investigation and prosecution of charges brought in the Southern District of Florida against Trump, Nauta, and De Oliveira. Volume II has not been released to anyone outside the Department of Justice ("DOJ").

Two non-parties to the underlying criminal case, American Oversight and the Knight First Amendment Institute, sought access to Volume II under the Freedom of Information Act ("FOIA") and attempted to intervene in the closed criminal case. But the district court denied intervention to the non-parties and enjoined DOJ from releasing Volume II.

This appeal turns on whether the non-parties have a right to access Volume II. For the reasons that follow, this Court should affirm the district court's determination that Volume II may not be disseminated to anyone outside of DOJ.

Volume II is not an "agency record" subject to the Federal Records Act or the Records Disposal Act because it was produced by an office that at all times lacked constitutional authority. The Special Counsel's appointment violated the Appointments Clause, and his office was funded in violation of the Appropriations Clause. As a result, the investigation was *ultra vires*, and its outputs—including Volume II—were not "made or received by a Federal agency under Federal law or in connection with the transaction of public business." 44 U.S.C. § 3301(a)(1)(A). Volume II is therefore not subject to the Federal Records Act's preservation requirements or the Records Disposal Act's disposal schedules.

Even if Volume II is deemed an agency record, it qualifies for disposition under the Records Disposal Act. Volume II is no longer needed for current agency business and it lacks administrative or legal value. *See id.* § 3303(2). DOJ's determination that Volume II should be discarded is entitled to deference.

In any event, dissemination of Volume II is independently barred by the Privacy Act, which prohibits disclosure of sensitive investigative records absent a specific statutory exception. No such exception applies here, and because Volume II documents an unauthorized and terminated

4

investigation, its continued retention perpetuates unwarranted invasions of personal privacy. Disclosure is therefore a legally inappropriate outcome.

## STATEMENT OF THE ISSUES

The issue is whether the district court correctly denied Knight First Amendment Institute at Columbia University's and American Oversight's motions to intervene in the now-closed criminal case against President Trump, Waltine Nauta, and Carlos De Oliveira.

## ARGUMENT

## I. Volume II is not an "agency record" under the Federal Records Act or the Records Disposal Act because the Special Counsel's appointment and work were unauthorized.

The Federal Records Act ("FRA"), 44 U.S.C. §§ 2101–2118, 2901–2911, 3101–3107, and the complementary Records Disposal Act ("RDA"), *id.* § 3301–3314, govern only materials that are "made or received by a Federal agency under Federal law or in connection with the transaction of public business." *Id.* § 3301(a)(1)(A). Because Smith's appointment as Special Counsel was unconstitutional and his office functioned in continuous violation of the Appropriations Clause, the outputs of that office—including Volume II—were not "made . . . in connection with the

5

transaction of public business." *Id*. Volume II is therefore not a "record[]" subject to the FRA or the RDA. *Id*.

## A. Smith's appointment violated the Appointments Clause.

The Appointments Clause "prescribes the exclusive means of appointing 'Officers'" of the United States. *Lucia v. SEC*, 585 U.S. 237, 244 (2018). It recognizes "two classes" of constitutional officers: (1) "principal" officers, and (2) "inferior" officers. *United States v. Germaine*, 99 U.S. 508, 509–11 (1878). The President must appoint principal officers with the advice and consent of the Senate. U.S. CONST. art. II, § 2, cl. 2. That process is also the "default" method for appointing inferior officers. *United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021) (internal quotation marks omitted). Congress may depart from that default only "by law" and only by vesting authority to appoint inferior officers "in the president alone, in the Courts of Law, or in the Heads of Departments." U.S. CONST. art. II, § 2, cl. 2.

In November 2022, then-Attorney General Merrick Garland purported to appoint Smith, a private attorney from outside the United States Government, to serve as Special Counsel for DOJ. *See* OFF. OF THE ATT'Y GEN., ORDER NO. 5559-2022, APPOINTMENT OF JOHN L. SMITH AS

SPECIAL COUNSEL (Nov. 18, 2022) (the "Appointment Order"). Smith has never disputed that he is an inferior officer. *See* Br. for the United States in Resp. to Meese Amici Curiae Br. at 6–12, *United States v. Trump*, No. 23-cr-80101 (S.D. Fla. Mar. 15, 2024), Dkt. No. 405. Because Smith was appointed by the Attorney General, his appointment was constitutional only if Congress affirmatively vested appointment authority in the Attorney General. It did not.

The Appointment Order asserts that such authority derives from 28 U.S.C. §§ 509, 510, 515, and 533. But none of those provisions confer broad inferior-officer appointing power on the Attorney General.

The first cited authority—Section 509—is a "generic" housekeeping provision that vests DOJ functions in the Attorney General. *Trump v. United States*, 603 U.S. 593, 648 (2024) (Thomas, J., concurring); *see* 28 U.S.C. § 509.[2] It neither creates an office nor confers appointment authority, and Smith has never contended otherwise.

---

[2] This statute provides that "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General except [for exceptions not relevant here]." 28 U.S.C. § 509.

The second authority—Section 510—permits the Attorney General to delegate his existing functions to "any other officer, employee, or agency *of the Department of Justice*." 28 U.S.C. § 510 (emphasis added). This statute merely affords the Attorney General flexibility to delegate duties to people or entities *already within* DOJ. Smith was "selected from outside the United States Government." 28 C.F.R. § 600.3(a). Section 510, therefore, provides no support for his appointment.

Section 515 fares no better. Subsection (a) authorizes the Attorney General, other DOJ officers, or an "attorney specially appointed by the Attorney General under law"—that is, an attorney appointed under *some other law*—to conduct legal proceedings that "United States attorneys are authorized by law to conduct," without regard to the attorney's residency in the relevant district. 28 U.S.C. § 515(a). The provision affords the Attorney General territorial flexibility in deploying already-authorized litigators and nothing more.

Subsection (b) merely supplies procedural details—commissioning, oath, and salary—for attorneys already "retained" by DOJ. *Id.* § 515(b). Congress's use of the past participle of "retain" confirms that the provision governs already-retained personnel, not the appointment of new

8

officers. *See Carr v. United States*, 560 U.S. 438, 450 (2010) (explaining that "varied" verb tenses communicate different meanings); *United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). The provision therefore governs the deployment of existing personnel; it does not authorize the appointment of new officers.

That leaves Section 533. Located in a chapter devoted to the Federal Bureau of Investigation ("FBI"), Section 533 authorizes the Attorney General to "appoint officials" to perform specified investigative and protective functions. It provides in relevant part:

> The Attorney General may appoint officials—
> (1) to detect and prosecute crimes against the United States;
> (2) to assist in the protection of the person of the President; and [sic]
> (3) to assist in the protection of the person of the Attorney General. [sic]
> (4) to conduct such other investigations regarding official matters under the control of the Department of Justice and the Department of State as may be directed by the Attorney General.

28 U.S.C. § 533.

Read in context, the statute concerns FBI personnel—investigators and security officials—not constitutional officers exercising prosecutorial

authority. Subsections (2) through (4) address FBI employees who provide protective and investigative services, the kind of "lesser functionaries" who fall outside the Appointments Clause. *Lucia*, 585 U.S. at 245 (internal quotation marks omitted); *see also Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976) (per curiam).

It is inconceivable that Congress would vest the Attorney General with authority to appoint special counsels wielding "the full power . . . of any United States Attorney," 28 C.F.R. § 600.6, in a statute governing FBI investigative staff. *See CSX Transp. v. Ala. Dep't of Revenue*, 888 F.3d 1163, 1176 (11th Cir. 2018) (explaining that "Congress does not generally hide elephants in mouseholes" (internal quotation marks and citation omitted)). Congress knows how to vest appointment authority for inferior officers and typically does so expressly, using the word "officer." *See, e.g.*, 7 U.S.C. § 610(a); 20 U.S.C. § 3461(a); 42 U.S.C. § 913; 49 U.S.C. § 323(a). Section 533 does not do this.

Statutory placement reinforces this conclusion. Section 533 sits between provisions governing the FBI Director and evidentiary matters in criminal cases. *See* 28 U.S.C. §§ 532–534. It would be extraordinary for

Congress to embed special-counsel appointment authority—of immense constitutional consequence—in a provision about routine FBI operations.

"The head of a department has no constitutional prerogative of appointment to offices independently of the legislation of [C]ongress." *United States v. Perkins*, 116 U.S. 483, 485 (1886). Because no statute authorizes the Attorney General to appoint a private citizen as Special Counsel wielding the full authority of a U.S. Attorney for a specific matter, Smith's appointment by the Attorney General was unconstitutional. It necessarily follows that all of Smith's work as Special Counsel is invalid and his actions lack legal force. *See Lucia*, 585 U.S. at 251–52.

## B. Smith's operation violated the Appropriations Clause.

The Constitution's Appropriations Clause provides that no money may be "drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. CONST. art. I, § 9, cl. 7. This "straightforward and explicit command" means that "no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (citation omitted). To satisfy this constitutional requirement, an appropriation must "identify a source of public funds and authorize the expenditure of those funds for designated

purposes." *CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 426 (2024).

It is undisputed that Smith's office received its funding under "a permanent indefinite appropriation . . . established within the Department of Justice to pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. [§] 591 et seq. or other law." Department of Justice Appropriation Act of 1988, Pub. L. No. 100–202, 101 Stat. 1329, 1329–9 (1987). But the provisions of 28 U.S.C. § 591 (the Independent Counsel Act) expired in 1999. Thus, Smith must have been appointed pursuant to some "other law" to access the indefinite appropriation. Department of Justice Appropriation Act of 1988**,** Pub. L. No. 100–202, 101 Stat. at 1329–9 (1987). As discussed above, Smith was not lawfully "appointed pursuant to . . . other law." *Id.* It follows that Smith's office drew funds from the Treasury without statutory authorization in violation of the Appropriations Clause.

## C. Volume II is not an "agency record" under the FRA.

The FRA and the RDA establish a comprehensive framework for federal agency recordkeeping. The FRA requires agency heads to make and preserve "records" that adequately document the agency's

12

"organization, functions, policies, decisions, procedures, and essential transactions," as well as records that "protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101. The RDA supplies the "exclusive mechanism" for the disposal of agency records. *Armstrong v. Exec. Off. of the President, Off. of Admin.*, 1 F.3d 1274, 1278 (D.C. Cir. 1993) (per curiam).

Both statutes apply only to agency "records"—meaning materials "made or received by a Federal agency under Federal law or in connection with the transaction of public business." 44 U.S.C. § 3301(a)(1)(A). Embedded in this definition is the premise that the agency is engaged in *lawful*, rather than *ultra vires*, transactions in public business. *See Heckler v. Chaney*, 470 U.S. 821, 833 (1985) (explaining that Congress assumes that agencies act within their lawful authority). Consistent with that understanding, regulations promulgated by the National Archives and Records Administration ("NARA")—the entity charged with administering and enforcing the FRA and the RDA—define the terms "made" and "received" with reference to agency personnel acting "in the course of their official duties." 36 C.F.R. § 1222.10(b)(3)–(4).

13

Volume II is not a "record[]" under 44 U.S.C. § 3301. Because Smith's appointment and operation of the Special Counsel's office were unconstitutional, his actions as Special Counsel were *ultra vires*. Volume II, therefore, was not "made or received by a Federal agency under Federal law or in connection with the transaction of public business." *Id.* § 3301(a)(1)(A); *see also Armstrong*, 1 F.3d at 1283.

Volume II is more properly analogized to a personal document or material generated through unofficial private activity. Personal papers are documents that an agency official "does not rely upon to perform his or her [official] duties." *Bureau of Nat'l Affs. v. U.S. Dep't of Just.*, 742 F.2d 1484, 1493 (D.C. Cir. 1984); *see also* 36 C.F.R. § 1220.18 (defining personal files as "documentary materials belonging to an individual that are not used to conduct agency business"). Because Smith was unlawfully appointed, he had no lawful duties to perform and no authority to create or use materials to conduct agency business. Volume II is best understood as a document prepared solely in Smith's personal capacity and therefore falls outside the scope of the FRA and the RDA.

## II.    Because Volume II is not an agency record, it is not subject to preservation or disposition schedules.

Because Volume II is not an agency record, it is not subject to the FRA's preservation obligations or the RDA's disposition requirements.

### A. Nonrecords are not subject to the FRA's preservation obligations.

The FRA's preservation obligations attach only to agency "records." 44 U.S.C. § 3301(a)(1)(A). As the Supreme Court has explained, "[g]overnment documents made or received by an agency that are not appropriate for preservation are referred to as 'nonrecord materials.'" *Forsham v. Harris*, 445 U.S. 169, 183 n.14 (1980) (citing 41 C.F.R. § 101–11.401–3(d) (1979)). Nonrecords fall outside the scope of the FRA and are not subject to the statute's preservation requirements.

### B. Nonrecords are not subject to the RDA's disposition schedules.

Nonrecords are also not subject to the RDA, which prescribes the "exclusive" procedures for the disposition of agency records. 44 U.S.C. § 3314; *accord Kissinger v. Reps. Comm. for Freedom of Press*, 445 U.S. 136, 147 (1980). By its plain terms, the RDA applies only to materials that qualify as "records" under Section 3301. Materials that fall outside that definition are nonrecord materials and may be disposed of through

15

ordinary administrative processes without approval from the Archivist of the United States. *See* 36 C.F.R. § 1220.18 (explaining that "disposition instructions for nonrecord materials are established by the agency and do not require NARA approval"). Agencies, therefore, retain full discretion over the disposition of nonrecords, unconstrained by the RDA's procedural requirements.

In sum, because Volume II is not an agency "record," 44 U.S.C. § 3301(a)(1)(A), DOJ may dispose of it in its discretion without triggering the FRA's preservation obligations or the RDA's disposition procedures.

## III. Even if this Court holds that Volume II is an agency record under the FRA, it qualifies for disposition under the RDA.

Even if this Court determines that Volume II is an agency record, it qualifies for disposition because it is no longer needed for the transaction of public business and it serves no essential agency purpose.

### A. Volume II is not needed for current agency business.

As explained above, the RDA supplies the "exclusive" procedures for disposing of agency records. 44 U.S.C. § 3314. It provides that agencies may submit lists of records "not needed" for the "transaction of its current business" if those records "do not appear to have sufficient administrative, legal, research, or other value to warrant their further

16

preservation." 44 U.S.C. § 3303(2). The Archivist of the United States reviews the schedules submitted by agencies and may authorize disposition when the records "do not, or will not after the lapse of the period specified, have sufficient administrative, legal, research, or other value to warrant their continued preservation by the Government." 44 U.S.C. § 3303a.

Many approved disposition schedules expressly authorize destruction of investigative files after an investigation is closed or after a fixed post-closure retention period, treating case closure as the trigger for lawful disposal rather than a barrier to it. *See, e.g.*, NAT'L ARCHIVES & RECS. ADMIN., GENERAL RECORDS SCHEDULE 5.6: SECURITY MANAGEMENT RECORDS, ITEM 200, DISPOSITION AUTHORITY DAA-GRS 2017-00060027 (2024) (requiring disposition of case files "about investigating alleged violations of executive orders, laws, or agency regulations on safeguarding national security information" after "5 years" from the close of case or final action.); DRUG ENF'T ADMIN., RECORDS SCHEDULE DAA-0170-2013-0004, SEQUENCE NUMBER 1.1, DISPOSITION AUTHORITY DAA-0170-2013-0004-0001 (requiring disposition of "DEA Reports of investigation concerning offenses related to violations of drug/narcotic laws" after "25 years" from the date the case was closed). These schedules reflect NARA's consistent

judgment that investigative records ordinarily lose continuing administrative or legal value once an investigation has concluded.

Even if this Court determines that Volume II is an agency record, it plainly qualifies for authorized disposition because DOJ does not need it for any current business and lacks administrative, legal, research, or other value. All of Smith's work has concluded, as demonstrated by his submission of Volume II to the Attorney General. *See* 28 C.F.R. § 600.8(c) ("*At the conclusion of the Special Counsel's work*, he or she shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel." (emphasis added)). Smith himself confirmed that his involvement with Volume II ended upon submission, testifying that he had not reviewed it since delivering it to the Attorney General nearly a year earlier. Dep. of Jack Smith Before the H. Comm. on the Judiciary, 119th Cong. 68:5–6 (Dec. 17, 2025), https://perma.cc/7H66-YLWX. Thus, Volume II is no longer needed for the transaction of current business.

Volume II also lacks administrative, legal, research, or other value warranting continued preservation. The classified-documents case and the related appeal have been dismissed, and all operations of the Special

Counsel's Office have ceased. With no ongoing proceedings, oversight functions, or operational responsibilities, Volume II serves no continuing governmental purpose.

### B. The current administration's determination that preservation is unnecessary is entitled to deference.

The FRA requires agencies to maintain records not to "fill filing cabinets or occupy floor space" but instead to "serve the administrative and executive purposes of the organization that creates them." *Kissinger*, 445 U.S. at 149 (citation omitted). Consistent with that purpose, Congress vested agencies—subject to NARA approval—with primary responsibility to determine when records have outlived their utility. *See* 44 U.S.C. §§ 3303(3), 3303a(a) (providing that disposition schedules turn on agency needs and NARA approval). Courts, therefore, owe significant deference to an agency's considered judgment that particular records are no longer necessary to its operations. *See The Presidential Records Act Cannot Supersede a Former President's Authority Over Presidential Papers*, AM. FIRST LEGAL FOUND. (Oct. 10, 2023), https://perma.cc/USB6-YCKL (explaining that Congress's regulation of records cannot impede the authority of the Executive Branch).

DOJ has expressly determined that the preservation of Volume II serves no legitimate purpose. *See* United States' Resp. to December 22, 2025, Order at 3, *United States v. Trump*, No. 23-cr-80101 (S.D. Fla. Jan. 23, 2026), Dkt. No. 773 ("The illicit product of an unlawful investigation and prosecution belongs in the dustbin of history."). That determination reflects DOJ's considered assessment of its own institutional needs and is entitled to deference. *See United States v. Bd. of Trs. for Univ. of Ala.*, 908 F.2d 740, 747 (11th Cir. 1990) (explaining that "[a]n agency acting within its authority to make policy choices consistent with the congressional mandate should receive considerable deference from courts" (citation omitted)). Thus, even if Volume II is deemed an agency record, DOJ may propose its disposition by listing it on a disposition schedule.

## IV. Even if this Court holds that Volume II is an agency record under the FRA, dissemination violates the Privacy Act of 1974.

Even if this Court determines that Volume II is a "record" under 44 U.S.C. § 3301, dissemination of Volume II is unlawful under the Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a.

20

## A. Volume II is a "record" subject to the Privacy Act.

The Privacy Act governs the management and disclosure of confidential records maintained by Executive Branch agencies. *Cochran v. United States*, 770 F.2d 949, 954 (11th Cir. 1985). Unlike the FRA and the RDA, which define "records" for federal records management purposes, the Privacy Act adopts a distinct, narrower definition. A "record" under the Privacy Act is "any item, collection, or grouping of information about an individual that is maintained by an agency," which includes records containing an individual's name or other identifying particulars. 5 U.S.C. § 552a(a)(4).

Volume II squarely fits that definition. It consists of non-public information compiled during the investigation, including interview transcripts, search warrant materials, toll records, video footage, and attorney-client privileged assertions by President Trump. *See* Opening Br. of Appellants at 11–12, Dkt. No. 38 (describing materials reviewed *in camera* by the district court). It also contains "individual references" to specific, identifiable individuals, including President Trump, Waltine Nauta, Carlos De Oliveira, witnesses, and others. *Clarkson v. IRS*, 678 F.2d 1368, 1373 (11th Cir. 1982) (explaining that there was "no dispute"

that IRS records were "records" under the Privacy Act because they contained "individual references" to the plaintiff). And these materials are maintained by DOJ. Volume II, therefore, constitutes a "record" within the meaning of the Privacy Act.

## B. The Privacy Act forbids dissemination of Volume II.

The Privacy Act establishes a general prohibition against the disclosure of covered records. It provides that "[n]o agency shall disclose any record . . . by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless [a specifically enumerated exception applies]." 5 U.S.C. § 552a(b). Because Volume II is a Privacy Act record maintained by DOJ, the default rule of nondisclosure applies.

Although the Privacy Act contains a limited set of statutory exceptions, none authorizes the public release of non-public investigative materials of the kind contained in Volume II. Numerous exceptions plainly do not apply here, including disclosures to agency personnel for official

duties, § 552a(b)(1); disclosures for routine use,[3] § 552a(b)(3); disclosures required for certain census-related circumstances, § 552a(b)(4); disclosures for statistical research or archival purposes, §§ 552a(b)(5)–(6); disclosures for health or safety purposes, § 552a(b)(8); disclosures to Congress, the Comptroller General, or the Congressional Budget Office, §§ 552a(b)(9)–(11); disclosures pursuant to a court order, § 552a(b)(12); or disclosures to consumer reporting agencies, § 552a(b)(13).

At most, two exceptions are arguably implicated: Sections 552a(b)(2) and 552a(b)(7).

Section 552a(b)(2) permits disclosure only where release of the record would be required under FOIA. 5 U.S.C. § 552a(b)(2). But FOIA does not mandate disclosure merely because a record exists; the statute contains nine exemptions that protect various interests. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 263 (2021). The personal-privacy exemption requires courts to balance the privacy interests of individuals against the public's interest in disclosure. *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495–96 (1994). The relevant public interest is

---

[3] Volume II was never subject to a published routine use notice authorizing public or congressional release of such detailed personal investigative materials.

limited to whether disclosure would "shed[] light on an agency's performance of its statutory duties" or otherwise inform citizens about "what their government is up to." *Id.* at 495–97 (citation omitted). That public interest is not "fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989). Even "seemingly innocuous" private information could outweigh the public's interest in disclosure, especially where such information would "disparage the privacy of the home." *Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005) (citing and interpreting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487 (1994)).

Further, requests for "law enforcement records or information about a private citizen" without reference to "'official information' about a Government agency" represent an unwarranted invasion of privacy. *Reps. Comm.,* 489 U.S. at 780. This is especially so where disclosure would essentially boil down to "one private citizen . . . seeking information about another." *Id.* at 773.

24

This is obviously a case of "one private citizen . . . seeking information about another." *Id.* Appellants seek disclosure of Volume II because they want the information about President Trump while he was a private citizen from 2021 to 2024. *See* Opening Br. of Appellants at 41, Dkt. No. 38 (explaining that Volume II "contains a wealth of information about the investigation and prosecution of *President Trump* that has not been made public." (emphasis added)); Opening Br. of Appellant at 2, Dkt. No. 41 (characterizing Volume II as "relating to allegations of *President Trump's* handling of classified documents *following his first term in office.*" (emphasis added)). But FOIA's central purpose is to shed light on the government's actions, not to release "information about *private citizens* that happens to be in the warehouse of the Government." *Reps. Comm.*, 489 U.S. at 774. Where, as here, disclosure would expose sensitive personal information without advancing FOIA's core purpose, Section 552a(b)(2) provides no authorization for release.

The only other potentially relevant exception is Section 552a(b)(7), which allows disclosure for civil or criminal law enforcement purposes. That exception, however, does not apply to a terminated investigation that was constitutionally defective from its inception. *Cf.* 28 C.F.R.

§§ 16.88(d)(2), 16.91(b)(1) (applying Privacy Act exemptions to systems containing records compiled for criminal law-enforcement investigations). A closed investigation that lacks constitutional validity cannot supply the predicate "law enforcement" purpose required by the statute or its implementing regulations. *See* 5 U.S.C. § 552a(b)(7).

Absent written consent from each individual to whom the record pertains, the Privacy Act prohibits the dissemination of Volume II.

**C. Disposal is permissible under the Privacy Act.**

The Privacy Act reflects Congress's judgment that agencies must strike a careful balance between preserving records that serve legitimate governmental functions and avoiding the unnecessary retention of sensitive information about individuals. To that end, the Privacy Act limits an agency's authority to maintain personal information, providing that an agency may "maintain in its records *only* such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished" by law. 5 U.S.C. § 552a(e)(1) (emphasis added); *accord Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 142 (2011). It also requires agencies to "maintain all records which are used by the agency in making any determination about any

individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5).

Volume II is not "relevant and necessary" to any purpose "required to be accomplished" by law. *Id.* § 552a(e)(1). Smith's appointment and office were unauthorized, rendering the entire effort *ultra vires* from its inception. And even if Smith's office once possessed statutory authorization (it did not), no legislative or executive directive presently requires the continuation of that investigation. Because Volume II documents an unauthorized investigative effort rather than a statutorily mandated task, any personal information it contains fails the Privacy Act's "relevant and necessary" requirement and falls outside the scope of documents that an agency must retain. *Id.*

Moreover, Volume II need not be maintained because it is not accurate, relevant, timely, or necessary to assure fairness. Volume II consists of unadjudicated allegations, selectively curated discovery materials, and potential Rule 404(b) evidence relating to President Trump and other defendants—none of which resulted in a conviction. Now that the criminal proceedings have been terminated and there is no ongoing enforcement

27

directive, the information is no longer timely or relevant. Its continued maintenance, therefore, cannot reasonably assure fairness to the individuals identified and is inconsistent with the Privacy Act's mandates.

The district court's *in camera* review and DOJ's continued retention of Volume II—without the consent of the affected individuals—raises ongoing Privacy Act concerns. The Privacy Act does not permit indefinite custody or indirect disclosure of protected records absent a valid statutory exception. *See Bartel v. Fed. Aviation Admin.*, 725 F.2d 1403, 1408 (D.C. Cir. 1984) ("[W]here no statutory exception applies, the [Privacy] Act prohibits nonconsensual disclosure of any information that has been retrieved from a protected record."). Continued maintenance perpetuates unwarranted invasions of personal privacy for President Trump, Nauta, De Oliveira, and other third parties. *See* 5 U.S.C. § 552a(g). Disposal of all copies is the only remedy that cures the violations and prevents further harm. *Id.* § 552a(e)(1), (e)(5).

## CONCLUSION

For the foregoing reasons, this Court should affirm.

28

Dated: March 11, 2026          Respectfully submitted,

*/s/ Crystal Clanton*
Crystal Clanton
Daniel Z. Epstein
Emily Percival
Robert A. Crossin
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
Phone: (202) 964-3721
crystal.clanton@aflegal.org

*Counsel for Amicus Curiae*
*America First Legal Foundation*

## CERTIFICATE OF COMPLIANCE

Per Federal Rule of Appellate Procedure 32(g), I certify that this brief complies with the length limitations set forth in Rule 29 because it contains 5,315 words, excluding the items that may be excluded under Rule 32. This brief also complies with the typeface and type-style requirements of Rule 32.

/s/ *Crystal Clanton*
Crystal Clanton

## CERTIFICATE OF SERVICE

I certify that I served this brief by electronically filing it with this

Court's CM/ECF system, which will serve everyone requiring notice.

*/s/Crystal Clanton*
Crystal Clanton