**Nos. 25-14507, 26-10674**

# United States Court of Appeals
## *for the* Eleventh Circuit

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY
AND AMERICAN OVERSIGHT,

*Interested Parties-Appellants,*

DONALD J. TRUMP, WALTINE NAUTA, and CARLOS DE OLIVEIRA

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA, CASE NO. 9:23-CR-80101 (CANNON, J.)

---

### JOINT CONSOLIDATED BRIEF OF
### DEFENDANTS-APPELLEES

---

Richard C. Klugh
Jenny Wilson
KLUGH WILSON, LLC
40 N.W. 3rd Street, PH1
Miami, FL 33128
*Counsel for Defendant-Appellee*
*Waltine Nauta*


John S. Irving, IV
SECIL LAW PLLC
1701 Pennsylvania Ave NW, Ste 200
Washington, DC 20006
*Counsel for Defendant-Appellee*
*Carlos De Oliveira*

Kendra L. Wharton
WHARTON LAW PLLC
500 S Australian Ave,
Ste 600-1139
West Palm Beach, FL 33401
(561) 247-5279
*Counsel for Defendant-Appellee*
*President Donald J. Trump*

## Statement Regarding Oral Argument

President Donald J. Trump, Waltine Nauta, and Carlos De Oliveira respectfully defer to the Court's discretion regarding whether to hold oral argument, but submit that, given the narrow issues presented in the intervention appeals and the parties' thorough briefing, oral argument would not materially assist the Court in resolving the appeals.

## Table of Contents

Statement Regarding Oral Argument ..........................................................i

Table of Citations .....................................................................................v

Introduction .............................................................................................1

Statement of Subject-Matter and Appellate Jurisdiction ......................4

Statement of the Issues............................................................................6

Statement of the Case .............................................................................7

   I.    The Course of Proceedings and Dispositions in the District

       Court....................................................................................................7

   II.   Statement of the Facts...................................................................11

      A.  Smith's Illegal Criminal Investigation and Prosecution

          in the Southern District of Florida ...........................................11

      B.  The District Court's Dismissal Order.......................................13

      C.  Initial Proceedings Relating to Smith's Illegal Preparation

          and Transmittal of Volume II .................................................13

      D.  American Oversight's and Knight Institute's First

          Motions to Intervene .............................................................23

      E.  The District Court's First Denial of Intervention...................25

      F.  Appeal of the December 22, 2025, Intervention Denial...........27

G.  Subsequent District Court Proceedings and Denial of

Appellants' Second Attempts at Intervention..........................28

H.  Appeal of the February 23, 2026, Intervention Denial............33

III.  Standard and Scope of Review ....................................................34

Summary of Argument.............................................................................35

Argument ..................................................................................................37

I.  Appellants' FOIA Theories of Intervention Lack Any Merit ......38

A.  FOIA Does Not Confer Collateral Participatory Rights in

Criminal Proceedings ............................................................39

B.  *Gurney* Does Not Compel Intervention in the Criminal

Proceedings to Assert a Statutory FOIA Interest...................42

II.  Volume II Is Not a "Judicial Record" or "Judicial Document"

Subject to the Common Law or First Amendment Rights of

Access.....................................................................................44

A.  The Common Law Right of Access to Judicial Records Does

Not Attach to Volume II........................................................45

B.  The First Amendment Right of Access to Judicial

Proceedings Does Not Attach to Volume II ...........................55

III. Standing Alone Does Not Require an Opportunity to Intervene and Be Heard .............................................................. 64

IV. *Griggs* Does Not Supply an Alternative Basis for Intervention or for Reconsideration of the District Court's First Denial Order ........................................................... 68

V. This Court's Review is Otherwise Limited to the Issue of Whether the District Court Was Within Its Discretion in Denying the Motions to Intervene ............................................. 72

Conclusion ................................................................................ 74

Certificate of Compliance ......................................................... 75

Certificate of Service ............................................................... 76

iv

# Table of Citations

## Cases

*Anderson v. Cryovac, Inc.*,

    805 F.2d 1 (1st Cir. 1986)..................................................................58

*Bond v. Utreras*,

    585 F.3d 1061 (7th Cir. 2009) ............................................................48

*Branzburg v. Hayes*,

    408 U.S. 665 (1972) ...........................................................................61

*Callahan v. United Network for Organ Sharing*,

    17 F.4th 1356 (11th Cir. 2021)....................................51, 52, 53, 68, 73

*Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*,

    263 F.3d 1304 (11th Cir. 2001) .....................................................49, 54

*Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*,

    918 F.3d 1161 (11th Cir. 2019) ..............................48, 49, 50, 51, 53, 55

*Cooter & Gell v. Hartmarx Corp.*,

    496 U.S. 384 (1990) ...........................................................................72

*Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*,

    100 F.4th 1349 (11th Cir. 2024).........................................................44

*Davis v. Butts,*

    290 F.3d 1297 (11th Cir. 2002) ........................................................ 6, 73

*EEOC v. E. Airlines, Inc.,*

    736 F.2d 635 (11th Cir. 1984) ............................................................ 73

*Fed. Election Comm'n v. Cruz,*

    596 U.S. 289 (2022) ........................................................................... 64

*FTC v. AbbVie Prods. LLC,*

    713 F.3d 54 (11th Cir. 2013) .............................................................. 73

*FTC v. Marcus,*

    848 F. App'x 388 (11th Cir. 2021) ..................................................... 34

*Globe Newsp. Co. v. Superior Court,*

    457 U.S. 596 (1982) ........................................................................... 57

*Green Leaf Nursery v. E.I. DuPont de Nemours & Co.,*

    341 F.3d 1292 (11th Cir. 2003) .......................................................... 71

*Griggs v. Provident Consumer Disc. Co.,*

    459 U.S. 56 (1982) ....................................................................... 69, 71

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.,*

    445 U.S. 375 (1980) ..................................................................... 40, 72

*Hamm v. Dunn*, No. 17-cv-2083,

2018 U.S. Dist. LEXIS 89809 (N.D. Ala. May 30, 2018).......................50

*In re Alexander Grant & Co. Litig.*,

820 F.2d 352 (11th Cir. 1987) ............................................................46

*In re Hearst Newsps., LLC*,

641 F.3d 168 (5th Cir. 2011) ..............................................................63

*In re Macon Tel. Publ'g Co.*,

900 F. Supp. 489 (M.D. Ga. 1995)..................................................61, 62

*Kissinger v. Reps. Comm. for Freedom of the Press*,

445 U.S. 136 (1980) ...........................................................................41

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

572 U.S. 118 (2014) ...........................................................................44

*Linda R. S. v. Richard D.*,

410 U.S. 614 (1973) ...........................................................................37

*McGrath v. Rainbow Pediatrics, P.C.*, No. 19-cv-4714,

2022 U.S. Dist. LEXIS 241436 (D.N.J. Aug. 12, 2022).......................67

*Morales v. United States Dist. Court*,

580 F. App'x 881 (11th Cir. 2014)..................................................37, 72

*Newman v. Graddick,*

   696 F.2d 796 (11th Cir. 1983) ......................................................57, 63

*Nixon v. Warner Commc'ns, Inc.,*

   435 U.S. 589 (1978) .....................................................................41, 73

*Noble Prestige Ltd. v. Galle,*

   83 F.4th 1366 (11th Cir. 2023)............................................................34

*Okeelanta Corp. v. U.S. Army Corps of Eng'rs,*

   132 F.4th 1320 (11th Cir. 2025)..........................................................64

*Press-Enter. Co. v. Super. Ct.,*

   464 U.S. 501 (1984) ............................................................................57

*Press-Enter. Co. v. Super. Ct.,*

   478 U.S. 1 (1986) .............................................................57, 58, 62, 73

*Richmond Newsps., Inc. v. Virginia,*

   448 U.S. 555 (1980) ............................................................................56

*Romero v. Drummond Co.,*

   480 F.3d 1234 (11th Cir. 2007) .....................................................53, 54

*Seattle Times Co. v. Rhinehart,*

   467 U.S. 20 (1984) .......................................................................46, 62

*SEC v. TheStreet.com*,

    273 F.3d 222 (2d Cir. 2001) ................................................................49

*Spurlock v. FBI*,

    69 F.3d 1010 (9th Cir. 1995) ............................................................40

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*,

    489 U.S. 749 (1989) ..........................................................................41

U.S. *Dep't of Just. v. Tax Analysts*,

    492 U.S. 136 (1989) ....................................................................40, 41

*United States v. Anderson*,

    799 F.2d 1438 (11th Cir. 1986) ......................................... 46, 58, 61, 62

*United States v. Aref*,

    533 F.3d 72 (2d Cir. 2008) ................................................................34

*United States v. Atesiano*, No. 18-cr-20479,

    2018 U.S. Dist. LEXIS 190545 (S.D. Fla. Nov. 7, 2018) ......................38

*United States v. Benkahla*,

    530 F.3d 300 (4th Cir. 2008) ............................................................54

*United States v. Carmichael*,

    342 F. Supp. 2d 1070 (M.D. Ala. 2004) ..............................................65

*United States v. Corces*, No. 92-cr-28,

   1997 U.S. Dist. LEXIS 11139 (M.D. Fla. July 28, 1997) ..................... 61

*United States v. Couch*,

   906 F.3d 1223 (11th Cir. 2018) ............................................... 6, 39, 72

*United States v. Crawford Enters., Inc.*,

   735 F.2d 174 (5th Cir. 1984) ............................................................ 73

*United States v. Eckerd*, No. 22-cr-237,

   2026 U.S. Dist. LEXIS 109249 (S.D. Ohio May 18, 2026) ................... 65

*United States v. Gallo*, No. 24-cr-712,

   2026 U.S. Dist. LEXIS 131238 (D.N.J. June 12, 2026) ....................... 65

*United States v. Gurney*,

   558 F.2d 1202 (5th Cir. 1977) ...................................... 41, 42, 43, 44, 47

*United States v. Kravetz,*

   706 F.3d 47 (1st Cir. 2013) .......................................... 47, 54, 58, 59, 62

*United States v. Moussaoui,*

   483 F.3d 220 (4th Cir. 2007) ............................................................ 40

*United States v. Muzio,*

   757 F.3d 1243 (11th Cir. 2014) ........................................................ 71

*United States v. Nickens,*

   809 F. App'x 584 (11th Cir. 2020) .................................................. 46, 59

*United States v. Ochoa-Vasquez,*

   428 F.3d 1015 (11th Cir. 2005) ................................................ 56, 57, 63

*United States v. Ruan,*

   814 F. App'x 439 (11th Cir. 2020) ............................................ 34, 37, 39

*United States v. Valenti,*

   987 F.2d 708 (11th Cir. 1993) .................................................. 63, 68, 73

*United States v. Wolfson,*

   55 F.3d 58 (2d Cir. 1995) .......................................................... 48, 49, 61

*Zow v. Regions Fin. Corp.,*

   595 F. App'x 887 (11th Cir. 2014) ...................................................... 72

**Statutes**

18 U.S.C. § 3231 .................................................................................. 4

18 U.S.C. App. III § 3 ........................................................................ 12

28 U.S.C. § 1291 ................................................................................. 5

28 U.S.C. § 509 ................................................................................. 11

28 U.S.C. § 510 ................................................................................. 11

28 U.S.C. § 515 ................................................................................. 11

28 U.S.C. § 533......................................................................................11

44 U.S.C. § 3303(2) ..............................................................................70

5 U.S.C. § 552(a)(4)(B)..........................................................................40

5 U.S.C. § 552a ......................................................................................41

**Regulations**

28 C.F.R. § 600.4 et seq. ......................................................................11

**Rules**

Fed. R. Civ. P. 24(a)..............................................................................49

Fed. R. Civ. P. 24(b)..............................................................................34

Fed. R. Crim. P. 16 ................................................... 12, 20, 21, 22, 33, 60

Fed. R. Crim. P. 17(c) .......................................................................54, 58

Fed. R. Crim. P. 6(e) .......................................................................19, 20, 22

Fed. R. Evid. 404(b) ..............................................................................21

## Introduction

These appeals concern Knight First Amendment Institute at Columbia University's ("Knight Institute") and American Oversight's (together, "Appellants") separate, improper attempts to intervene in the unconstitutional criminal case brought by so-called "Special Counsel" Jack Smith against President Donald J. Trump, Waltine Nauta, and Carlos De Oliveira (collectively, "Defendants-Appellees") in the Southern District of Florida.[1]  Given the convoluted procedural situation that Appellants have created, Defendants-Appellees set forth the basic background below.

*Smith's Failed Attempts to Prosecute President Trump*

At its core, this matter arises out of Jack Smith's brazen and failed attempts to unconstitutionally prosecute and imprison President Trump

---

[1] President Trump, Mr. Nauta, and Mr. De Oliveira jointly file this brief as Defendants-Appellees, consistent with the Court's captioning in the appeals and Appellants' notices of appeal in the District Court.  To the extent that there may exist any question as to whether President Trump is a proper Appellee based on his *amicus* status at the time of Knight Institute's and American Oversight's first appeal (Appeal No. 25-14507), that issue is conclusively resolved by his direct and substantial interests in the outcome of the appeal, including those that are unique from that of Mr. Nauta and Mr. De Oliveira, and by his party status at the time of the second appeal (Appeal No. 26-10674).

1

and those around him, including Mr. Nauta and Mr. De Oliveira. Even after the District Court dismissed Smith's baseless charges on the grounds that his appointment and the funding of his office violated the United States Constitution, Smith unlawfully prepared and sought to release a two-volume "Final Report" in hopes of vindicating his efforts through other means.

On January 21, 2025, while Smith's appeal of the dismissal order remained pending as to Mr. Nauta and Mr. De Oliveira, the District Court properly entered a since-expired order prohibiting the release of Volume II, finding that its disclosure at that time posed a "substantial and unacceptable risk of prejudice to Defendants" (the "January 21, 2025, Order").

### *Appellants' First Attempts to Intervene*

Asserting generalized rights of access under the Freedom of Information Act ("FOIA"), common law, and the First Amendment, Appellants Knight Institute and American Oversight sought to intervene in the closed criminal case in February 2025 for the purpose of challenging the District Court's January 21, 2025, Order.

2

In denying the motions to intervene on December 22, 2025, the District Court properly ruled that no authority affords Appellants a right to intervene in Smith's unlawful and since-invalidated criminal case to litigate their asserted FOIA interests in obtaining copies of Volume II, and that neither the common law nor the First Amendment rights of access to judicial records and judicial proceedings otherwise supply a basis to intervene. Knight Institute and American Oversight subsequently appealed the District Court's denial order, which is the subject of the first appeal (Appeal No. 25-14507).

*Appellants' Second Attempt to Intervene*

On the same day that Appellants filed their initial briefs in the first appeal, both organizations sought once again to intervene in the District Court's criminal proceedings—this time, for the purported purpose of seeking a "stay of all proceedings." Appellants claimed, wrongly, that their first intervention appeal divested the District Court of jurisdiction to take "any action with respect to Volume II," and asserted "standing to intervene" based on the same unsupported access theories previously rejected by the District Court.

The District Court properly denied Appellants' joint motion to intervene on February 23, 2026, observing that the record clearly reflects that their first appeal concerns only the District Court's December 22, 2025, order denying their motions to intervene, and that they did not seek a stay of that order pending the resolution of their appeal. Appellants again appealed the District Court's denial order, which is the subject of the second appeal (Appeal No. 26-10674).

*    *    *

Both appeals unmistakably implicate separate records, unique procedural postures, and certain distinct legal questions that warrant independent consideration by this Court. Yet the result in both instances is the same: the records on appeal clearly demonstrate that the District Court did not abuse its discretion in denying Appellants' motions to intervene, and that this Court should dismiss their appeals for lack of jurisdiction.

### Statement of Subject-Matter and Appellate Jurisdiction

The District Court had original jurisdiction over the federal criminal case, *United States v. Trump, et al.*, No. 23 Cr. 80101 (S.D. Fla.), pursuant to 18 U.S.C. § 3231.

4

On December 22, 2025, the District Court denied American Oversight's and Knight Institute's separate motions to intervene (Docs. 717 & 721). Doc. 760.[2]  Knight Institute and American Oversight filed notices of appeal on December 23, 2025, and December 29, 2025, respectively. Docs. 762 & 763.

On February 23, 2026, the District Court denied Knight Institute's and American Oversight's joint motion to intervene for the purpose of seeking a "stay of all proceedings" (Doc. 775). Doc. 780.  Appellants filed notices of appeal on March 2, 2026, Docs. 783 & 784, and Knight Institute filed a corrected notice of appeal on April 14, 2026. Doc. 793.

This Court has jurisdiction over the consolidated intervention appeals pursuant to 28 U.S.C. § 1291.  Under this Circuit's anomalous rule, an appeal from a denial of intervention proceeds under a provisional

---

[2] Unless otherwise indicated, "Doc." refers to the docket entry in the District Court proceedings in *United States v. Trump, et al.*, No. 23 Cr. 80101 (S.D. Fla.).  "Am. Br." refers to Appellant American Oversight's opening brief, as corrected on February 11, 2026, and "Knight Br." refers to Appellant Knight Institute's opening brief, as corrected on June 24, 2026, in the first intervention appeal (Appeal No. 25-14507).  "Am. Supp. Br." refers to Appellant American Oversight's supplemental brief and "Knight Supp. Br." refers to Appellant Knight Institute's supplemental brief filed in connection with the second intervention appeal on June 11, 2026 (Appeal No. 26-10674).

form of appellate jurisdiction that only exists to decide "whether the District Court properly denied intervention." *United States v. Couch*, 906 F.3d 1223, 1225 (11th Cir. 2018) (citation modified). If the denial of intervention was proper, this Court's jurisdiction "evaporates," and the Court must "dismiss the appeal for want of jurisdiction." *Davis v. Butts*, 290 F.3d 1297, 1299 (11th Cir. 2002).

## Statement of the Issues

### *Appeal No. 25-14507*

Whether the District Court abused its discretion in denying Appellants' non-party motions to intervene in the criminal case to litigate asserted rights of access to Volume II under the Freedom of Information Act ("FOIA").

Whether the District Court abused its discretion in denying Knight Institute's non-party motion to intervene in the criminal case to litigate an asserted common law right of access to Volume II as a "judicial record."

Whether the District Court abused its discretion in denying Knight Institute's non-party motion to intervene in the criminal case to litigate

an asserted First Amendment right of access to Volume II as a "judicial document."

### *Appeal No. 26-10674*

Whether the District Court abused its discretion in denying Knight Institute's and American Oversight's joint motion to intervene in the criminal case based on the same legal arguments previously rejected by the District Court.

### **Statement of the Case**

## I. **The Course of Proceedings and Dispositions in the District Court**

On June 8, 2023, a federal grand jury in the Southern District of Florida returned an Indictment, signed by purported "Special Counsel" Jack Smith, charging President Trump and Mr. Nauta with thirty-eight federal criminal charges. Doc. 3. On July 27, 2023, the grand jury returned a Superseding Indictment, also signed by Smith, increasing the number of total charges to forty-two and adding a third defendant, Mr. De Oliveira. Doc. 85. On July 15, 2024, the District Court dismissed the Superseding Indictment, holding that Smith's appointment as Special Counsel violated the Appointments Clause, and that the funding of his

office violated the Appropriations Clause of the United States Constitution. Doc. 672. Smith appealed the District Court's dismissal order, but the appeal was subsequently dismissed as to President Trump on November 26, 2024, and as to Mr. Nauta and Mr. De Oliveira on February 11, 2025. Docs. 677 & 716.

Without seeking a stay of the District Court's dismissal order pending the appeal, Smith proceeded to illegally use taxpayer money to prepare and submit to Attorney General Merrick Garland a "Final Report" supposedly pursuant to the Department of Justice's ("DOJ") extant Special Counsel Regulations. *See* Doc. 687. Acting upon an emergency motion filed by Mr. Nauta and Mr. De Oliveira, further supported by President Trump as *amicus curiae*, the District Court entered its January 21, 2025, Order enjoining the DOJ from releasing, sharing, or transmitting Volume II of that Final Report, or any drafts, or otherwise releasing, distributing, conveying, or sharing any information or conclusions in Volume II, outside of the DOJ. Doc. 714.

Days later, American Oversight filed an Expedited Motion to Intervene and For Clarification or, Alternatively, Dissolution of January 21, 2025 Order Granting Defendants' Emergency Motion to

Preclude Release of Volume II of Special Counsel's Report. Doc. 717. Knight Institute followed suit on February 24, 2025, filing a Motion to Intervene to Seek Rescission of the Court's January 21, 2025 Order and Public Release of Volume II of the Special Counsel's Report. Doc. 721. The United States, Mr. Nauta, and Mr. De Oliveira opposed the motions to intervene. Docs. 739 & 740; *see also* Docs. 738 & 753 (Joint Status Reports).  President Trump also opposed the motions, then as *amicus curiae*. Doc. 755; *see also* Doc. 759 (paperless order granting motion).

The District Court denied Appellants' motions to intervene on December 22, 2025. Doc. 760.  The District Court also issued a separate order directing that the January 21, 2025, Order enjoining the DOJ's release or transmittal of Volume II would "automatically expire, without further order of this Court, on **February 24, 2026**." Doc. 761 (emphasis in original).

Appellants filed notices of appeal from the District Court's order denying intervention on December 23, 2025, and December 29, 2025, respectively. Docs. 762 & 763.  Appellants do not purport to appeal the District Court's separate order regarding expiration of the January 21,

9

2025, Order, nor have they sought a stay of the District Court's orders pending this Court's disposition of the first intervention appeal.

On January 20, 2026, President Trump filed an Unopposed Expedited Motion for an Order Prohibiting the Release of Volume II in response to the impending expiration of the January 21, 2025, Order. Doc. 772. The United States filed a response on January 23, 2026, to the Court's order concerning expiration. Doc. 773. On January 30, 2026, Mr. Nauta and Mr. De Oliveira filed an Expedited Motion for and Response in Support of an Order Permanently Prohibiting Release of Volume II. Doc. 774.

On February 9, 2026, the same day as filing their initial briefs in the first intervention appeal, Appellants filed a Joint Expedited Motion to Intervene for the Purpose of Seeking a Stay of Proceedings. Doc. 775. Both the United States and former Defendants President Trump, Mr. Nauta, and Mr. De Oliveira opposed the motion. *Id*. at 10. The District Court denied Appellants' joint motion on February 23, 2026, Doc. 780, and issued a separate order maintaining the restrictions on release and transmittal of Volume II imposed by the expiring January 21, 2025, Order, while denying all additional relief requested. Doc. 779.

10

Appellants filed notices of appeal from the District Court's denial order on March 2, 2026. Docs. 783 & 784. Knight Institute filed a corrected notice of appeal on April 14, 2026. Doc. 793.

## II.  Statement of the Facts

### A. Smith's Illegal Criminal Investigation and Prosecution in the Southern District of Florida

On November 18, 2022, then-Attorney General Merrick Garland issued Appointment Order No. 5559-2022, designating private attorney Jack Smith as so-called "Special Counsel" for the DOJ. Doc. 672 at 6-7. The Attorney General's Appointment Order cited purported statutory authority under 28 U.S.C. §§ 509, 510, 515, and 533, and claimed, incorrectly, that the DOJ's Special Counsel Regulations codified at 28 C.F.R. §§ 600.4–600.10 were applicable. Doc. 672 at 7-8. A Special Counsel's Office ("Smith's Office") was funded by the DOJ using the permanent, indefinite appropriation created by Congress in 1987 to support independent counsels appointed under the long-expired Independent Counsel Act "or other law." Doc. 672 at 7-8.

Smith's Office conducted a broad campaign of subpoenas, seeking testimony and documents from at least dozens, and likely hundreds, of

11

persons and entities, including numerous Republican Members of Congress and conservative allies of President Trump. *See* Doc. 760 at 15-16 & n.13; *see also* Doc. 739 at 13; Doc. 755 at 1 n.1.  Smith's campaign also included unprecedented litigation in the District of Columbia, aimed at wrongly piercing privilege protections belonging to President Trump, including the oldest privilege recognized in Anglo-American jurisprudence, the attorney-client privilege. *See* Doc. 760 at 16 & n.13; *see also* Doc. 739 at 13.

On June 8, 2023, a federal grand jury in the Southern District of Florida returned an Indictment signed by Jack Smith charging President Trump and Mr. Nauta with thirty-eight criminal counts. Doc. 3.  On July 27, 2023, a Superseding Indictment also signed by Smith added a third defendant, Mr. De Oliveira, increasing the total charges to forty-two. Doc. 85.  On June 19, 2023, just before Mr. De Oliveira became a party to the criminal case, the District Court entered a Rule 16 Protective Order applicable to "[a]ll non-classified discovery produced by the United States to the Defendants." Doc. 27.  Separate protective orders were also entered pursuant to the Classified Information Procedures Act, 18 U.S.C. App. III § 3 ("CIPA"). Docs. 150-152.

**B. The District Court's Dismissal Order**

On July 15, 2024, the District Court issued an order dismissing Smith's Superseding Indictment, holding that his appointment violated the Appointments Clause, and that the funding of Smith's Office violated the Appropriations Clause of the United States Constitution. Doc. 672. The District Court held that the appropriate remedy for Smith's unconstitutional appointment was the invalidation of "all" of Smith's *ultra vires* acts. Doc. 672 at 83-84. The District Court left undecided the proper remedy for the Appropriations Clause violation. Doc. 672 at 90-91.

Smith appealed the District Court's dismissal order. Doc. 673. He did not, however, seek a stay of the dismissal order pending appeal. Soon after President Trump's electoral victory in November 2024, Smith moved to dismiss the appeal as to President Trump. Doc. 677.

**C. Initial Proceedings Relating to Smith's Illegal Preparation and Transmittal of Volume II**

As President Trump's inauguration neared, news reports indicated that Smith, as "Special Counsel," despite the District Court's determination that he was unlawfully appointed and funded with

13

taxpayer money, and that all of his actions were therefore *ultra vires*, was preparing a "Final Report" for submission to Attorney General Garland, with the expectation that it would ultimately be released pursuant to the DOJ's Special Counsel Regulations. Doc. 679 at 6.  On January 6, 2025, Mr. Nauta and Mr. De Oliveira filed an emergency motion with the District Court seeking to prevent Smith from transmitting his *ultra vires* work product. Doc. 679.  On January 7, 2025, President Trump filed a motion for leave to intervene or, in the alternative, to participate as *amicus curiae*. Doc. 681.

On January 7, 2025, the District Court issued an order temporarily enjoining the DOJ from "releasing, sharing, or transmitting the Final Report or any drafts . . . outside the Department of Justice," or from "otherwise releasing, distributing, conveying, or sharing with anyone outside of the Department of Justice any information or conclusions in the Final Report or in drafts thereof." Doc. 682 at 2.  The District Court subsequently limited its protective order to Volume II, which pertains to Smith's unconstitutional investigation and criminal proceedings in the Southern District of Florida. Doc. 697 at 2-3.

On January 8, 2025, then-Attorney General Garland transmitted a letter to four Members of Congress indicating that he intended to make a copy of Volume II available to them for *in camera* review upon their request. Doc. 685-1 at 3.  Mr. Nauta and Mr. De Oliveira sought an extension of the temporary protective order on January 10, 2025, Doc. 689, and a hearing on both the emergency motion and President Trump's motion to intervene was scheduled for January 17, 2025. Doc. 697 at 3-4; *see also* Doc. 698 (paperless notice of hearing).

In the order setting a hearing, the District Court observed that "[a]ll parties . . . appear to agree that public release of Volume II would be inconsistent with the fair trial rights of Defendants Nauta and De Oliveira and with Department of Justice Policy governing the release of information during the pendency of criminal proceedings." Doc. 697 at 3. The District Court continued:

> Despite these concerns, the United States seeks permission to make a "limited disclosure" of Volume II to congressional leadership . . . . Defendants vigorously oppose this request, relying on their due process rights and S.D. Fla. Local Rule 77.2, among other arguments rooted in the threat of public dissemination. . . . In light of these contested issues, a hearing on the Emergency Motion (Volume II) is scheduled to take place on

> January 17, 2025, at 2 p.m. in the Fort Pierce Division. . . .

*Id.* at 3-4. The District Court added that "[p]ortions of this hearing may need to be conducted under seal to avoid dissemination of the contents of Volume II." *Id.* at 3 n.4.

In the interim, the District Court maintained its temporary restrictions on release and transmittal of Volume II, stating that "[r]elease of Volume II, even on a limited basis as promised by the United States, risks irreversibly and substantially impairing the legal rights of Defendants in this criminal proceeding . . . , at least not without full briefing and a hearing on the subject." Doc. 697 at 4.

The District Court then ordered the DOJ to "hand deliver a copy of Volume II to the Court to be reviewed in camera," directing that the noticed January 17, 2025, hearing "is a public hearing, but any discussions of specified content in Volume II will be conducted in closed, sealed session to preserve Defendants' fair trial rights and to fully respect protective orders previously entered in this case." Doc. 705 (paperless order). No objection was made to the closed, sealed hearing. *See* Doc. 760 at 5 n.4.

One day prior to the January 17, 2025, hearing, under protest, the DOJ provided the District Court with two copies of Volume II: (1) an unredacted copy, and (2) a redacted copy reflecting what the DOJ intended to make available to Members of Congress "absent an order from the Court foreclosing those procedures." Doc. 708. In doing so, the DOJ emphasized that "[t]he only remaining issue before the Court is . . . whether making Volume Two available to the Chairmen and Ranking Members of the House and Senate Judiciary Committees for in camera inspection . . . would risk prejudice to the defendants." *Id.* at 1. The DOJ urged that "[a] review of the contents of Volume Two is *not necessary* to make that determination." *Id.* (emphasis added).

At the January 17, 2025, hearing, the District Court stated that it had reviewed Volume II *in camera* and emphasized that, "as indicated, there shall be no indication or discussion of the specific contents of Volume II." Tr. at 4, 6.[3] The District Court directed that, "if it becomes

---

[3] Notably, the cited transcript of the public hearing was not on the docket at the time that the first intervention appeal was filed on December 23, 2025, because no party (or non-party) had seen need to order it. *See* Doc. 760 at 5 n.4. Knight Institute filed an order form for the hearing transcript on January 8, 2026, *see* Doc. 769, and a copy of the transcript

necessary . . . to meaningfully respond to the Court's questions, then you should make that clear to the Court so that we can make arrangements for that closure." Tr. at 6.  Accordingly, all discussion of the "specifics of Volume II" were limited to a brief closed session following the public hearing. Tr. at 58.[4]

Notably, counsel for the DOJ began its argument on January 17, 2025:

> The Attorney General has agreed there should be no public dissemination of Volume II; so we're not talking about public release of this report. They want to be very clear about that.
>
> We have a very small slice of disagreement, and that is whether four members of Congress, the Chair, and the ranking members of the Judiciary Committee of the Senate and the House can review the report . . . .

Tr. at 24.

---

has been included in Volume III of Appellants' Joint Appendix as Doc. 768.  That designation, however, is incorrect.  The transcript of the public portion of the hearing has been entered on the District Court's docket as Doc. 770.  For the avoidance of confusion, Defendants-Appellees simply refer to the hearing transcript as "Tr."

[4] Appellants do not challenge the proceedings or seek access to the transcript of the closed session. *See* Doc. 760 at 17 n.16.

During the hearing, the District Court inquired concerning the DOJ's asserted bases for providing Members of Congress with access to Volume II and the process by which the DOJ made its proposed redactions of grand jury material. *See, e.g.*, Tr. at 25-40. Counsel for Mr. Nauta indicated that he had inquired with Smith's Office as to its standards for redaction, and was told that Rule 6(e) did not require redaction so long as there was no reference to grand jury deliberations or transcripts. Tr. at 13-14; *see also* Tr. at 12-13 ("What the government will tell you is that Rule 6(e) protects the process and the deliberations of the grand jury, not necessarily information that is presented to the grand jury. And so, if the grand jury subpoenas telephone records or text messages, and that information is presented to the grand jury, then what the government will tell you is . . . if they can strip that information from any suggestion that it was requested or presented to the grand jury, then it's not protected by Rule 6(e).").

To this, counsel for the DOJ responded: "I think what they articulated as having been told by the Special Counsel's Office is absolutely correct about 6(e) material; if it doesn't identify the source of the material, that is not a violation of 6(e)." Tr. at 35; *see also id.* at 36

19

("[I]f [toll record] information is not associated, it's not identified that it was presented to the grand jury, then I think those toll records wouldn't be 6(e).").

DOJ counsel also did not dispute the District Court's observation that "in this case, it appears those [Rule 6(e)] determinations have been made entirely unilaterally without any meaningful input or opportunity for input by the defense." *Id*. at 34. Further, with respect to the redaction of information over which President Trump had asserted attorney-client privilege, counsel for the DOJ responded that it could not answer. *See* Tr. at 39-40.

On January 21, 2025, the District Court entered its order enjoining the DOJ from "releasing, sharing, or transmitting" Volume II, or any drafts, or "otherwise releasing, distributing, conveying, or sharing" any information or conclusions in Volume II outside of the DOJ. Doc. 714 at 13-14. Having reviewed the redacted copy of Volume II *in camera*, the District Court described the document as containing "voluminous and detailed Rule 16 discovery about the allegations in this criminal case," much of which had not been made public in filings. Doc. 714 at 1-2; *see also id*. at 5. This included large swaths of "interview transcripts, search

20

warrant materials, business records, toll records, video footage, and various other records obtained pursuant to grand jury subpoena." *Id.* at 5-6; *see also id.* at 9 ("Volume II contains extensive, non-public discovery materials governed by Rule 16, including large quantities of statements concerning anticipated evidence or argument in the case." (citation modified)).

The District Court also highlighted the presence of information over which President Trump had asserted unresolved claims of attorney-client privilege, potential Rule 404(b) evidence that would have likely been at issue in motions *in limine*, and other non-public information subject to the District Court's Rule 16 Protective Order. Doc. 714 at 5-6; *see also* Doc. 712 at 7; Doc. 738 at 6.

The District Court also addressed its findings that, prior to his separation from the DOJ, Smith provided defense counsel with a "limited and accelerated opportunity to review Volume II," and required defense counsel to delete prior discovery productions in advance of their review. Doc. 714 at 6. For this reason, defense counsel were "unable to cross-reference the report with the underlying discovery for purposes of lodging specific and meaningful objections to the Report under Fed. R. Crim. P.

6(e)." *Id.* The District Court further observed that DOJ attorneys had only secondhand information about the process by which Smith and his Office made its redactions, and were unable to engage in a detailed discussion of any remaining Rule 6(e) material in the redacted copy of Volume II. *Id.*

On these bases, among concerns that the DOJ sought to provide Members of Congress with access to Volume II absent any memorialization of the conditions of confidentiality, the District Court found that release of Volume II to Members of Congress would present a "substantial and unacceptable risk of prejudice to Defendants," and enjoined DOJ from taking any such action "pending further Court order." Doc. 714 at 13.

The District Court expressly limited its ruling—made pursuant to Rule 16 and "good cause"—to the impact of release on Defendants' due process rights and stated that it did not take into consideration arguments concerning Smith's authority to prepare or issue Volume II, which remained at issue in Smith's then-pending (as to Mr. Nauta and

Mr. De Oliveira) appeal of the dismissal order. Doc. 714 at 2, 9.[5]  The District Court emphasized that "[n]othing in this Order should be construed as a comment on, or intrusion into, the Eleventh Circuit's pending review of this Court's Order Granting Defendants' Motion to Dismiss Superseding Indictment," and that its order instead concerned "a discovery disclosure matter collateral to the appeal." *Id*. at 2 n.2.

On February 11, 2025, this Court dismissed Smith's appeal of the dismissal order as to Mr. Nauta and Mr. De Oliveira. Doc. 716.

### D. American Oversight's and Knight Institute's First Motions to Intervene

On February 14, 2025, American Oversight filed its Expedited Motion to Intervene and For Clarification or, Alternatively, Dissolution of January 21, 2025 Order Granting Defendants' Emergency Motion to Preclude Release of Volume II of Special Counsel's Report. Doc. 717. American Oversight sought to intervene to (1) "confirm" the District

---

[5] The January 21, 2025, Order also denied President Trump's motion to intervene, without prejudice, "to be reasserted if warranted as permitted by law," and granted his alternative (unopposed) request to participate as *amicus curiae* on the pending motion. Doc. 714 at 14. That ruling followed oral argument concerning President Trump's request to intervene at the January 17, 2025, hearing. *See* Tr. at 43-56.

Court's since-expired January 21, 2025, Order barring disclosure of Volume II dissolved when the appeal of the dismissal order was dismissed, or (2) file a motion requesting that the District Court "immediately lift that Order." Doc. 717 at 1.

American Oversight asserted that it should be permitted to intervene, despite the "generally limited" nature of intervention in criminal cases, "because its rights to non-exempt responsive documents and information under FOIA are affected by [the District Court's] January 21, 2025 Order . . . ." Doc. 717 at 6. However, the majority of American Oversight's argument was dedicated to the merits of its substantive request that the District Court "clarify" or "order the immediate dissolution" of the January 21, 2025 Order. *Id*. at 8-11.

Knight Institute followed on February 24, 2025, filing its Motion to Intervene to Seek Rescission of the Court's January 21, 2025 Order and Public Release of Volume II of the Special Counsel's Report. Doc. 721. Knight Institute sought to intervene to seek rescission of the District Court's since-expired January 21, 2025, Order, but also to request the public release of the redacted version of Volume II that was submitted to the District Court *ex parte* for its *in camera* review. Doc. 721 at 1.

Knight Institute asserted that it should be permitted to intervene not only to assert its alleged FOIA interests in Volume II, but also to assert purported common law and First Amendment rights of access to Volume II as a "judicial record" or "judicial document." Doc. 721 at 1-3. Much like American Oversight, the bulk of Knight Institute's motion was dedicated to the merits of its substantive request that the District Court "lift the [January 21, 2025] injunction," and publicly release the redacted copy of Volume II submitted *ex parte* by the DOJ for the Court's *in camera* review. *Id.* at 9-17.

The United States, Mr. Nauta, and Mr. De Oliveira opposed the motions to intervene. Docs. 739 & 740; *see also* Docs. 738 at 1 n.1 & 753 at 2 (noting opposition in Joint Status reports). President Trump also opposed the motions, then as *amicus curiae*. Doc. 755; *see also* Doc. 759 (paperless order granting unopposed request to participate as *amicus curiae*).

**E. The District Court's First Denial of Intervention**

The District Court denied Appellants' motions to intervene on December 22, 2025. Doc. 760. "Upon careful review of the Motions and the related filings," including the premises asserted therein, the District

Court held that no authority exists to permit either Appellant to intervene to litigate its asserted FOIA interests in the criminal proceeding. Doc. 760 at 12-14; *id.* at 13 ("This theory of FOIA intervention in a criminal case is unsupported in law and unprecedented in scope."). The District Court further observed that such a novel approach would risk wreaking "havoc" in criminal proceedings. Doc. 760 at 14 (observing that, under Appellants' FOIA theories, "any party seeking to obtain public records through a civil FOIA suit in another forum (or via FOIA requests to the Department of Justice) conceivably could attain party status in a criminal case to pursue that FOIA interest").

The District Court also held that Knight Institute lacked a "basis" to intervene in the criminal case to assert any purported common law and First Amendment "right[s] of access" to Volume II as a "judicial record" or "judicial document." Doc. 760 at 15 ("[Knight Institute's] theory rests on the necessary assumption that Volume II is a 'judicial document' or a 'judicial record' subject to the public right of access under the common law and the First Amendment. It is not." (quoting Doc. 721)); *id.* at 15-17 (applying relevant facts to common law and First Amendment cases in this Circuit).  The District Court further held that its *in camera*

26

inspection of Volume II in advance of the January 17, 2025, hearing did not somehow "convert[]" Volume II from a non-judicial document into a judicial one. Doc. 760 at 16-17.[6]

The District Court separately issued an order on the same day directing that its January 21, 2025, Order barring release of Volume II would "automatically expire, without further order of this Court, on **February 24, 2026**." Doc. 761 at 2 (emphasis in original).

### F. Appeal of the December 22, 2025, Intervention Denial

Appellants filed notices of appeal from the District Court's order denying intervention on December 23, 2025, and December 29, 2025, respectively. Docs. 762 & 763. American Oversight urges this Court to reverse the District Court's intervention denial to permit it to intervene in the criminal case to "seek non-exempt public information . . . protected by FOIA." Am. Br. at 24. Knight Institute similarly urges this Court to reverse the denial, but also asks this Court to "vacate the [since-expired January 21, 2025, Order] . . . and remand with instructions to direct the

---

[6] The District Court noted that no party or prospective intervenor has challenged the procedure on January 17, 2025. Doc. 760 at 5 n.4, 17 n. 16.

district court to post on the public docket the redacted copy of Volume II in the district court's possession." Knight Br. at 62.

Appellants did not appeal the District Court's separate order regarding expiration of the January 21, 2025, Order (Doc. 761), and have not sought a stay of either District Court order pending their intervention appeal. *See* Doc. 780 at 2 n.1.

### G. Subsequent District Court Proceedings and Denial of Appellants' Second Attempts at Intervention

On January 20, 2026, President Trump filed an Unopposed Expedited Motion for an Order Prohibiting the Release of Volume II in response to the impending expiration of the January 21, 2025, Order. Doc. 772.

The motion, made in his individual capacity and as a former target of Smith's unconstitutional criminal campaign, requested that the District Court enter an order permanently enjoining the release or transmittal of Volume II, or any information or conclusions contained therein, based on the Court's prior determinations that Smith's appointment and the funding of his Office violated the Appointments and Appropriations Clauses of the United States Constitution. Doc. 772 at 1.

28

The motion further asserted that the release or transmittal of Volume II would constitute an "irreversible violation of [the District] Court's constitutional rulings in the underlying criminal action" and "lead to the public dissemination of sensitive grand jury materials, attorney-client privileged information, and other information derived from protected discovery materials, raising significant statutory, due process, and privacy concerns for President Trump and his former co-defendants." *Id.* at 1-2. Mr. Nauta and Mr. De Oliveira joined in President Trump's arguments, and advised that they would separately move for relief, including on grounds specific to their individual cases. *See id.* at 18 (notice of conference).[7]

On January 23, 2026, the DOJ filed a response to the District Court's order concerning expiration of the January 21, 2025, Order. Doc. 773. The DOJ, agreeing with the Defendants that Volume II should not be released outside of the DOJ based on Smith's unlawful appointment and weaponization of the DOJ's resources, further stated that then-

---

[7] Counsel for the DOJ indicated that it consented to the filing and the requested relief, and intended to submit a separate filing in response to the District Court's December 22, 2025, order. Doc. 772 at 18 (notice of conference).

Attorney General Pam Bondi had also determined that Volume II is an internal deliberative communication that is privileged and confidential, and should not be released on those additional grounds. Doc. 773 at 1-2. The DOJ also stated that it could not provide the District Court with assurances regarding the scope and adequacy of Smith's proposed redactions to Volume II, as current counsel was not involved in the investigation, and had only second-hand information about the process by which the redactions were made. *Id.* at 2.

On January 30, 2026, Mr. Nauta and Mr. De Oliveira filed an Expedited Motion for and Response in Support of an Order Permanently Prohibiting Release of Volume II. Doc. 774. Mr. Nauta and Mr. De Oliveira stated that they requested relief "in the form of an order requiring the destruction of all copies of Volume II and/or permanently enjoining their release." Doc. 774 at 1. Mr. Nauta and Mr. De Oliveira presented additional arguments concerning the District Court's previous ruling concerning the unconstitutionality of Smith's appointment and funding, the due process considerations that formed the bases for the District Court's January 21, 2025, Order, and the undue burden and

30

prejudice that would befall Mr. Nauta and Mr. De Oliveira in the event of release, among other arguments. *Id*. at 2-12.

On February 9, 2026, the same day as filing their initial briefs in the first intervention appeal, Appellants filed a Joint Expedited Motion to Intervene for the Purpose of Seeking a Stay of Proceedings. Doc. 775. Arguing, incorrectly, that "public access to Volume II . . . is currently before the Eleventh Circuit," both Appellants sought to intervene to "move for a stay of these proceedings until the Eleventh Circuit has resolved their appeals." *Id*. at 1-2.  They claimed that "[a] stay of proceedings [was] appropriate and necessary because [the District] Court lacks jurisdiction to adjudicate the motions, and because the motions are without merit and seek relief that would violate the Federal Records Act." *Id*. at 2.  Both the United States and former Defendants President Trump, Mr. Nauta, and Mr. De Oliveira opposed Appellants' joint motion.

The District Court denied Appellants' motion on February 23, 2026. Doc. 780.  The District Court observed that, in their latest motion, Appellants "respectfully move[d] to intervene in this case to seek a stay of proceedings pending the Eleventh Circuit's resolution of their appeals filed on December 23 and 29." *Id*. at 1.  Yet "[t]hose appeals, the record

31

reflects, concern the Court's Order Denying Prospective Intervenors' Prior Motion to Intervene to Seek Rescission of the Court's January 21, 2025, Order," which found "no basis to permit the requested intervention in this criminal action, either on prospective intervenors' unprecedented and unsupported theory of FOIA access or on the flawed assumption that Volume II qualifies as a judicial record triggering the common law or First Amendment right of access." *Id.* at 1-2. The District Court further observed that "[p]rospective intervenors did not seek a stay of that order." *Id.* at 2 n.1.

The District Court separately issued an order on the same day maintaining the restrictions on release of Volume II imposed by the expiring January 21, 2025, Order, while denying all additional relief requested. Doc. 779.

Unlike the January 21, 2025, Order enjoining DOJ's release of Volume II, the District Court's February 23, 2026, order is not limited to its consideration of Defendants' due process rights. Rather, it extends to the District Court's agreement that "authorizing public release of Volume II would contravene the conclusions in the Court's final Dismissal Order that Special Counsel Smith acted without lawful appointment or funding

32

authority in this proceeding and that his actions taken in connection therewith are therefore invalid." Doc. 779 at 9.[8]

**H. Appeal of the February 23, 2026, Intervention Denial**

Appellants filed notices of appeal from the District Court's second order denying intervention on March 2, 2026. Docs. 783 & 784. Knight Institute filed a corrected notice of appeal on April 14, 2026. Doc. 793. On May 28, 2026, this Court issued an order consolidating their separate intervention appeals for "briefings and merits disposition purposes." ECF No. 68, Appeal No. 25-14507; ECF No. 38, Appeal No. 26-10674.

In their supplemental briefing on the second intervention appeal, both Appellants wrongly claim that the District Court erred in denying their joint motion to intervene, and further request that this Court proceed to "reverse" the District Court's separate order maintaining

---

[8] *See also* Doc. 779 at 10 ("Release of Volume II outside the Department of Justice would plainly offend the Court's Dismissal Order [ECF No. 672] and the Rule 16 Protective Order [ECF No. 27], both of which remain in force; it would cause irreparable damage to former defendants from disclosure of non-public discovery material implicating still-contested grand jury and privilege concerns; and it would contravene basic notions of fairness and justice in the process, where no adjudication of guilt has been reached following initiation of criminal charges.").

restrictions on the DOJ's release and transmittal of Volume II. Am. Supp. Br. at 11, 20; Knight Supp. Br. at 22.

## III.    Standard and Scope of Review

This Court reviews the District Court's denials of Appellants' motions to intervene for an abuse of discretion and subsidiary factual findings for clear error. *See United States v. Ruan*, 814 F. App'x 439, 441 (11th Cir. 2020) ("We review for abuse of discretion the denial of a Rule 24(b) motion for permissive intervention." (internal citations omitted));[9] *see also United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (applying the abuse-of-discretion standard to the denial of intervention in criminal proceedings).    Underlying questions of law are reviewed *de novo. See Noble Prestige Ltd. v. Galle*, 83 F.4th 1366, 1374 (11th Cir. 2023); *FTC v. Marcus*, 848 F. App'x 388, 391 (11th Cir. 2021).

---

[9] In *Ruan*, this Court left undecided the question of the appropriate standard in criminal proceedings. *See Ruan*, 814 F. App'x at 443 ("The district court neither erred nor abused its discretion in denying [the] motion to intervene.").

## Summary of Argument

These appeals are limited to the question of whether the District Court abused its discretion in denying Appellants' motions to intervene on December 22, 2025, and February 23, 2026. It did not.

Intervention in criminal proceedings is narrowly limited. The Federal Rules of Criminal Procedure do not provide a mechanism for non-party intervention by right in criminal proceedings. This reflects the general legal principle that no man has a judicially cognizable interest in the criminal prosecution of another. Courts therefore analyze the participatory rights of non-parties to criminal proceedings in light of the statutes governing those proceedings. FOIA, which Appellants depend on, provides no such right to intervene, and even the recognized common law and First Amendment "rights of access" do not apply here. Volume II is neither a "judicial record" subject to the common law right of access, nor a "judicial document" subject to the First Amendment qualified right of access to judicial proceedings.

Appellants nonetheless urge this Court to improperly adopt a new rule whereby any non-party *must* be permitted to intervene and be heard in the criminal proceedings of another in order to seek access to a non-

35

public document that was never filed in the criminal proceedings in the first place. They do so under either a wrongful FOIA theory of access or a theory, also incorrect, that the non-public document was somehow transformed into a "judicial record" or "judicial document"—even where the record clearly demonstrates that it was not. Expansion of criminal intervention in this manner is not supported by law, and would wreak havoc in the American criminal justice system, undermining foundational constitutional protections.

With respect to the second intervention appeal, Knight Institute and American Oversight effectively seek this Court's review of a purported "*Griggs* violation." However, they do not claim that the District Court lacked jurisdiction to rule on their joint intervention motion. Rather, they incorrectly argue that the District Court lacked jurisdiction to issue its *separate order* maintaining the restrictions that already existed with respect to Volume II—an order which is not the subject of this appeal or any other proceeding—and urge this Court to "reverse" that separate order.

The records in these appeals clearly demonstrate that the District Court properly denied Appellants' motions to intervene on December 22,

2025, and February 23, 2026. This Court should therefore dismiss Knight Institute's and American Oversight's appeals for want of jurisdiction.

## Argument

Intervention in criminal proceedings is narrowly limited. A citizen generally "lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Morales v. United States Dist. Court*, 580 F. App'x 881, 887 (11th Cir. 2014) ("[A] private citizen's interest in the . . . criminal prosecution of another person is not a judicially cognizable interest for standing purposes.").

The Federal Rules of Criminal Procedure do not provide a mechanism for a non-party to intervene in a criminal proceeding. *Ruan*, 814 F. App'x at 442. Rather, this Court analyzes the participatory rights of non-parties to criminal proceedings in light of the statutes governing those proceedings. *Id.* In the rare instances where courts have permitted intervention under non-statutory circumstances, those pathways have been narrow. *See United States v. Atesiano*, No. 18-cr-20479, 2018 U.S.

37

Dist. LEXIS 190545, at *5-9 (S.D. Fla. Nov. 7, 2018) (collecting cases); *see also Aref*, 533 F.3d at 81 (recognizing this *discretionary* mechanism is rooted in the courts' supervisory authority to formulate procedures to implement remedies for violations of recognized rights).

## I.    Appellants' FOIA Theories of Intervention Lack Any Merit

American Oversight initially sought to intervene in the District Court proceedings on February 18, 2025, under a novel and far-fetched theory that FOIA supplied it with an independent right to intervene in the criminal case. *See* Doc. 717 at 7 ("Because American Oversight has the right to prompt disclosure of non-exempt public records under FOIA, and because the government has cited this Court's Order as the reason it cannot comply . . . , intervention in this case is appropriate . . . ."). Soon thereafter, Knight Institute also sought to intervene in the criminal case, asserting a similar baseless argument that it had "standing" to intervene because the District Court's January 21, 2025, Order implicated its federal rights under FOIA. Doc. 721 at 8; *see also id*. at 2 ("[Knight] Institute asks that the Court rescind its January 21 Order because it prevents the Institute from pursuing its rights under FOIA . . . ."). The District Court properly decided this issue on December 22, 2025, when it

38

denied Appellants' motions to intervene for the purpose of "vindicat[ing]"

their supposed FOIA interests. Doc. 760 at 12-14.[10]

## A. FOIA Does Not Confer Collateral Participatory Rights in Criminal Proceedings

Appellants' novel FOIA theories of intervention lack any merit in

the criminal context.  This Court evaluates the participatory rights of

non-parties based on the statutes governing those proceedings. *See, e.g.*,

*Ruan*, 814 F. App'x at 442 (dismissing intervention appeal where the Fair

Debt Collection Practices Act did not provide for intervention to assert

claims in criminal proceedings); *Couch*, 906 F.3d at 1228-29 (dismissing

intervention appeal where neither the False Claims Act nor the criminal

forfeiture statutes provided for intervention in criminal cases); *see also*

---

[10] Appellants effectively renewed their arguments for intervention in their February 9, 2026, joint motion to intervene. *See* Doc. 775 at 1-2, 3-5 (asserting the same FOIA, common law, and First Amendment rights of access arguments as bases for intervention); Knight Supp. Br. at 14 ("For the reasons set forth in its opening brief, the Knight Institute has standing to intervene to challenge the Permanent Injunction, which replaced the Jan. 21, 2025 Injunction at issue in the First Appeal and is preventing the Institute from vindicating its statutory right of access to Volume II under FOIA.").  The arguments made in Sections I-III concerning those asserted bases apply to the joint motion with equal force.  To the extent that their arguments in the joint motion to intervene were "distinct" from those in their initial motions, *see* Am. Supp. Br. at 12, those distinctions are addressed in Section IV.

*United States v. Moussaoui*, 483 F.3d 220, 238-39 (4th Cir. 2007) (reversing order providing victims access to nonpublic criminal discovery where the Crime Victims' Rights Act and Air Transportation Safety and System Stabilization Act did not provide the district court authority— "inherent or otherwise").

Like the statutes at issue in *Ruan*, *Couch*, and *Moussaoui*, FOIA does not bestow requesters with collateral participatory rights in criminal proceedings. Rather, it establishes a "comprehensive scheme" for requesting agency records, and for seeking judicial relief when non-exempt materials are improperly withheld, which is not the case here. *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 153 (1989); *see also GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 384 (1980) ("[FOIA] gives federal district courts the jurisdiction 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld.'" (quoting 5 U.S.C. § 552(a)(4)(B))).[11]

The Supreme Court has "held this scheme to be 'explicitly exclusive.'" *Spurlock v. FBI*, 69 F.3d 1010, 1017 (9th Cir. 1995) (quoting

---

[11] Neither American Oversight nor Knight Institute assert that Volume II has been improperly withheld for the purposes of FOIA.

*Tax Analysts*, 492 U.S. at 151). A requester's dissatisfaction with FOIA's scheme does not, therefore, confer a collateral right of entitlement or procedural mechanism to seek relief in an alternative forum. *See Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (explaining that the Supreme Court was "unable" to read FOIA as supplying congressional intent to permit private actions except where agency records have been improperly withheld).[12]

This is dispositive for American Oversight's and Knight Institute's motions to intervene on a FOIA basis—a fatal flaw that cannot be overcome by comparison with *United States v. Gurney*, 558 F.2d 1202 (5th Cir. 1977), *overruled in part on other grounds*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978), which American Oversight, wrongly, suggests "compels" its intervention. *See* Am Br. at 22-24.

---

[12] *Amicus curiae* America First Legal Foundation explains that the Privacy Act of 1974, 5 U.S.C. § 552a, independently forbids dissemination of Volume II outside of the DOJ, and that no FOIA-based exception to the Privacy Act applies because disclosure here would amount to "one private citizen . . . seeking information about another." Br. of *Amicus Curiae* Am. First Legal Found. Supporting Defs.-Appellees & Supporting Affirmance ("AFL Br.") at 20-26 (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

41

### B. *Gurney* Does Not Compel Intervention in the Criminal Proceedings to Assert a Statutory FOIA Interest

Contrary to American Oversight's assertions, *Gurney* does not establish precedent compelling third-party intervention in a criminal proceeding to assert a statutory right, much less establish that standing exists to do so. *See* Am. Br. at 22-24 (arguing that the former Fifth Circuit's decision in *Gurney* somehow "compels" American Oversight's intervention).

*Gurney*—which did not involve a FOIA or other statutory theory of interest—arose out of a press petition for access to various materials in the criminal trial of then-United States Senator Edward Gurney. Asserting a First Amendment right of access to the criminal trial proceedings, the press sought access to: (1) exhibits offered at the criminal trial for identification but not yet admitted; (2) exhibits admitted but not yet read to the jury; (3) exhibits offered but rejected; (4) the full transcript of the grand jury testimony of Senator Gurney; (5) the witness list; (6) names and addresses of the jurors; and (7) a defense exhibit that had been received in evidence. *Gurney*, 558 F.2d at 1205. The district court permitted the press access to inspect the witness

42

list and exhibits received into evidence, but denied the press access to the names and addresses of the jurors, non-public grand jury testimony, and exhibits not yet received into evidence. *Id*. at 1205-06.[13]

In *affirming* the district court's denial order, the Fifth Circuit first considered its jurisdiction to take up the press's appeal. *Id*. at 1206-07. Notably, this is the only portion of the *Gurney* decision cited by American Oversight in support of its FOIA theory of access. *See* Am. Br. at 23 ("The *Gurney* court noted that, in addition to showing an injury-in-fact, a prospective intervenor must show that 'the interest sought to be protected is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' . . . Accordingly, motions to intervene in a criminal matter may be permissible." (quoting *Gurney*, 558 F.2d at 1206)).

American Oversight seemingly fails to see that those statements in *Gurney* have no bearing on the sufficiency of its purported FOIA interest in intervention. Rather, the court's statements that the press "*arguably*

---

[13] As American Oversight rightly acknowledged in its briefing, *Gurney* does not speak to the question of intervention. *See* Am. Br. at 23 n.7. It also does not speak to the press's entitlement to be heard. That was not at issue. *See Gurney*, 558 F.2d at 1205-06 (describing proceedings).

suffered an injury with respect to newsgathering," and that the district court's denial order "*arguably* affected appellants' rights under the First Amendment," pertained to the court's evaluation of prudential standing. *Gurney*, 558 F.2d at 1206 (emphasis added). *But see Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*, 100 F.4th 1349, 1356 (11th Cir. 2024) ("After *Lexmark*, this Court has omitted the zone-of-interest question from our standing analysis, so the district court's consideration of it here was probably also unnecessary." (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127-32 (2014))). Moreover, as further explained below, *Gurney* does not support Appellants' claims under the common law and First Amendment.[14]

## II. Volume II Is Not a "Judicial Record" or "Judicial Document" Subject to the Common Law or First Amendment Rights of Access

Knight Institute, unlike American Oversight, also sought to intervene in the criminal proceedings under alternative, also meritless,

---

[14] *See Gurney*, 558 F.2d at 1209-10 ("In keeping with present Supreme Court guidelines, we do not think that the press had *any* First Amendment right of access to those matters not available to the public." (emphasis added)); *id.* at 1209-10 ("The press has *no right of access* to exhibits produced under subpoena and not yet admitted into evidence, hence not yet in the public domain." (emphasis added)).

theories that Volume II is somehow a "judicial record" or "judicial document," subject to the common law and First Amendment rights of access. Doc. 721 at 2-3.[15]  However, despite their characterizations, the records in these appeals clearly establish that Appellants lack any cognizable interest in obtaining access to Volume II.  The common law and First Amendment rights of access simply do not apply.

## A. The Common Law Right of Access to Judicial Records Does Not Attach to Volume II

In its initial motion to intervene, Knight Institute wrongly alleged that the common law right of access "attache[d]" to Volume II because it was "submitted" to the District Court in connection with a motion that "invoked the Court's powers," and was "reviewed and considered" by the District Court in ruling on that motion. Doc. 721 at 2.  That argument not only reflects a misunderstanding of the facts and procedural posture of this appeal, but also a misunderstanding of the law concerning the common law right of access.

---

[15] American Oversight did not raise these arguments in its initial motion to intervene, but has joined in Knight Institute's arguments in subsequent proceedings. *See* Am. Br. at 19 n.3.

45

"There is no question that the press and the public jointly possess a common-law right to inspect and copy judicial records and public documents." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987). Nevertheless, this Court has observed that "private documents collected during discovery are not 'judicial records.'" *Id.* (quoting *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986)). Thus, while the press may enjoy the right of access to "pleadings, docket entries, orders, affidavits or depositions *duly filed*," it lacks any common law right to "information collected through discovery which is not a matter of public record." *Id.* (emphasis in original).

Volume II is neither a pleading, a docket entry, nor an attachment to a court filing. It is precisely the type of non-public, unfiled discovery information over which courts have uniformly held that the public and the press lack any legally protected interest. *See, e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("Such proceedings were not open to the public at common law, and, in general, they are conducted in private as a matter of modern practice." (internal citation omitted)); *United States v. Nickens*, 809 F. App'x 584, 591 (11th Cir. 2020) ("Discovery materials, however, do not fall within the scope of either the First

46

Amendment or the common law right of access. Instead, public disclosure of discovery material is subject to the discretion of the trial court and the federal rules that circumscribe that discretion." (citation modified)); *Gurney*, 558 F.2d at 1210 ("The press has no right of access to exhibits produced under subpoena and not yet admitted into evidence, hence not yet in the public domain."); *United States v. Kravetz*, 706 F.3d 47, 55 (1st Cir. 2013) ("[T]he courts of appeals have uniformly held that the public has no common law or constitutional right of access to materials that are gained through civil discovery but neither introduced as evidence at trial nor submitted to the court as documentation in support of motions or trial papers.").

The District Court addressed this squarely in its December 22, 2025, denial order with dispositive findings of fact, including that:

> No part of Volume II was attached by any party to a substantive motion for resolution on the merits. It was not admitted into evidence or attached as an exhibit to any motion or pleading. It was not filed on the docket (although failure to docket is not alone dispositive . . . ). *And no defendant ever maintained Volume II or retained it for submission to this Court as part of their substantive motion. . . .*

47

> Equally importantly, Volume II contains large swaths of nonpublic discovery information (subject to a protective order) that is unattached to a substantive motion for judicial relief . . . . [N]o party attached such discovery to the Emergency Motion or in opposition to it, as noted above, or in any of the many associated filings before the Court regarding the issues raised in the Emergency Motion . . . .

Doc. 760 at 15-16 (citation modified).

Further, while this Court has recognized that non-judicial documents can become judicial ones under certain circumstances, the District Court's *in camera* review of Volume II had no such effect. *See Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1168 (11th Cir. 2019) *("Advance Local Media") (*"The mere filing of a document does not transform it into a judicial record."); *see also United States v. Wolfson*, 55 F.3d 58, 61 (2d Cir. 1995) ("We are not aware . . . of any common-law principle that documents submitted to a court *in camera* for the sole purpose of confirming that the refusal to disclose them to another party was proper, are to be deemed judicial records open to the public."); *Bond v. Utreras*, 585 F.3d 1061, 1075 n.8 (7th Cir. 2009) ("[T]he public does not acquire a right to access discovery material just because a judge might review it in camera in the course of discovery

48

proceedings." (citing *Chi. Tribune Co.*, 263 F.3d at 1312-13; *SEC v. TheStreet.com*, 273 F.3d 222, 233 (2d Cir. 2001); *Wolfson*, 55 F.3d at 61)).

In wrongly arguing that Volume II was somehow transformed into a judicial record, Knight Institute relies expansively on this Court's decision in *Advance Local Media. See, e.g.,* Knight Br. at 31, 40-44. There, members of the press intervened post-dismissal in a civil case brought by a death row inmate challenging the constitutionality of Alabama's lethal injection protocol, as applied to him. *Advance Local Media*, 918 F.3d at 1163-64. The press was permitted to intervene pursuant to Rule 24(a) of the Federal Rules of Civil Procedure for the purpose of seeking access to all records, transcripts, and briefs discussing the protocol. *Id.* at 1165. The protocol, although never "formally filed" with the district court due to rushed circumstances surrounding the inmate's impending execution, was submitted by the State upon obtaining a protective order for the district court's *in camera* review. *Id.* at 1164-65.

Notably, in deciding that the non-public state protocol was transformed into a judicial record, the district court stated:

49

> In the rush to address Mr. Hamm's as-applied claim before his scheduled execution date, the parties failed to submit an electronic version of a record or to formally attach the protocol to their filings with the court. Assuming that the parties would present the protocol as an exhibit during the hearing, the court immediately began to make notes on the paper version Defendants submitted to it. ***In the press of time, the parties and the court did not cross all Ts or dot all Is to have the protocol filed of record***.

*Hamm v. Dunn*, No. 17-cv-2083, 2018 U.S. Dist. LEXIS 89809, at *17 (N.D. Ala. May 30, 2018) (emphasis added). The protocol was then subjected to expert testimony, debated at hearings, expressly relied upon in denying substantive motions, and was subsequently quoted by the inmate in a sealed motion to supplement his amended complaint. *Advance Local Media*, 918 F.3d at 1163, 1165 n.3.

In granting the press's request for access to a redacted copy of the protocol, the district court emphasized that, while no party had formally filed the document with their substantive motions, the court had "needed and relied upon the protocol to resolve [the State's] motion for summary judgment and [the inmate's] request for injunctive relief." *Id.* at 1165.

Acknowledging the "unique set of circumstances" under which the appeal arose, this Court affirmed the district court's ruling but kept its

50

holding "narrow." *Id*. at 1168.  The Court held only that, even though the protocol was not "formally filed under the rushed timeline of [the] approaching execution," it constituted a judicial record subject to the common law right of access because it "[1] was submitted to the district court to resolve disputed substantive motions in the litigation, [2] was discussed and analyzed by all parties in evidentiary hearings and arguments, and [3] was *unambiguously* integral to the court's resolution of the substantive motions in [the inmate's] as-applied challenge to the protocol." *Id*. (emphasis added).

Despite the Court's narrow holding in *Advance Local Media*, Knight Institute incorrectly argues that this Court adopted an "integral to the judicial resolution" test for judicial records that it claims is controlling in this case. *See* Knight Br. at 41, 42 (asserting that the Court "set forth" this test in *Advance Local Media* and "reaffirmed" it in *Callahan*). Knight Institute further claims that the District Court "never mentioned—let alone applied—the test," and that the District Court somehow erroneously "held that Volume II is not a judicial record because it was not filed with the court." Knight Br. 42-43.  Those assertions are not only inaccurate but woefully misleading.

51

Any suggestion that the status of a document as a judicial record depends on its relationship to the court's decision on a disputed issue, "distorts [this Court's] case law beyond recognition." *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1362 (11th Cir. 2021). This Court has "consistently rejected *any test* that would make a document's status as a judicial record dependent upon whether it played a discernible role in the resolution of the case or that would require [the Court] to determine the actual role the document played." *Id.* (citation modified and emphasis added).  What matters is not whether the court itself used the document to resolve a substantive motion, but "how the document was used by the parties." *Id.* at 1363 (affirming district court's conclusion that the documents at issue were "used in connection with merits briefing" such that the public right of access attaches).

Agreeing with Knight Institute that it is not dispositive whether the item was "formally filed" on the court's docket, the District Court specifically analyzed whether the circumstances surrounding its *ex parte*, *in camera* review of Volume II during the Emergency Motion proceedings rendered the document a judicial record. Doc. 760 at 11; *see also id.* at 9-11, 16-17 (discussing cases and applicable facts).  Upon a review of cases

in this Circuit, including both *Advance Local Media* and *Callahan*, the District Court concluded that "the focus remains on whether the material in question was 'submitted by litigants' for 'judicial resolution of the merits' in a substantive motion." Doc. 760 at 11 (quoting *Advance Local Media*, 918 F.3d at 1166).

Notably, the District Court assumed for the purpose of its analysis that the public right of access applies with equal force to "post-trial substantive motions," but did not expressly decide whether the Emergency Motion was such a substantive motion. That is a question properly reserved to this Court, which has distinguished between a trial court's disposition of substantive issues in the case in chief, as opposed to the disposition of matters that relate to the judge's trial management role. *See Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (holding only that material filed in connection with any "substantive pretrial motion, unrelated to discovery," is subject to the common law right of access); *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d

53

1304, 1312-13 (11th Cir. 2001) (limiting holding to "pretrial motions that require judicial resolution *of the merits*" (emphasis added)).[16]

Adding to its prior findings of fact, including that no party had quoted from or attached any portion of Volume II to any filing, *see* Doc. 760 at 3, 5, the District Court stated that:

> [H]ere, as the record makes obvious, no party attached Volume II to a substantive motion or sought to have it made part of the record on the Emergency Motion.
>
> The Court referenced Volume II briefly in a closed session following a public hearing on January 17, 2025, to better understand the scope of grand jury material potentially still contained within Volume II, but no party moved to make Volume II an exhibit to the hearing; there has been no challenge by any party or by the prospective intervenors to the Court's procedure on January 17, 2025 . . . .
>
> And never did the Court ever suggest, much less rule, that Volume II was admissible as evidence in the criminal case.

Doc. 760 at 17 & n.16 (citation modified).

---

[16] *See also Kravetz*, 706 F.3d at 54 (distinguishing Rule 17(c) subpoenas and related materials from those "relied on to determine the litigants' substantive rights"). *Cf. United States v. Benkahla*, 530 F.3d 300, 309 (4th Cir. 2008) ("Judgments of evidentiary relevance and prejudice are fundamentally a matter of trial management.").

The District Court further observed that President Trump, Mr. Nauta, and Mr. De Oliveira never had copies of Volume II; Volume II was never the subject of an evidentiary hearing or otherwise made an exhibit to a hearing; and Volume II was never filed (formally or otherwise) by the parties in connection with the Emergency Motion. *Id.* at 17 n.15.  Vitally, counsel for the DOJ, while complying with the District Court's request for a copy of Volume II "under protest," even insisted that the District Court's review of Volume II was *unnecessary* to decide the Emergency Motion. Doc. 760 at 5, 15.

Those facts are precisely the opposite of the unique circumstances presented by *Advance Local Media*.  In light of those facts and this Court's binding precedents, the District Court properly concluded that the common law right of access to judicial records does not attach to Volume II. Doc. 760 at 15.

## B. The First Amendment Right of Access to Judicial Proceedings Does Not Attach to Volume II

Knight Institute likewise incorrectly argued in its initial motion to intervene that Volume II is "subject to a qualified right of access under the First Amendment," because it is a "judicial document inextricably

intertwined with a proceeding that is itself subject to the constitutional access right." Doc. 721 at 2.  Knight Institute further wrongly asserted that, as a judicial document subject to the presumptive right of access, Volume II "must be released because its suppression is no longer needed to protect any governmental interest and is not narrowly tailored." *Id.* at 3.

Volume II is no such "judicial document," and that is not the effect of settled law.

The press and public undoubtedly enjoy a "qualified First Amendment right of access to criminal trial proceedings." *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1028-29 (11th Cir. 2005).  Rooted in a "centuries-old history of open trials and the opinions of this Court," the Supreme Court first recognized "the right to attend criminal trials is implicit in the guarantees of the First Amendment." *Richmond Newsps., Inc. v. Virginia*, 448 U.S. 555, 575, 580 (1980).  Given that history, and "[a]bsent an overriding interest articulated in findings," the Court stated that "the trial of a criminal case must be open to the public." *Id.* at 581.

Faced with questions concerning the breadth of this protection, the Supreme Court subsequently elaborated an approach that asks courts to

evaluate both "experience" and "logic" in order to determine whether the First Amendment right of access attaches to a particular type of judicial proceeding. *Globe Newsp. Co. v. Superior Court*, 457 U.S. 596, 606 (1982); *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 505-13 (1984) ("*Press-Enterprise I*") (applying presumptive right of access to transcript of closed *voir dire* in criminal case); *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 10-13 (1986) ("*Press-Enterprise II*") (applying presumptive right to transcript of closed preliminary hearing); *see also Ochoa-Vasquez*, 428 F.3d at 1029-30 (application to criminal dockets); *Newman v. Graddick*, 696 F.2d 796, 800-01 (11th Cir. 1983) (application to proceedings concerning the release of convicted prisoners).

The "experience" test asks whether there is a historical "tradition of access[]" to the particular type of proceeding to which the press or public seeks access. *Press-Enterprise II*, 478 U.S. at 8-10. The "logic" test, in contrast, asks whether public access plays a "significant positive role in the functioning of the particular process in question." *Id.* at 8. While many governmental processes may operate best under public scrutiny, the Supreme Court observed that "it takes little imagination to recognize that there are some kinds of government operations that would be totally

frustrated if conducted openly." *Id.* at 9.  A classic example is "the proper functioning of our grand jury system," which "depends upon the secrecy of grand jury proceedings." *Id.*

Similarly, the First Amendment right of public access does not extend to non-public discovery.  "Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation." *Anderson*, 799 F.2d at 1441; *id.* ("Historically, discovery materials were not available to the public or press. Moreover, documents collected during discovery are not 'judicial records.'" (citation modified)); *see also Kravetz*, 706 F.3d at 53-55 ("We base our assessment of whether there is a First Amendment right of public access to Rule 17(c) subpoenas on experience and logic. . . . There is no First Amendment right of public access to the subpoenas or related materials.").  "[M]aterials submitted to a court for its consideration of a discovery motion are actually one step further removed in public concern from the trial process than the discovery materials themselves." *Id.* at 54 (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986)).

58

Volume II is precisely the type of materials over which courts have said there is no First Amendment right of access, *see Kravetz*, 706 F.3d at 55, and the fact that it was reviewed by the District Court *in camera* in connection with the Emergency Motion proceedings does not mean that the right of access attaches. In fact, the opposite is true. Contrary to Knight Institute's claims, the Emergency Motion proceedings, including the District Court's brief sealed session on January 17, 2025, were "quintessential discovery proceeding[s]." *Nickens*, 809 F. App'x at 591.[17]

The post-dismissal Emergency Motion, based upon the District Court's "authority to regulate the participants and attorneys in this matter and to preserve the authority of its orders and [its] control of the proceedings," requested an order precluding the DOJ's transmittal and release of Volume II. Doc. 679 at 2. The crux of that request was that transmittal and release of Volume II would necessarily result in the improper disclosure of non-public discovery, including grand jury

---

[17] Knight Institute wrongly claims that the "presumptive [First Amendment] right of access attached to the district court's January 17, 2025 hearing . . . and to Volume II, which . . . was submitted to the court in advance of the hearing . . . ." Knight Br. 49.

materials, over which the District Court retained ancillary jurisdiction and supervisory power. *See* Doc. 679 at 2, 22; *see also* Doc. 714 at 12-13 (disposition of the Emergency Motion was properly treated as an "exercise of supervisory control over the flow of substantive, nonpublic information"); *id.* at 9 ("Rule 16 of the Federal Rules of Criminal Procedure gives district courts authority, for good cause, to grant appropriate relief concerning discovery materials in a criminal case.").

At the time of the noticed public hearing and the DOJ's *ex parte* submission of Volume II, the DOJ took the position that "[t]he only remaining issue before the Court" was whether making the redacted version of Volume II available to Members of Congress "would risk prejudice to the defendants." Doc. 708 at 1. The Court observed that its *in camera* review of Volume II, and a "brief, sealed follow-up session" to the January 17, 2025, public hearing, could assist in its review of that question "in an attempt to understand the extent of grand jury material contained within Volume II." Doc. 760 at 5. The District Court's order resolving that dispute did not reach the merits of the criminal case. Those matters, resolved by the July 15, 2024, dismissal order, then remained on appeal before this Court. *See* Doc. 714 at 2 n.2 ("The parties

60

have raised arguments concerning the authority of Special Counsel Smith to prepare or issue Volume II, but the Court has not considered those arguments in deciding the Emergency Motion, which concerns a discovery disclosure matter collateral to the appeal.").

The matters considered by the District Court on January 17, 2025, are not matters to which the First Amendment right of access to criminal trial proceedings applies. "[T]he 'First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally.'" *Anderson*, 799 F.2d at 1441 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972); *see also United States v. Corces*, No. 92-cr-28, 1997 U.S. Dist. LEXIS 11139, at *6 (M.D. Fla. July 28, 1997) ("[A] prime example [where the First Amendment right of access does not apply] is a document that has been submitted to a court *in camera*, *ex parte* as part of a discovery dispute . . . ." (citing *Wolfson*, 55 F.3d at 60; *In re Macon Tel. Publ'g Co.*, 900 F. Supp. 489, 491-92 (M.D. Ga. 1995) ("[N]o First Amendment right of public access to search warrants, and affidavits filed in support thereof, exists.").

Further, the Supreme Court has uniformly recognized that "the proper functioning of our grand jury system," in particular, depends on

61

secrecy. *Press-Enterprise II*, 478 U.S. at 9. Pre-trial discovery is also neither a public process nor a matter typically of public record, and the consequences of disclosure would be "severe." *Anderson*, 799 F.2d at 1441; *see also In re Macon Tel. Publ'g Co.*, 900 F. Supp. at 492 (discussing the inherent nature and interests of secrecy in jury deliberations, juvenile matters, grand jury proceedings, and "investigative proceedings generally").

It is for these same reasons that courts have held that the First Amendment right of access does not attach to grand jury and other discovery-related proceedings. *See, e.g.*, *Seattle Times Co.*, 467 U.S. at 33 (in the civil context, "pretrial depositions and interrogatories are not public components of a civil trial"; therefore, "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information"); *Kravetz*, 706 F.3d at 54 ("'[D]iscovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation.' . . . There is no First Amendment right of public access to the subpoenas or related materials." (quoting *Anderson*, 799 F.2d at 1441)).

62

Knight Institute has provided no argument or authority to support the incorrect notion that the Emergency Motion proceedings were anything other than the disposition of a dispute over the disclosure of grand jury and other non-public discovery materials. *See* Knight Br. at 46-48 (arguing, instead, that lower courts have held that the First Amendment right of access applies to "almost all pretrial, mid-trial, and post-trial criminal proceedings"). Likewise, Knight Institute's citations to *In re Hearst Newsps., LLC*, 641 F.3d 168, 176 (5th Cir. 2011), *Ochoa-Vasquez*, 428 F.3d at 1028-31, and *Newman*, 696 F.2d at 800-02, do not overcome this requirement. *See United States v. Valenti*, 987 F.2d 708, 712 (11th Cir. 1993) (courts must first consider experience and logic tests to determine if a qualified First Amendment right of access attaches to the proceeding in the first place). None of those cases so much as suggest that a First Amendment right of access to criminal trials attaches to discovery materials or discovery-related proceedings like the Emergency Motion.

The District Court, in applying the experience and logic tests for the purposes of its First Amendment analysis, was therefore correct to

hold that the right of access to criminal trials did not attach to Volume II. *See* Doc. 760 at 8-11, 15-18.

## III.   Standing Alone Does Not Require an Opportunity to Intervene and Be Heard

Knight Institute argues on appeal that the District Court improperly "conflated" the above merits inquiry with standing, and held that Knight Institute lacked standing to intervene in the criminal case. *See* Knight Br. at 30, 33-34 (citing *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022) and *Okeelanta Corp. v. U.S. Army Corps of Eng'rs*, 132 F.4th 1320, 1332 (11th Cir. 2025)); Knight Supp. Br. at 14 ("For the reasons set forth in its opening brief, the Knight Institute has standing to intervene . . . .").[18]  But the District Court did not deny Knight Institute intervention on the issue of standing. *See* Doc. 760 at 12-18.

Even assuming Knight Institute's and American Oversight's legal claims concerning their purported FOIA, common law, and First Amendment rights of access in Volume II were somehow adequate for the purposes of Article III standing, which they are not, standing alone does

---

[18] American Oversight does not raise any arguments concerning standing in either appeal. *See* Am. Br. at 19-24; Am. Supp. Br. at 11-20.

not confer an uncontroverted right to intervene in the criminal case or be heard. Because third-party intervention in criminal matters is derived from the judiciary's supervisory authority, the decision to allow intervention remains firmly within the district court's discretion. *See, e.g.*, *Aref*, 533 F.3d at 81 (no abuse of discretion where the district court denied the motion to intervene after fully considering the issue raised, engaging in the same legal analysis that was urged, and ultimately rejecting the argument on the merits); *United States v. Carmichael*, 342 F. Supp. 2d 1070, 1072 (M.D. Ala. 2004) (acknowledging that courts "*sometimes* permit the press to intervene" in criminal cases to assert First Amendment rights of access (emphasis added)); *United States v. Gallo*, No. 24-cr-712, 2026 U.S. Dist. LEXIS 131238, at *4-5 (D.N.J. June 12, 2026) ("[A] district court may permit a third party to appear in a criminal proceeding under certain circumstances as part of its inherent power to manage its dockets if the third party's constitutional or other federal rights are implicated . . . ."); *United States v. Eckerd*, No. 22-cr-237, 2026 U.S. Dist. LEXIS 109249, at *7 (S.D. Ohio May 18, 2026) ("[E]ven though the Court has the inherent authority to allow him to intervene, it will not

65

do so because he has not identified a cognizable legal interest that could be impaired absent his intervention.").

Here, the District Court properly denied both Appellants' motions to intervene after fully considering the issues raised in their motions and in the related briefing. *See* Doc. 760 at 2 ("Upon review of the Motions, Responses, and Replies [ECF Nos. 717, 721, 739, 740, 745, 746], and fully advised in the premises, the Motions to Intervene are DENIED."); *id.* at 12 ("Upon careful review of the Motions and the related filings, and fully advised in the premises, the Court sees no basis to authorize nonparty intervention in this closed criminal proceeding—either on the unprecedented and unsupported theory of FOIA access or on the flawed assumption that Volume II qualifies as a judicial record triggering the common law or First Amendment right of access."); *id.* at 12-18 (engaging with American Oversight's and Knight Institute's arguments for intervention and concluding, on the merits, that no "basis" existed for intervention on those arguments).[19]

---

[19] The term "basis" is not interchangeable with "standing." A non-party lacks a basis to intervene when it fails to establish the necessary statutory authorization or legal entitlement such as a valid common law

The District Court did not end its inquiry with an analysis of Article III standing. In fact, the District Court's analysis of the FOIA arguments only referenced the issue of standing in passing. *See* Doc. 760 at 13 ("To begin, 'prospective intervenors fail to cite a single case in support of the proposition that an unrelated third party has standing to intervene in a closed criminal case in order to facilitate their FOIA litigation in another district. . . .'"). Further, the District Court's analysis of the common law and First Amendment arguments for intervention did not so much as mention standing. *See* Doc. 760 at 15-18. Rather, the District Court focused on the merits of each argument, concluding that FOIA does not bestow party status to pursue a FOIA interest in a criminal forum, *see* Doc. 760 at 14, and that Volume II is not a judicial record or judicial document subject to the common law or First Amendment rights of access. *See* Doc. 760 at 16, 18. Those are not determinations of standing. With respect to Knight Institute's common law and First Amendment

---

or First Amendment right of access. *See, e.g.*, *McGrath v. Rainbow Pediatrics, P.C.*, No. 19-cv-4714, 2022 U.S. Dist. LEXIS 241436, at *7 (D.N.J. Aug. 12, 2022) ("The Court finds Advocare's interest in opposing the pending motion to amend is legally insufficient to form the basis for intervention as of right under the circumstances.").

67

rights, in particular, the District Court decided whether any right of access applies in the first place. *See, e.g.*, *Callahan*, 17 F.4th at 1361 ("The [common law right of access] attaches only to items which may properly be considered public or judicial records." (citation modified)); *Valenti*, 987 F.2d at 712 (courts first consider experience and logic tests to determine whether a qualified First Amendment right of access attaches to the proceeding).

Based upon those conclusions, the District Court properly decided that Knight Institute and American Oversight lacked any basis to intervene. Doc. 760 at 18.

## IV. *Griggs* Does Not Supply an Alternative Basis for Intervention or for Reconsideration of the District Court's First Denial Order

Rather than seeking a timely stay of the District Court's December 22, 2025, denial order pending appeal, Knight Institute and American Oversight improperly sought to intervene yet again two months later—this time on the same bases already briefed and rejected by the District Court on the merits. *See* Doc. 775 at 3-5. The District Court properly denied the joint motion to intervene on February 23, 2026, observing that Appellants did not seek a stay of the prior denial order

68

resolving those arguments. *See* Doc. 780 at 2 n.1.  The District Court did not reevaluate or reconsider the merits of those arguments, which were already before this Court on appeal. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over *those aspects of the case involved in the appeal.*" (emphasis added)).

To the extent that Knight Institute and American Oversight now seek this Court's review of a purported *Griggs*-style violation by the District Court for declining to stay all other proceedings, *see* Knight Supp. Br. at 14-16, Am. Supp. Br. at 12-13, their arguments that the District Court lacked jurisdiction to "permanently enjoin the release of Volume II" were not asserted as bases for intervention. *See* Doc. 775 at 5-7.  Rather, those arguments related to Appellants' substantive requests for relief—a stay of all further proceedings in the District Court pending their first intervention appeal. *See id.* at 7.  The District Court was not

required to engage with that request for relief in denying the joint motion for intervention.[20]

Should this Court nonetheless choose to consider the District Court's jurisdiction to take *any action* in connection with the intervention appeals, the District Court thoroughly considered, and engaged with, arguments regarding its jurisdiction in its separate order concerning the prohibitions on release of Volume II. [21] *See* Doc. 779 at 7-8 n.4 ("[T]here is no pending notice of appeal that divests this Court of jurisdiction to enter this Order. . . ."); *id.* at 8-9, 14 (discussion of a court's inherent authority to restrict access to discovery materials generated in

---

[20] Appellants also wrongly asserted below that the relief requested by President Trump, Mr. Nauta, and Mr. De Oliveira "would violate the Federal Records Act." Doc. 775 at 2.  Not so.  As *amicus curiae* America First Legal Foundation explains, Volume II—the product of an office that the District Court ruled was unconstitutionally appointed and funded— is not an "agency record" subject to the Federal Records Act or the Records Disposal Act; even if it were, it would qualify for disposition under 44 U.S.C. § 3303(2) as a record no longer needed for the transaction of current business; and the Privacy Act of 1974 independently bars its dissemination. *See* AFL Br. at 5-28.

[21] On appeal, American Oversight wrongly alleges that "[t]he district court's failure to stay proceedings pending [the first] appeal" violated the "*Griggs* principle" of divesture, and urges the Court to "correct that error by reversing" the February 23, 2026, denial order. Am. Supp. Br. at 13.

70

connection with the proceeding and enforce its own orders). That separate order—issued before the February 23, 2026, denial order—maintained the restrictions on release that existed at the time of Knight Institute's and American Oversight's first appeals, denied all additional relief requested, and is not the subject of any stay or appeal. *See id.* at 14-15 (maintaining existing restrictions on release).

Further, consistent with the "general[] underst[anding] that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously," the District Court retains jurisdiction over all other matters that are not involved in the intervention appeals. *United States v. Muzio*, 757 F.3d 1243, 1251 (11th Cir. 2014) (quoting *Griggs*, 459 U.S. at 58); *see also Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003) ("The district court has authority to proceed forward with portions of the case not related to the claims on appeal." (citation modified)).

In the context of an intervention appeal, this Court applies an "anomalous rule" and has only limited "provisional jurisdiction to determine whether the District Court properly denied intervention."

71

*Couch*, 906 F.3d at 1225 (citation modified). All other matters properly remain within the jurisdiction of the District Court. [22]

## V. This Court's Review is Otherwise Limited to the Issue of Whether the District Court Was Within Its Discretion in Denying the Motions to Intervene

This Court's provisional jurisdiction is limited to the issue of whether the District Court properly denied intervention. *See Couch*, 906 F.3d at 1225 ("On appeal of denial of a motion to intervene, our precedent provides for 'provisional jurisdiction' to determine whether the District

---

[22] American Oversight adds a distinct, also meritless, argument on appeal that the District Court lacked jurisdiction because "Defendants-Appellees and the United States all desired the same result." Am. Supp. Br. at 15 (citing *GTE Sylvania, Inc.*, 445 U.S. at 383). The District Court did not lack jurisdiction on that basis. Courts retain jurisdiction over issues that are ancillary to, and inextricably linked with, their prior exercise of jurisdiction, including matters concerning the protection or disclosure of materials generated in the case. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending."); *Zow v. Regions Fin. Corp.*, 595 F. App'x 887, 889 (11th Cir. 2014) (district courts retain jurisdiction over collateral issues such as discovery and contempt). To permit nonparties like Appellants to strip the District Court of its jurisdiction over criminal proceedings, simply because the defendants and the DOJ may agree on the appropriate result, would create an untenable rule by allowing any non-party to suspend a district court's authority over the criminal proceedings, despite lacking a cognizable interest in the prosecution of another. *See Morales*, 580 F. App'x at 887.

Court properly denied intervention." (quoting *EEOC v. E. Airlines, Inc.*, 736 F.2d 635, 637 (11th Cir. 1984))).  If the denial of intervention was proper, as it was here, this Court's jurisdiction "evaporates," and the Court must "dismiss the appeal for want of jurisdiction." *Davis*, 290 F.3d at 1299.  *Even if* this Court determines that the District Court abused its discretion in denying any motion to intervene (it did not), the Court should remand to the District Court for further proceedings. *See United States v. Crawford Enters., Inc.*, 735 F.2d 174, 177 (5th Cir. 1984) ("[I]n view of the posture of the case, we simply remand it to the district court."); Doc. 760 at 18 (concluding that, because Knight Institute and American Oversight lacked a basis to intervene, as no right of access applied, no further analysis was warranted).[23]

---

[23] Even when a right of public access does attach, it is "not absolute." *Callahan*, 17 F.4th at 1363 (quoting *Warner Commc'ns, Inc.*, 435 U.S. at 598); *Valenti*, 987 F.2d at 712 (First Amendment right of access also is "not absolute" (quoting *Press-Enterprise II*, 478 U.S. at 9)).  "[I]t is well established that 'the decision as to access is one best left to the sound discretion of the trial court . . . .'" *FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 61 (11th Cir. 2013) (quoting *Warner Commc'ns, Inc.*, 435 U.S. at 599).

## Conclusion

Because this Court's appellate jurisdiction is limited to reviewing the District Court's denials of intervention, and because the District Court properly denied Knight Institute's and American Oversight's motions to intervene, this Court should dismiss the appeals for lack of jurisdiction.

Dated:　　July 13, 2026

By: /s/ Kendra L. Wharton

Kendra Wharton
Fla. Bar No. 1048540
WHARTON LAW PLLC
500 S Australian Ave., Ste. 600-1139
West Palm Beach, FL 33401
(561) 247-5279
k.wharton@whartonlawpllc.com
*Counsel for Defendant-Appellee*
*President Donald J. Trump*

/s/ John S. Irving, IV
John S. Irving, IV
SECIL LAW PLLC
1701 Pennsylvania Ave. NW,
Ste. 200
Washington, DC 20006
(301) 807-5670
jirving@secillaw.com
*Counsel for Defendant-Appellee*
*Carlos De Oliveira*

/s/ Richard C. Klugh
Richard C. Klugh
Jenny Wilson
KLUGH WILSON, LLC
40 N.W. 3rd Street, PH1
Miami, FL 33128
(305) 536-1191 (telephone)
(305) 536-2170 (facsimile)
rklugh@klughwilson.com
jenny@klughwilson.com
*Counsel for Defendant-Appellee*
*Waltine Nauta*

74

## Certificate of Compliance

I, Kendra L. Wharton, counsel for Defendant-Appellee President Donald J. Trump and a member of the Bar of this Court, certify, pursuant to Federal Rules of Appellate Procedure 28(b), 32(a), and 32(g), that the foregoing brief is proportionately spaced, has a typeface of 14 points, and contains 15,003 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

Dated: July 13, 2026                    By:    /s/ Kendra L. Wharton
                                               Kendra L. Wharton

## Certificate of Service

I, Kendra L. Wharton, counsel for Defendant-Appellee President Donald J. Trump and a member of the Bar of this Court, certify, that, on July 13, 2026, the attached brief was filed through the Court's electronic filing system. I certify that all participants in the case are registered users with the electronic filing system and that service will be accomplished by that system.

Dated: July 13, 2026                     By:    /s/ Kendra L. Wharton
                                                Kendra L. Wharton