**Nos. 25-14507, 26-10674**

# United States Court of Appeals
## *for the* Eleventh Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY AND AMERICAN OVERSIGHT,

*Interested Parties-Appellants,*

DONALD J. TRUMP, WALTINE NAUTA, and CARLOS DE OLIVEIRA

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, CASE NO. 9:23-CR-80101 (CANNON, J.)

# JOINT SUPPLEMENTAL APPENDIX OF DEFENDANTS-APPELLEES

Richard C. Klugh
Jenny Wilson
KLUGH WILSON, LLC
40 N.W. 3rd Street, PH1
Miami, FL 33128
*Counsel for Defendant-Appellee*
*Waltine Nauta*

John S. Irving, IV
SECIL LAW PLLC
1701 Pennsylvania Ave NW, Ste 200
Washington, DC 20006
*Counsel for Defendant-Appellee*
*Carlos De Oliveira*

Kendra L. Wharton
WHARTON LAW PLLC
500 S Australian Ave,
Ste 600-1139
West Palm Beach, FL 33401
(561) 247-5279
*Counsel for Defendant-Appellee*
*President Donald J. Trump*

## Index of Defendants-Appellees' Joint Supplemental Appendix

## (Volume I of I)

<u>Docket / Tab #</u>

Rule 16 Protective Order ...................................................................... 27

Protective Order Pertaining to Classified Information Disclosed to

    President Trump and Defense Counsel ........................................ 150

Protective Order Pertaining to Classified Information Disclosed to

    Mr. Nauta and Defense Counsel  ................................................. 151

Protective Order Pertaining to Classified Information Disclosed to

    Defense Counsel for Mr. De Oliveira .......................................... 152

Defendants' Notice Regarding Recent Improper DOJ Disclosures ..... 685

Government's Response to Notice ........................................................ 687

Defendants' Reply in Support of Motion to Preclude Release of

    Volume II  ................................................................................. 712

Notification of Filing of Transcript ..................................................... 769

# Doc. 27

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-80101-CR-CANNON-REINHART**


**UNITED STATES OF AMERICA**

**v.**

**DONALD J. TRUMP and**
**WALTINE NAUTA,**

        **Defendants.**

      _____/


## RULE 16 PROTECTIVE ORDER

Upon consideration of the Government's motion for a protective order pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure, and after consideration of the motion and the entirety of the record, it is hereby **ORDERED** as follows:

1.    **Definition of Discovery Materials.** All non-classified discovery produced by the United States to the Defendants in preparation for, or in connection with, any stage of this case (collectively, "the Discovery Materials") are subject to this protective order ("the Order") and may be used by the Defendants and Defense Counsel (defined as counsel of record in this case) solely in connection with the defense of this case, and for no other purpose, and in connection with no other proceeding, without further order of this Court.

2.    **Storage of Discovery Materials.** Discovery Materials must be maintained in the custody and control of Defense Counsel. Defense counsel shall store the Discovery Materials securely with labels that make it clear that the materials are subject to the Order. Electronic materials or copies of the Discovery Materials shall be stored in the same manner.

1

3.      **Disclosure of Discovery Materials.** Defendants and Defense Counsel shall not disclose the Discovery Materials or their contents directly or indirectly to any person or entity other than persons employed to assist in the defense, persons who are interviewed as potential witnesses, counsel for potential witnesses, and other persons to whom the Court may authorize disclosure (collectively, "Authorized Persons"). Before providing materials to an Authorized Person, Defense Counsel must provide the Authorized Person with a copy of this Order, and Defense Counsel shall obtain from each person to whom disclosure will be made a signed Protected Discovery Material Agreement ("Agreement") available as Attachment A to the Order in which the recipient (1) acknowledges the restrictions set forth in this Order, and (2) agrees that he/she will not further disclose or disseminate the Discovery Materials. Defense Counsel shall keep a copy of each signed Agreement to identify the individuals who received the Discovery Materials and the date on which such information was first disclosed. No disclosure is permitted to any individual or entity that has not signed such Agreement, except by further order of the Court. Potential witnesses and counsel for potential witnesses may be shown copies of the Discovery Materials as necessary to prepare the defense, but they may not retain copies without prior permission of the Court.

4.      **Copies of Discovery Materials.** Defendants, Defense Counsel, and Authorized Persons shall not copy or reproduce the Discovery Materials except as necessary to prepare for the defense. Copies and reproductions shall be treated in the same manner as the original Discovery Materials. The Defendants, Defense counsel, and Authorized Persons shall not disclose any notes or records of any kind that they make in relation to the contents of the materials, other than to Authorized Persons, and all such notes or records are to be treated in the same manner as the original Discovery Materials. The Discovery Materials shall not be copied or reproduced by Defendants or anyone acting on the Defendants' behalf, except Defense Counsel or agents of Defense counsel.

2

5.      **Defendants' Review of Discovery Materials.**  Defendants shall only have access to Discovery Materials under the direct supervision of Defense Counsel or a member of Defense Counsel's staff. Defendants shall not retain copies of Discovery Material. Defendants may take notes regarding Discovery Materials, but such notes shall be stored securely by Defense Counsel or a member of Defense Counsel's staff in the same manner as the Discovery Materials.

6.      **No Disclosure to the Public.** The Discovery Materials, along with any information derived therefrom, shall not be disclosed to the public or the news media, or disseminated on any news or social media platform, without prior notice to and consent of the United States or approval of the Court.

7.      **Use of Discovery Material in Court.** The procedures for use of Discovery Material during any hearing or trial of this matter shall be determined by the parties and the Court in advance of the hearing or trial. Defendants shall not disclose Discovery Material in any public filing or in open court without notice to, and agreement from, the United States, or prior approval from the Court.

8.      **Return of Discovery Materials**. Within 90 days of the conclusion of all stages of this case, including all related appeals, all Discovery Materials and all copies thereof shall be destroyed by Defense Counsel or returned to the United States, unless otherwise ordered by the Court. The Court may require a certification as to the disposition of any such materials.

9.      **Violations.** A knowing violation of this Order by Defendants, Defense Counsel, and Authorized Persons may result in contempt of court or other civil or criminal sanctions.

10.     **Modification of this Order.** This Order may be modified by the agreement of the parties with permission of the Court or by further Order of the Court. Nothing in this Order shall prevent any party from objecting to discovery that it believes to otherwise be improper.

11. **No Ruling on Discoverability or Admissibility.** This Order does not constitute a ruling on the question of whether any particular material is properly discoverable or admissible and does not constitute any ruling on any potential objection to the discovery of any material.

12. The restrictions set forth in this Order do not apply to documents that are or become part of the public court record, nor do the restrictions in this Order limit Defense Counsel in the use of the materials in judicial proceedings in this case, except as described above.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 19th day of June, 2023.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

**<u>Attachment A to Protective Order</u>**

I _____ have read the Rule 16 Protective Order in *United States v. Donald J. Trump and Waltine Nauta.* I have carefully reviewed each provision. I fully understand the Protective Order, and I voluntarily agree to abide by its restrictions. I am an Authorized Person under the Protective Order, and I will not further disclose or disseminate the Discovery Materials.

_____          _____

Date                              Signature

# Doc. 150

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON**

**UNITED STATES OF AMERICA**,

      Plaintiff,

v.

**DONALD J. TRUMP**,

      Defendant.

_____/

**<u>PROTECTIVE ORDER PERTAINING TO CLASSIFIED INFORMATION</u>**
**<u>DISCLOSED TO FORMER PRESIDENT DONALD J. TRUMP</u>**
**<u>AND DEFENSE COUNSEL</u>**[1]

**THIS MATTER** comes before the Court upon the Government's Renewed Motion for

Protective Order pursuant to Section 3 the Classified Information Procedures Act, Pub. L. 96–456,

94 Stat. 2025, 18 U.S.C. App. III § 3 (1980) ("CIPA"), to prevent the unauthorized use, disclosure,

or dissemination of classified national security information  and documents that will be reviewed by

or made available to, or are otherwise in the possession of,  Defendant and defense counsel in this

case.[2]   A sealed hearing was held on the Motion on September 12, 2023 [ECF No. 149].

---

[1] This Order applies to classified information provided to former President Donald J. Trump, hereinafter referred to as "Defendant" for purposes of this Order, and his counsel.  Separate protective orders to follow as to classified information provided to defense counsel for Waltine Nauta and Carlos De Oliveira.

[2] This Order is entered without prejudice to any potential challenges to the "[c]onstitutional and statutory challenges to the authority of the Special Counsel to maintain this action," to the "purported classification status of certain documents at issue in this action," or to arguments/defenses raised under the Presidential Records Act, 44 U.S.C. §§ 2201–09 [ECF No. 66 pp. 7–8].

CASE NO. 23-80101-CR-CANNON-1

Pursuant to the authority granted under Section 3 of CIPA, the Security Procedures

established pursuant to Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States for

the Protection of Classified Information (reprinted following CIPA § 9) (hereinafter the "Security

Procedures"), Rules 16(d) and 57(b) of the Federal Rules of Criminal Procedure, the general

supervisory powers of the Court; and, in order to protect the national security, the Government's

Motion is **GRANTED** in accordance with this Order, and the following Protective Order is

entered:[3]

1.    The Court finds that this case will involve information that has been classified in the

interest of national security.  The storage, handling, and control of this information will

require special security precautions mandated by statute, executive order, and regulation.[4]

2.    The purpose of this Protective Order ("Order") is to establish the procedures that must be

followed by Defendant, defense counsel, the parties, and all other individuals who receive

access to classified information or documents in connection with this case.  The

procedures set forth in this Order shall apply to all pre-trial, trial, post-trial, and appellate

matters concerning classified information in this case and may be modified from time to

time by further order of the Court acting under this Court's inherent supervisory authority

to ensure a fair and expeditious trial.  The limitations on disclosure of classified

information set forth in this Order are binding on Defendant and his counsel and violations

may result in criminal and/or civil penalties.  The government and Defendant may also

---

[3] The Court understands that the government may move for supplemental protective orders
pursuant to CIPA and the Federal Rules of Criminal Procedure.

[4] Any individual to whom classified information is disclosed pursuant to this Order shall not
disclose such information to another individual unless the U.S. agency that originated that
classified information has validated that the proposed recipient possesses an appropriate security
clearance and need-to-know.

CASE NO. 23-80101-CR-CANNON-1

move for modification of this Order at any time for good cause shown.

3. <u>Definitions</u>.   The following definitions shall apply to this Order:

    a. "Government" or "the government" refers collectively to the Special Counsel for the United States Department of Justice and its prosecutors and support staff, as well as any law enforcement or intelligence community employees assisting in the prosecution of this matter.

    b. "Defense" or "defense team" refers collectively to the Defendant's counsel and any support staff assisting the Defendant's counsel authorized to receive classified information pursuant to this Order.[5]

    c. "Classified information" shall include:

        i. Any document, recording, or information that has been classified by any Executive Branch agency in the interests of national security pursuant to Executive Order 13526 (or successor order), as amended, or its predecessor or successor orders, or under the Atomic Energy Act (AEA), 42 U.S.C. § 2011, *et seq.*, as "CONFIDENTIAL," "SECRET," "TOP SECRET," or "FORMERLY RESTRICTED DATA," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION" ("SCI");

        ii. Any document, recording, or information now or formerly in the possession of a private party that (A) has been classified by the United

---

[5] This Protective Order will apply to all defense counsel, both current and future, who possess the requisite clearance.   Only defense counsel who possess the requisite clearance will have access to classified information.

3

CASE NO. 23-80101-CR-CANNON-1

    States Government as set forth above, and/or (B) has been derived from information that is classified by the United States Government;

   iii. Verbal or other unwritten or unrecorded information known to the Defendant or the defense team that has been classified by the United States Government as set forth above;

   iv. Any information, regardless of its origin, that the defense knows or reasonably should know contains classified information, including information acquired or conveyed orally;

   v. Any document, recording, or information as to which the defense has been notified orally or in writing contains classified information; and

   vi. Any document, recording, or information that is classified, as set forth in (i), that has been approved by the United States government for limited authorized disclosure to the Defendant and the defense in criminal case *United States v. Trump et al.*, 23-80101-CR-CANNON, pursuant to the restrictions set forth herein.[6]

  d. "Document," "materials," and "information" shall include, but are not limited to:

---

[6] In the event that the government's discovery obligations require disclosure of government information that is not marked as classified but has been deemed to be classified, the government will inform defense counsel specifically what the information is and, if known, the level of classification. If the government is disclosing information that it has reason to believe is classified but the classification review for that information has not been completed, the government will inform the defense that information must be handled as classified, consistent with this Order, unless and until the government confirms that it is not classified. If the Court or a party to the case seeks to use or disclose information that has not been formally reviewed for classification, the Court and the parties shall address such use or disclosure pursuant to CIPA.

4

CASE NO. 23-80101-CR-CANNON-1

    i. All written, printed, visual, digital, electronic, or audible matter of any kind, formal or informal, including originals, conforming copies, and non-conforming copies (whether different from the original by reason of notation made on such copies or otherwise), as well as metadata;

    ii. Notes (handwritten, oral, or electronic); papers; letters; correspondence; memoranda; reports; summaries; photographs; maps; charts; graphs; inter-office communications; notations of any sort concerning conversations, meetings or other communications; bulletins; teletypes; telecopies; telegrams; telexes; transcripts; cables; facsimiles; invoices; worksheets and drafts; microfiche; microfilm; videotapes; sound recordings of any kind; motion pictures; electronic, mechanical or electric records of any kind, including but not limited to tapes, cassettes, disks, recordings, films, typewriter ribbons, word processing or other computer tapes, disks, or thumb drives and all manner of electronic data processing storage; and alterations, modifications, changes and amendments of any kind to the foregoing; and

    iii. Information obtained orally.

e. "Access to classified information" shall mean having access to, reviewing, reading, learning, or otherwise coming to know in any manner classified information.

f. "SCIF" shall refer to a sensitive compartmented information facility approved by a designated CISO for the storage, handling, and control of classified information.

CASE NO. 23-80101-CR-CANNON-1

**Classified Information**

4.  All classified documents or material and the information contained therein shall remain classified unless the documents or material bear a clear indication that they have been declassified by the agency or department that is the originating agency of the document, material, or information contained therein.

5.  All access to classified information shall conform to this Order.

6.  The Defendant may disclose classified information to the defense as necessary for the preparation of his defense.  Any classified information provided to the defense by the government or the Defendant is to be used solely by the defense and solely for the purpose of preparing the defense.

7.  The defense may not disclose or cause to be disclosed in connection with this case any information known or reasonably believed to be classified information except as otherwise provided herein.  If the defense or the Defendant have any question regarding the disclosure of classified information, they shall consult with the CISO.

8.  Any classified information the defense discusses with the Defendant in any way shall be handled in accordance with this Order, including such requirements as confining all discussions, documents, and materials to an accredited SCIF or other location authorized by the CISO.

9.  The defense and the Defendant shall not disclose classified information to any person, except to the Court, government personnel who hold appropriate security clearances and have been determined to have a need-to-know that information, and those specifically authorized to access that information pursuant to this Order.

6

CASE NO. 23-80101-CR-CANNON-1

10.  Information that is classified that also appears in the public domain is not thereby automatically declassified unless it appears in the public domain as the result of an official statement by a U.S. Government Executive Branch official who is authorized to declassify the information.   Individuals who, by virtue of this Order or any other court order, are granted access to classified information may not confirm or deny classified information that appears in the public domain.   Prior to any attempt by the defense to have such information confirmed or denied in any public proceeding in this case, the defense must comply with the notification requirements of Section 5 of CIPA and all provisions of this Order.

11.  If classified information enters the public domain, the defense and the Defendant are precluded from making private or public statements where the statements would reveal personal knowledge from non-public sources regarding the classified status of the information or would disclose that the defense had personal access to classified information confirming, contradicting, or otherwise relating to the information already in the public domain.   If there is any question whether information is classified, the defense must handle that information as though it is classified unless counsel for the government or the CISO confirms that it is not classified.

### Security Procedures

12.  In accordance with the provisions of CIPA and the Revised Security Procedures, the Court has designated a CISO and alternate CISOs for this case [ECF No. 40], for the purpose of providing security arrangements necessary to protect against unauthorized disclosure of any classified information that has been made available to the Defendant and the defense in connection with this case.   The defense shall seek guidance from the CISO with regard to appropriate storage, handling, transmittal, and use of classified information.

CASE NO. 23-80101-CR-CANNON-1

13. The government has advised the Court that certain attorneys working on this case for the Office of the Special Counsel, including Counselor to the Special Counsel Jay I. Bratt, Assistant Special Counsels Julie A. Edelstein, David V. Harbach, II, Karen E. Gilbert, Michael Thakur, John Pellettieri, and their supervisors, have the requisite security clearances to have access to the classified information that counsel for the government intend to use, review, or disclose in this case.

14. The Court has been advised, through the CISO, that former President Trump's defense counsel of record, possess at least interim security clearances, permitting them to have access to classified information designated as "CONFIDENTIAL," "SECRET," or "TOP SECRET," including (upon read-ins) the following SCI compartments: SI, SI-G, and TK, for which they have a need-to-know.[7]

15. *Protection of Classified Information*. The Court finds that, to protect the classified information involved in this case, to the extent that counsel have the requisite security clearances and a "need-to-know" the classified information, they shall be given authorized access to classified national security documents and information as required by the government's discovery obligations and subject to the terms of this Protective Order, the requirements of CIPA, and any other Orders of this Court.

16. The Defendant may have a continuing contractual obligation to the government not to disclose to any unauthorized person classified information known to them or in their possession.  The government is entitled to enforce that agreement to maintain the confidentiality of classified information.  The defense and the Defendant are subject to

---

[7] Once counsel receive final clearances, they will promptly receive additional read-ins, at which time they will also be able to access additional SCI compartments for which they have a need-to-know.

CASE NO. 23-80101-CR-CANNON-1

this Court's authority, contempt powers, and other authorities, and shall fully comply with any nondisclosure agreements he has signed, this Order, and applicable statutes.

17. No court personnel required by this Court for its assistance shall have access to classified information involved in this case unless that person shall first have received the necessary security clearance as determined by the CISO.

18. Any additional persons whose assistance the defense reasonably requires may have access to classified information in this case only if they are granted an appropriate security clearance through the CISO, obtain approval from this Court with prior notice of the identity of the additional persons to the U.S. government, and satisfy the other requirements described in this Order for access to classified information.

19. An individual with a security clearance and a need-to-know as determined by any government entity is not automatically authorized to disclose any classified information to any other individual, even if that other individual also has a security clearance.   Rather, any individual who receives classified information may disclose that information only to an individual who has been determined by the CISO, in consultation with the appropriate government entity, to have both the required security clearance and a need-to-know the information.

20. Defendant's counsel and the Defendant agree they are subject to the terms of this Protective Order and any other Orders of this Court.   The substitution, departure, or removal for any reason from this case of any counsel for the Defendant or any member of the defense, shall not release that individual from the provisions of this Order.

21. *Secure Area of Review*. The CISO shall establish procedures to assure a SCIF is accessible during business hours to the defense, and at other times upon reasonable request as approved by the CISO in consultation with the Court and United States Marshals Service.

CASE NO. 23-80101-CR-CANNON-1

The SCIF shall contain a working area for the defense and will be outfitted with any secure office equipment requested by the defense that is reasonable and necessary to the preparation of the Defendant's case.   The CISO, in consultation with counsel for the Defendant, shall establish procedures to assure that the SCIF may be maintained and operated in the most efficient manner consistent with the protection of classified information and in compliance with security requirements.   No classified documents, material, recordings, or other information may be removed from the SCIF unless so authorized by the CISO.   Should the CISO overhear any defense conversations or see any defense work product (excluding filings intended to be provided to the Court and the government), the CISO shall not reveal to the government (or anyone else) the content of any conversations they may overhear among the defense, the nature of the documents being reviewed, or the work being generated.   The presence of the CISO or any of his designees shall not operate to waive, limit, or otherwise render inapplicable, the attorney-client privilege.

22.   *Filings with the Court*. Any pleading or other document filed by the defense that Defendant's counsel knows or reasonably should know contains classified information as defined in paragraph 3(c) shall be filed as follows:

a.   Pleadings and other documents shall be filed under seal with the CISO or an appropriately cleared designee and shall be marked, "Filed in Camera and Under Seal with the Classified Information Security Officer."   The time of physical submission to the CISO or an appropriately cleared designee shall be considered the date and time of filing and should occur no later than 5:00 p.m. Within a reasonable time after making a submission to the CISO or an appropriately cleared designee, the defense shall file on the public record in the

10

CASE NO. 23-80101-CR-CANNON-1

CM/ECF system a "Notice of Filing" notifying the Court that the submission was made to the CISO or an appropriately cleared designee.   The notice should contain only the case caption and an unclassified title of the filing.

b. The CISO or an appropriately cleared designee shall immediately deliver under seal to the Court and counsel for the government any pleading or document to be filed by the defense that contains classified information, unless the pleading or document is an *ex parte* and in camera filing.   The CISO shall promptly consult with representatives of the appropriate agencies to determine whether the pleading or document contains classified information.   If it is determined that the pleading or document contains classified information, the CISO shall ensure that the pleading or document is marked with the appropriate classification markings and that the pleading or document remains under seal.

23. *Filing of Papers by the Government*.   Any pleading or other document filed by the government that counsel for the government knows or reasonably should know contains classified information as defined herein, shall be filed as follows:

a. The document shall be filed under seal with the CISO or an appropriately cleared designee and shall be marked, "Filed in Camera and Under Seal with the Classified Information Security Officer."   The time of physical submission to the CISO or an appropriately cleared designee shall be considered the date and time of filing and should occur no later than 5:00 p.m.   Within a reasonable time after making a submission to the CISO, counsel for the government shall file on the public record in the CM/ECF system a "Notice of Filing" notifying the Court that the submission was made to the CISO.   The notice should contain only the case caption and an unclassified title of the filing.

11

CASE NO. 23-80101-CR-CANNON-1

    b. The CISO shall immediately deliver under seal to the Court and counsel for the defense any pleading or document to be filed by the government that contains classified information, unless the pleading or document is an *ex parte* filing.

24. *Record and Maintenance of Classified Filings*.   The CISO shall maintain a separate sealed record for those materials which are classified.   The CISO shall be responsible for maintaining the secured records for purposes of later proceedings or appeal.

25. *The Classified Information Procedures Act*.   Procedures for public disclosure of classified information in this case shall be those established by CIPA.   The defense shall comply with the requirements of CIPA Section 5 prior to any disclosure of classified information during any proceeding in this case.   As set forth in Section 5, the defense shall not disclose any information known or believed to be classified in connection with any proceeding until notice has been given to counsel for the government and until the government has been afforded a reasonable opportunity to seek a determination pursuant to the procedures set forth in CIPA Section 6, and until the time for the government to appeal any adverse determination under CIPA Section 7 has expired or any appeal under Section 7 by the government is decided.   Any conferences with the Court involving classified information shall be conducted in camera in the interest of the national security, be attended only by persons granted access to classified information and a need-to-know, and the transcripts of such proceedings shall be maintained under seal.

26. *Access to Classified Information*.   In the interest of the national security, representatives of the defense granted access to classified information shall have access to classified information only as follows:

    a. All classified information produced, possessed, created or maintained by the defense, including notes and any other work product, and all classified

CASE NO. 23-80101-CR-CANNON-1

information disclosed by the United States government to the defense, shall be stored, maintained and used only in the SCIF established by the CISO, unless otherwise authorized by the CISO.

b. *Special procedures for audio recordings.* Any classified audio recordings that the government discloses to the defense shall be maintained by the CISO in the SCIF. Such recordings may only be reviewed on a stand-alone, non-networked computer or other device within the SCIF that does not have the capability to duplicate or transmit information. The defense must use headphones to review such recordings, and the headphones must be wired and not have any wireless capability.

c. The defense shall have free access to the classified information in the SCIF established by the CISO and shall be allowed to take notes and prepare documents with respect to those materials.

d. The defense shall not copy or reproduce any classified information in any manner or form, except with the approval of the CISO and in accordance with the procedures established by the CISO for the operation of the SCIF.

e. All documents prepared by the defense (including, without limitation, pleadings or other documents intended for filing with the Court) that do or may contain classified information must be prepared in the SCIF on word processing equipment approved by the CISO. All such documents and any associated materials (such as notes, drafts, copies, typewriter ribbons, magnetic recordings, exhibits, thumb drives, discs, CDs, DVDs exhibits, and electronic or digital copies) that may contain classified information shall be maintained in the SCIF unless and until the CISO determines those documents or associated

13

CASE NO. 23-80101-CR-CANNON-1

materials are unclassified in their entirety, or if secure removal is authorized by the CISO.   None of these materials shall be disclosed to counsel for the government or any other party.

f.   The defense shall discuss classified information only within the SCIF or in an area authorized by the CISO.

g.   The defense shall not disclose, without prior approval of the Court, classified information to any person not named in this Order except to the Court, Court personnel, and government personnel identified by the CISO as having the appropriate clearances and the need-to-know.   Counsel for the government shall be given an opportunity to be heard in response to any defense request for disclosure to a person not identified in this Order.   Any person approved by this Court for access to classified information under this paragraph shall be required to obtain the appropriate security clearance and to comply with all the terms and conditions of the Order.   As set forth above, the defense shall not disclose classified information, even to an individual with the appropriate security clearance, without following the procedures referenced in this Order.

h.   The defense shall not discuss classified information over any standard commercial telephone instrument or office intercommunication systems, including but not limited to the Internet and electronic mail, or in the presence of any person who has not been granted access to classified information by the Court.

i.   Any documents written by the defense that do or may contain classified information shall be transcribed, recorded, typed, duplicated, copied, or otherwise prepared only by persons who have received an appropriate approval

14

CASE NO. 23-80101-CR-CANNON-1

for access to classified information.

    j.   The defense may disclose classified information to the Defendant unless the government informs the defense when providing the information that it will be moving the Court for an order to prohibit the classified information from being disclosed to Defendant, in which case the defense may not share the information with Defendant absent a Court order allowing it to do so and the government informing the defense that it does not intend to exercise any further rights under CIPA.

27. Any unauthorized disclosure or mishandling of classified information may constitute violations of federal criminal law.   In addition, any violation of the terms of this Order shall be brought immediately to the attention of the Court and may result in a charge of contempt of Court and possible referral for criminal prosecution.   Any breach of this Order may also result in termination of an individual's access to classified information. Persons subject to this Order are advised that direct or indirect unauthorized disclosure, retention or handling of classified documents or information could cause serious damage, and in some cases exceptionally grave damage, to the national security of the United States, or may be used to the advantage of a foreign nation against the interests of the United States.   The purpose of this Order is to ensure that those authorized to receive classified information in connection with this case will never divulge that information to anyone not authorized to receive it.

28. All classified documents and information to which the defense has access in this case are now and will remain the property of the United States.   Upon demand of the CISO, all persons shall return to the CISO all classified information in their possession obtained through discovery from the government in this case, or for which they are responsible

CASE NO. 23-80101-CR-CANNON-1

because of access to classified information.   The notes, summaries, and other documents prepared by the defense that do or may contain classified information shall remain at all times in the custody of the CISO for the duration of the case.   At the conclusion of this case, including any appeals or ancillary proceedings thereto, all such notes, summaries, and other documents are to be destroyed by the CISO in the presence of counsel for the Defendant if they choose to be present.

29.    Nothing contained in this Order shall be construed as a waiver of any right of the Defendant.    No admission made by the Defendant or his counsel during pretrial conferences may be used against the Defendant unless it is in writing and signed by the Defendant.   *See* CIPA § 2.

30.    A copy of this Order shall be issued forthwith to counsel for the Defendant who shall be responsible for advising the Defendant and representatives of the defense of the contents of this Order.

SO ORDERED in Chambers at Fort Pierce, Florida, this 13th day of September 2023.

_____
**HON. AILEEN M. CANNON**
**UNITED STATES DISTRICT COURT JUDGE**

cc:    counsel of record

16

# Doc. 151

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON-2

UNITED STATES OF AMERICA,

 Plaintiff,

v.

WALTINE NAUTA,

 Defendant.

_____/

## PROTECTIVE ORDER PERTAINING TO CLASSIFIED INFORMATION DISCLOSED TO WALTINE NAUTA AND DEFENSE COUNSEL

**THIS MATTER** comes before the Court upon the Government's Renewed Motion for Protective Order pursuant to Section 3 of the Classified Information Procedures Act, Pub. L. 96-456, 94 Stat. 2025, 18 U.S.C. App. III § 3 (1980) ("CIPA § 3"), to prevent the unauthorized use, disclosure, or dissemination of classified national security information  and documents that will be reviewed by or made available to, or are otherwise in the possession of,  Defendant[1] and defense counsel in this case.[2]   A sealed hearing was held on the Motion on September 12, 2023 [ECF No. 149].

Pursuant to the authority granted under Section 3 of CIPA, the Security Procedures established pursuant to Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States for

---

[1]  For purposes of this Order, "Defendant" refers to Waltine Nauta.

[2]  This Order is entered without prejudice to any potential "[c]onstitutional and statutory challenges to the authority of the Special Counsel to maintain this action, to the "purported classification of certain documents at issue in this action," or to any arguments implicating the Presidential Records Act, 44 U.S.C. §§ 2201–09 [ECF No. 66 pp. 7–8].

CASE NO. 23-80101-CR-CANNON-2

the Protection of Classified Information (reprinted following CIPA § 9) (hereinafter the "Security Procedures"), Rules 16(d) and 57 of the Federal Rules of Criminal Procedure, the general supervisory powers of the Court; and, in order to protect the national security, the Government's Motion is **GRANTED** in accordance with this Order and as discussed during the hearing, and the following Protective Order is entered:[3]

1. The Court finds that this case will involve information that has been classified in the interest of national security. The storage, handling, and control of this information will require special security precautions mandated by statute, executive order, and regulation.[4]

2. The purpose of this Protective Order ("Order") is to establish the procedures that must be followed by Defendant, defense counsel, the parties, and all other individuals who receive access to classified information or documents in connection with this case. The procedures set forth in this Order shall apply to all pre-trial, trial, post-trial, and appellate matters concerning classified information in this case and may be modified from time to time by further order of the Court acting under this Court's inherent supervisory authority to ensure a fair and expeditious trial. The limitations on disclosure of classified information set forth in this Order are binding on Defendant and his counsel, and violations may result in criminal and/or civil penalties. The government and the defense may also move for modification of this Order at any time for good cause shown.

3. <u>Definitions</u>. The following definitions shall apply to this Order:

---

[3] The Court understands that the government may move for supplemental protective orders pursuant to CIPA and the Federal Rules of Criminal Procedure.

[4] Any individual to whom classified information is disclosed pursuant to this Order shall not disclose such information to another individual unless the U.S. agency that originated that classified information has validated that the proposed recipient possesses an appropriate security clearance and need-to-know.

CASE NO. 23-80101-CR-CANNON-2

a. "Government" or "the government" refers collectively to the Special Counsel for the United States Department of Justice and its prosecutors and support staff, as well as any law enforcement or intelligence community employees assisting in the prosecution of this matter.

b. "Defense" or "defense team" refers collectively to the Defendant's counsel and any support staff assisting the Defendant's counsel authorized to receive classified information pursuant to this Order.[5]

c. "Classified information" shall include:

   i. Any document, recording, or information that has been classified by any Executive Branch agency in the interests of national security pursuant to Executive Order 13526 (or successor order), as amended, or its predecessor or successor orders, or under the Atomic Energy Act (AEA), 42 U.S.C. § 2011, *et seq.*, as "CONFIDENTIAL," "SECRET," "TOP SECRET," or "FORMERLY RESTRICTED DATA," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION" ("SCI");

   ii. Any document, recording, or information now or formerly in the possession of a private party that (A) has been classified by the United States Government as set forth above, and/or (B) has been derived from information that is classified by the United States Government;

---

[5] This Protective Order will apply to all defense counsel, both current and future, who possess the requisite clearance.  Only defense counsel who possess the requisite clearance will have access to classified information.

CASE NO. 23-80101-CR-CANNON-2

iii. Verbal or other unwritten or unrecorded information known to the Defendant or the defense team that has been classified by the United States Government as set forth above;

iv. Any information, regardless of its origin, that the defense knows or reasonably should know contains classified information, including information acquired or conveyed orally;

v. Any document, recording, or information as to which the defense has been notified orally or in writing contains classified information; and

vi. Any document, recording, or information that is classified, as set forth in (i), that has been approved by the United States government for limited authorized disclosure to defense counsel in criminal case *United States v. Trump et al.*, 23-80101-CR-CANNON, pursuant to the restrictions set forth herein, along with the singular document described in paragraph 26.j below to be disclosed to Defendant, also subject to those same restrictions.[6]

d. "Document," "materials," and "information" shall include, but are not limited to:

---

[6] In the event that the government's discovery obligations require disclosure of government information that is not marked as classified but has been deemed to be classified, the government will inform defense counsel specifically what the information is and, if known, the level of classification.   If the government is disclosing information that it has reason to believe is classified but the classification review for that information has not been completed, the government will inform the defense that information must be handled as classified, consistent with this Order, unless and until the government confirms that it is not classified.   If the Court or a party to the case seeks to use or disclose information that has not been formally reviewed for classification, the Court and the parties shall address such use or disclosure pursuant to CIPA.

CASE NO. 23-80101-CR-CANNON-2

   i.  All written, printed, visual, digital, electronic, or audible matter of any kind, formal or informal, including originals, conforming copies, and non-conforming copies (whether different from the original by reason of notation made on such copies or otherwise), as well as metadata;

  ii.  Notes (handwritten, oral, or electronic); papers; letters; correspondence; memoranda; reports; summaries; photographs; maps; charts; graphs; inter-office communications; notations of any sort concerning conversations, meetings or other communications; bulletins; teletypes; telecopies; telegrams; telexes; transcripts; cables; facsimiles; invoices; worksheets and drafts; microfiche; microfilm; videotapes; sound recordings of any kind; motion pictures; electronic, mechanical or electric records of any kind, including but not limited to tapes, cassettes, disks, recordings, films, typewriter ribbons, word processing or other computer tapes, disks, or thumb drives and all manner of electronic data processing storage; and alterations, modifications, changes and amendments of any kind to the foregoing; and

 iii.  Information obtained orally.

e.  "Access to classified information" shall mean having access to, reviewing, reading, learning, or otherwise coming to know in any manner classified information.

f.  "SCIF" shall refer to a sensitive compartmented information facility approved by a designated CISO for the storage, handling, and control of classified information.

CASE NO. 23-80101-CR-CANNON-2

## Classified Information

4.     All classified documents or material and the information contained therein shall remain classified unless the documents or material bear a clear indication that they have been declassified by the agency or department that is the originating agency of the document, material, or information contained therein.

5.     All access to classified information shall conform to this Order.

6.     The Defendant may disclose classified information to the defense as necessary for the preparation of his defense.  Any classified information provided to the defense by the government or the Defendant is to be used solely by the defense and solely for the purpose of preparing the defense.

7.     The defense may not disclose or cause to be disclosed in connection with this case any information known or reasonably believed to be classified information except as otherwise provided herein.  If the defense or the Defendant have any question regarding the disclosure of classified information, they shall consult with the CISO.

8.     The defense may not disclose classified information to Defendant except as set forth in paragraph 26.j. or as permitted by any supplemental order.  Any classified information the defense discusses with the Defendant in any way shall be handled in accordance with this Order, including such requirements as confining all discussions, documents, and materials to an accredited SCIF or other location authorized by the CISO.

9.     The defense and the Defendant shall not disclose classified information to any person, except to the Court, government personnel who hold appropriate security clearances and have been determined to have a need-to-know that information, and those specifically authorized to access that information pursuant to this Order.

CASE NO. 23-80101-CR-CANNON-2

10.    Information that is classified that also appears in the public domain is not thereby automatically declassified unless it appears in the public domain as the result of an official statement by a U.S. Government Executive Branch official who is authorized to declassify the information.   Individuals who, by virtue of this Order or any other court order, are granted access to classified information may not confirm or deny classified information that appears in the public domain.   Prior to any attempt by the defense to have such information confirmed or denied in any public proceeding in this case, the defense must comply with the notification requirements of Section 5 of CIPA and all provisions of this Order.

11.    If classified information enters the public domain, the defense and the Defendant are precluded from making private or public statements where the statements would reveal personal knowledge from non-public sources regarding the classified status of the information or would disclose that the defense had personal access to classified information confirming, contradicting, or otherwise relating to the information already in the public domain.   If there is any question whether information is classified, the defense must handle that information as though it is classified unless counsel for the government or the CISO confirms that it is not classified.

**Security Procedures**

12.    In accordance with the provisions of CIPA and the Revised Security Procedures, the Court has designated a CISO and alternate CISOs for this case [ECF No. 40], for the purpose of providing security arrangements necessary to protect against unauthorized disclosure of any classified information that has been made available to the Defendant and the defense in connection with this case.   The defense shall seek guidance from the CISO with regard

7

CASE NO. 23-80101-CR-CANNON-2

to appropriate storage, handling, transmittal, and use of classified information.

13.  The government has advised the Court that certain attorneys working on this case for the Office of the Special Counsel, including Counselor to the Special Counsel Jay I. Bratt, Assistant Special Counsels Julie A. Edelstein, David V. Harbach, II, Karen E. Gilbert, Michael Thakur, John Pellettieri, and their supervisors, have the requisite security clearances to have access to the classified information that counsel for the government intend to use, review, or disclose in this case.

14.  The Court has been advised, through the CISO, that Defendant's counsel of record, possess at least interim security clearances, permitting them to have access to classified information designated as "CONFIDENTIAL," "SECRET," or "TOP SECRET," including (upon read-ins) the following SCI compartments: SI, SI-G, and TK, for which they have a need-to-know.[7]

15.  *Protection of Classified Information*. The Court finds that, to protect the classified information involved in this case, to the extent that counsel have the requisite security clearances and a "need-to-know" the classified information, they shall be given authorized access to classified national security documents and information as required by the government's discovery obligations and subject to the terms of this Protective Order, the requirements of CIPA, and any other Orders of this Court.

16.  The Defendant may have a continuing contractual obligation to the government not to disclose to any unauthorized person classified information known to them or in their possession.   The government is entitled to enforce that agreement to maintain the

---

[7]  Once counsel receive final clearances, they will promptly receive additional read-ins, at which time they will also be able to access additional SCI compartments for which they have a need-to-know.

CASE NO. 23-80101-CR-CANNON-2

confidentiality of classified information.   The defense and the Defendant are subject to this Court's authority, contempt powers, and other authorities, and shall fully comply with any nondisclosure agreements he has signed, this Order, and applicable statutes.

17. No court personnel required by this Court for its assistance shall have access to classified information involved in this case unless that person shall first have received the necessary security clearance as determined by the CISO.

18. Any additional persons whose assistance the defense reasonably requires may have access to classified information in this case only if they are granted an appropriate security clearance through the CISO, obtain approval from this Court with prior notice of the identity of the additional persons to the U.S. government, and satisfy the other requirements described in this Order for access to classified information.

19. An individual with a security clearance and a need-to-know as determined by any government entity is not automatically authorized to disclose any classified information to any other individual, even if that other individual also has a security clearance.   Rather, any individual who receives classified information may only disclose that information to an individual who has been determined by the CISO, in consultation with the appropriate government entity, to have both the required security clearance and a need-to-know the information.

20. Defendant's counsel and the Defendant agree they are subject to the terms of this Protective Order and any other Orders of this Court.   The substitution, departure, or removal for any reason from this case of any counsel for the Defendant or any other member of the defense, shall not release that individual from the provisions of this Order.

21. *Secure Area of Review*. The CISO shall establish procedures to assure a SCIF is accessible

CASE NO. 23-80101-CR-CANNON-2

during business hours to the defense, and at other times upon reasonable request as approved by the CISO in consultation with the Court and United States Marshals Service. The SCIF shall contain a working area for the defense and will be outfitted with any secure office equipment requested by the defense that is reasonable and necessary to the preparation of the Defendant's case.   The CISO, in consultation with counsel for the Defendant, shall establish procedures to assure that the SCIF may be maintained and operated in the most efficient manner consistent with the protection of classified information and in compliance with security requirements.   No classified documents, material, recordings, or other information may be removed from the SCIF unless so authorized by the CISO.   Should the CISO overhear any defense conversations or see any defense work product (excluding filings intended to be provided to the Court and the government), the CISO shall not reveal to the government (or anyone else) the content of any conversations they may overhear among the defense, the nature of the documents being reviewed, or the work being generated.   The presence of the CISO or any of his designees shall not operate to waive, limit, or otherwise render inapplicable, the attorney-client privilege.

22.   *Filings with the Court*. Any pleading or other document filed by the defense that Defendant's counsel knows or reasonably should know contains classified information as defined in paragraph 3(c) shall be filed as follows:

    a.   Pleadings and other documents shall be filed under seal with the CISO or an appropriately cleared designee and shall be marked, "Filed in Camera and Under Seal with the Classified Information Security Officer."   The time of physical submission to the CISO or an appropriately cleared designee shall be

10

CASE NO. 23-80101-CR-CANNON-2

considered the date and time of filing and should occur no later than 5:00 p.m.

Within a reasonable time after making a submission to the CISO or an

appropriately cleared designee, the defense shall file on the public record in the

CM/ECF system a "Notice of Filing" notifying the Court that the submission

was made to the CISO or an appropriately cleared designee.   The notice should

contain only the case caption and an unclassified title of the filing.

b.  The CISO or an appropriately cleared designee shall immediately deliver under

seal to the Court and counsel for the government any pleading or document to

be filed by the defense that contains classified information, unless the pleading

or document is an *ex parte* and in camera filing.   The CISO shall promptly

consult with representatives of the appropriate agencies to determine whether

the pleading or document contains classified information.   If it is determined

that the pleading or document contains classified information, the CISO shall

ensure that the pleading or document is marked with the appropriate

classification markings and that the pleading or document remains under seal.

23.  *Filing of Papers by the Government*.   Any pleading or other document filed by the

government that counsel for the government knows or reasonably should know contains

classified information as defined herein, shall be filed as follows:

a.  The document shall be filed under seal with the CISO or an appropriately

cleared designee and shall be marked, "Filed in Camera and Under Seal with

the Classified Information Security Officer."   The time of physical submission

to the CISO or an appropriately cleared designee shall be considered the date

and time of filing and should occur no later than 5:00 p.m.   Within a

11

CASE NO. 23-80101-CR-CANNON-2

reasonable time after making a submission to the CISO, counsel for the government shall file on the public record in the CM/ECF system a "Notice of Filing" notifying the Court that the submission was made to the CISO. The notice should contain only the case caption and an unclassified title of the filing.

b. The CISO shall immediately deliver under seal to the Court and counsel for the defense any pleading or document to be filed by the government that contains classified information, unless the pleading or document is an *ex parte* filing.

24. *Record and Maintenance of Classified Filings*. The CISO shall maintain a separate sealed record for those materials which are classified. The CISO shall be responsible for maintaining the secured records for purposes of later proceedings or appeal.

25. *The Classified Information Procedures Act*. Procedures for public disclosure of classified information in this case shall be those established by CIPA. The defense shall comply with the requirements of CIPA Section 5 prior to any disclosure of classified information during any proceeding in this case. As set forth in Section 5, the defense shall not disclose any information known or believed to be classified in connection with any proceeding until notice has been given to counsel for the government and until the government has been afforded a reasonable opportunity to seek a determination pursuant to the procedures set forth in CIPA Section 6, and until the time for the government to appeal any adverse determination under CIPA Section 7 has expired or any appeal under Section 7 by the government is decided. Any conferences with the Court involving classified information shall be conducted in camera in the interest of the national security, be attended only by persons granted access to classified information and a need-to-know, and the transcripts of such proceedings shall be maintained under seal.

CASE NO. 23-80101-CR-CANNON-2

26.   *Access to Classified Information*.   In the interest of the national security, representatives of the defense granted access to classified information shall have access to classified information only as follows:

a.   All classified information produced, possessed, created or maintained by the defense, including notes and any other work product, and all classified information disclosed by the United States government to the defense, shall be stored, maintained and used only in the SCIF established by the CISO, unless otherwise authorized by the CISO.

b.   *Special procedures for audio recordings*. Any classified audio recordings that the government discloses to the defense shall be maintained by the CISO in the SCIF.   Such recordings may only be reviewed on a stand-alone, non-networked computer or other device within the SCIF that does not have the capability to duplicate or transmit information.   The defense must use headphones to review such recordings, and the headphones must be wired and not have any wireless capability.

c.   The defense shall have free access to the classified information in the SCIF established by the CISO and shall be allowed to take notes and prepare documents with respect to those materials.

d.   The defense shall not copy or reproduce any classified information in any manner or form, except with the approval of the CISO and in accordance with the procedures established by the CISO for the operation of the SCIF.

e.   All documents prepared by the defense (including, without limitation, pleadings or other documents intended for filing with the Court) that do or may contain

CASE NO. 23-80101-CR-CANNON-2

classified information must be prepared in the SCIF on word processing equipment approved by the CISO.   All such documents and any associated materials (such as notes, drafts, copies, typewriter ribbons, magnetic recordings, exhibits, thumb drives, discs, CDs, DVDs exhibits, and electronic or digital copies) that may contain classified information shall be maintained in the SCIF unless and until the CISO determines those documents or associated materials are unclassified in their entirety, or if secure removal is authorized by the CISO.   None of these materials shall be disclosed to counsel for the government or any other party.

f.  The defense shall discuss classified information only within the SCIF or in an area authorized by the CISO.

g.  The defense shall not disclose, without prior approval of the Court, classified information to any person not named in this Order except to the Court, Court personnel, and government personnel identified by the CISO as having the appropriate clearances and the need-to-know.   Counsel for the government shall be given an opportunity to be heard in response to any defense request for disclosure to a person not identified in this Order.   Any person approved by this Court for access to classified information under this paragraph shall be required to obtain the appropriate security clearance and to comply with all the terms and conditions of the Order.   As set forth above, the defense shall not disclose classified information, even to an individual with the appropriate security clearance, without following the procedures referenced in this Order.

h.  The defense shall not discuss classified information over any standard

14

CASE NO. 23-80101-CR-CANNON-2

commercial telephone instrument or office intercommunication systems, including but not limited to the Internet and electronic mail, or in the presence of any person who has not been granted access to classified information by the Court.

i. Any documents written by the defense that do or may contain classified information shall be transcribed, recorded, typed, duplicated, copied, or otherwise prepared only by persons who have received an appropriate approval for access to classified information.

j. The government agrees to disclose to Defendant as classified information only "the unredacted version of the picture included in paragraph 32 of the Superseding Indictment and the document charged in Count 8" [ECF No. 85 pp. 13–14, 33; ECF No. 120 p. 7]. Any future disclosures of classified information to Defendant shall be governed by subsequent order.

27. Any unauthorized disclosure or mishandling of classified information may constitute violations of federal criminal law. In addition, any violation of the terms of this Order shall be brought immediately to the attention of the Court and may result in a charge of contempt of Court and possible referral for criminal prosecution. Any breach of this Order may also result in termination of an individual's access to classified information. Persons subject to this Order are advised that direct or indirect unauthorized disclosure, retention or handling of classified documents or information could cause serious damage, and in some cases exceptionally grave damage, to the national security of the United States, or may be used to the advantage of a foreign nation against the interests of the United States. The purpose of this Order is to ensure that those authorized to receive classified

15

CASE NO. 23-80101-CR-CANNON-2

information in connection with this case will never divulge that information to anyone not authorized to receive it.

28.   All classified documents and information to which the defense has access in this case are now and will remain the property of the United States.   Upon demand of the CISO, all persons shall return to the CISO all classified information in their possession obtained through discovery from the government in this case, or for which they are responsible because of access to classified information.   The notes, summaries, and other documents prepared by the defense that do or may contain classified information shall remain at all times in the custody of the CISO for the duration of the case.   At the conclusion of this case, including any appeals or ancillary proceedings thereto, all such notes, summaries, and other documents are to be destroyed by the CISO in the presence of counsel for the Defendant if they choose to be present.

29.   Nothing contained in this Order shall be construed as a waiver of any right of the Defendant.   No admission made by the Defendant or his counsel during pretrial conferences may be used against the Defendant unless it is in writing and signed by the Defendant.   *See* CIPA § 2.

30.   A copy of this Order shall be issued forthwith to counsel for the Defendant who shall be responsible for advising the Defendant and representatives of the defense of the contents of this Order.

SO ORDERED in Chambers at Fort Pierce, Florida, this 13th day of September 2023.

_____
**HON. AILEEN M. CANNON**
**UNITED STATES DISTRICT COURT JUDGE**

cc:   counsel of record

16

# Doc. 152

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO. 23-80101-CR-CANNON-3

**UNITED STATES OF AMERICA**,

   Plaintiff,

v.

**CARLOS DE OLIVEIRA**,

   Defendant.

_____/

### PROTECTIVE ORDER PERTAINING TO CLASSIFIED INFORMATION
### DISCLOSED TO DEFENSE COUNSEL FOR CARLOS DE OLIVEIRA

**THIS MATTER** comes before the Court upon the Government's Supplemental Motion for

Protective Order pursuant to Section 3 of the Classified Information Procedures Act, Pub. L. 96-

456, 94 Stat. 2025, 18 U.S.C. App. III § 3 (1980) ("CIPA § 3"), to prevent the unauthorized use,

disclosure, or dissemination of classified national security information  and documents that will be

reviewed by or made available to, or are otherwise in the possession of,  Defendant[1] and defense

counsel in this case.[2]   A sealed hearing was held on the Motion on September 12, 2023

[ECF No. 149].

Pursuant to the authority granted under Section 3 of CIPA, the Security Procedures

established pursuant to Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States for

the Protection of Classified Information (reprinted following CIPA § 9) (hereinafter the "Security

---

[1] For purposes of this Order, "Defendant" refers to Carlos De Oliveira.   As set forth below, the Government has not agreed at this time or otherwise been ordered to make any classified information available to Defendant.

[2] Nothing contained in this Order shall be construed as a waiver of any right of the Defendant.

CASE NO. 23-80101-CR-CANNON-3

Procedures"), Rules 16(d) and 57 of the Federal Rules of Criminal Procedure, the general supervisory powers of the Court; and, in order to protect the national security, the Government's Motion is **GRANTED** in accordance with this Order and as discussed during the hearing, and the following Protective Order is entered:[3]

1.   The Court finds that this case will involve information that has been classified in the interest of national security.  The storage, handling, and control of this information will require special security precautions mandated by statute, executive order, and regulation.[4]

2.   The purpose of this Protective Order ("Order") is to establish the procedures that must be followed by Defendant, defense counsel, the parties, and all other individuals who receive access to classified information or documents in connection with this case.  The procedures set forth in this Order shall apply to all pre-trial, trial, post-trial, and appellate matters concerning classified information in this case and may be modified from time to time by further order of the Court acting under this Court's inherent supervisory authority to ensure a fair and expeditious trial.  The limitations on disclosure of classified information set forth in this Order are binding on Defendant and his counsel, and violations may result in criminal and/or civil penalties.  The government and the defense may also move for modification of this Order at any time for good cause shown.

3.   <u>Definitions</u>.  The following definitions shall apply to this Order:

   a.  "Government" or "the government" refers collectively to the Special Counsel

---

[3] The Court understands that the government may move for supplemental protective orders pursuant to CIPA and the Federal Rules of Criminal Procedure.

[4] Any individual to whom classified information is disclosed pursuant to this Order shall not disclose such information to another individual unless the U.S. agency that originated that classified information has validated that the proposed recipient possesses an appropriate security clearance and need-to-know.

CASE NO. 23-80101-CR-CANNON-3

for the United States Department of Justice and its prosecutors and support staff, as well as any law enforcement or intelligence community employees assisting in the prosecution of this matter.

b.  "Defense" or "defense team" refers collectively to the Defendant's counsel and any support staff assisting the Defendant's counsel authorized to receive classified information pursuant to this Order.[5]

c.  "Classified information" shall include:

    i.  Any document, recording, or information that has been classified by any Executive Branch agency in the interests of national security pursuant to Executive Order 13526 (or successor order), as amended, or its predecessor or successor orders, or under the Atomic Energy Act (AEA), 42 U.S.C. § 2011, *et seq.*, as "CONFIDENTIAL," "SECRET," "TOP SECRET," or "FORMERLY RESTRICTED DATA," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION" ("SCI");

    ii.  Any document, recording, or information now or formerly in the possession of a private party that (A) has been classified by the United States Government as set forth above, and/or (B) has been derived from information that is classified by the United States Government;

---

[5] This Protective Order will apply to all defense counsel, both current and future, who possess the requisite clearance.   Only defense counsel who possess the requisite clearance will have access to classified information.

3

iii. Verbal or other unwritten or unrecorded information known to the Defendant or the defense team that has been classified by the United States Government as set forth above;

iv. Any information, regardless of its origin, that the defense knows or reasonably should know contains classified information, including information acquired or conveyed orally;

v. Any document, recording, or information as to which the defense has been notified orally or in writing contains classified information; and

vi. Any document, recording, or information that is classified, as set forth in (i), that has been approved by the United States government for limited authorized disclosure to defense counsel in criminal case *United States v. Trump et al.*, 23-80101-CR-CANNON, pursuant to the restrictions set forth herein.[6]

d. "Document," "materials," and "information" shall include, but are not limited to:

i. All written, printed, visual, digital, electronic, or audible matter of any kind, formal or informal, including originals, conforming copies, and

---

[6] In the event that the government's discovery obligations require disclosure of government information that is not marked as classified but has been deemed to be classified, the government will inform defense counsel specifically what the information is and, if known, the level of classification.   If the government is disclosing information that it has reason to believe is classified but the classification review for that information has not been completed, the government will inform the defense that information must be handled as classified, consistent with this Order, unless and until the government confirms that it is not classified.   If the Court or a party to the case seeks to use or disclose information that has not been formally reviewed for classification, the Court and the parties shall address such use or disclosure pursuant to CIPA.

CASE NO. 23-80101-CR-CANNON-3

non-conforming copies (whether different from the original by reason of notation made on such copies or otherwise), as well as metadata;

ii. Notes (handwritten, oral, or electronic); papers; letters; correspondence; memoranda; reports; summaries; photographs; maps; charts; graphs; inter-office communications; notations of any sort concerning conversations, meetings or other communications; bulletins; teletypes; telecopies; telegrams; telexes; transcripts; cables; facsimiles; invoices; worksheets and drafts; microfiche; microfilm; videotapes; sound recordings of any kind; motion pictures; electronic, mechanical or electric records of any kind, including but not limited to tapes, cassettes, disks, recordings, films, typewriter ribbons, word processing or other computer tapes, disks, or thumb drives and all manner of electronic data processing storage; and alterations, modifications, changes and amendments of any kind to the foregoing; and

iii. Information obtained orally.

e. "Access to classified information" shall mean having access to, reviewing, reading, learning, or otherwise coming to know in any manner classified information.

f. "SCIF" shall refer to a sensitive compartmented information facility approved by a designated CISO for the storage, handling, and control of classified information.

**Classified Information**

4. All classified documents or material and the information contained therein shall remain

5

CASE NO. 23-80101-CR-CANNON-3

classified unless the documents or material bear a clear indication that they have been declassified by the agency or department that is the originating agency of the document, material, or information contained therein.

5. All access to classified information shall conform to this Order.

6. The Defendant may disclose classified information to the defense as necessary for the preparation of his defense. Any classified information provided to the defense by the government or the Defendant is to be used solely by the defense and solely for the purpose of preparing the defense.

7. The defense may not disclose or cause to be disclosed in connection with this case any information known or reasonably believed to be classified information except as otherwise provided herein. If the defense has any question regarding the disclosure of classified information, they shall consult with the CISO.

8. The government has not agreed to or otherwise been ordered to disclose any classified information to Defendant at this time.

9. The defense shall not disclose classified information to any person, except to the Court, government personnel who hold appropriate security clearances and have been determined to have a need-to-know that information, and those specifically authorized to access that information pursuant to this Order.

10. Information that is classified that also appears in the public domain is not thereby automatically declassified unless it appears in the public domain as the result of an official statement by a U.S. Government Executive Branch official who is authorized to declassify the information. Individuals who, by virtue of this Order or any other court order, are granted access to classified information may not confirm or deny classified information

6

CASE NO. 23-80101-CR-CANNON-3

that appears in the public domain.   Prior to any attempt by the defense to have such information confirmed or denied in any public proceeding in this case, the defense must comply with the notification requirements of Section 5 of CIPA and all provisions of this Order.

11.   If classified information enters the public domain, the defense and the Defendant are precluded from making private or public statements where the statements would reveal personal knowledge from non-public sources regarding the classified status of the information or would disclose that the defense had personal access to classified information confirming, contradicting, or otherwise relating to the information already in the public domain.   If there is any question whether information is classified, the defense must handle that information as though it is classified unless counsel for the government or the CISO confirms that it is not classified.

**Security Procedures**

12.   In accordance with the provisions of CIPA and the Revised Security Procedures, the Court has designated a CISO and alternate CISOs for this case [ECF No. 40], for the purpose of providing security arrangements necessary to protect against unauthorized disclosure of any classified information that has been made available to the Defendant and the defense in connection with this case.   The defense shall seek guidance from the CISO with regard to appropriate storage, handling, transmittal, and use of classified information.

13.   The government has advised the Court that certain attorneys working on this case for the Office of the Special Counsel, including Counselor to the Special Counsel Jay I. Bratt, Assistant Special Counsels Julie A. Edelstein, David V. Harbach, II, Karen E. Gilbert, Michael Thakur, John Pellettieri, and their supervisors, have the requisite security

7

CASE NO. 23-80101-CR-CANNON-3

clearances to have access to the classified information that counsel for the government intend to use, review, or disclose in this case.

14.    The Court has been advised, through the CISO, that Defendant's counsel of record, possess at least interim security clearances, permitting them to have access to classified information designated as "CONFIDENTIAL," "SECRET," or "TOP SECRET," including (upon read-ins) the following SCI compartments: SI, SI-G, and TK, for which they have a need-to-know.[7]

15.    *Protection of Classified Information.* The Court finds that, to protect the classified information involved in this case, to the extent that counsel have the requisite security clearances and a "need-to-know" the classified information, they shall be given authorized access to classified national security documents and information as required by the government's discovery obligations and subject to the terms of this Protective Order, the requirements of CIPA, and any other Orders of this Court.

16.    The Defendant may have a continuing contractual obligation to the government not to disclose to any unauthorized person classified information known to them or in their possession.   The government is entitled to enforce that agreement to maintain the confidentiality of classified information.   The defense and the Defendant are subject to this Court's authority, contempt powers, and other authorities, and shall fully comply with any nondisclosure agreements he has signed, this Order, and applicable statutes.

17.    No court personnel required by this Court for its assistance shall have access to classified information involved in this case unless that person shall first have received the necessary

---

[7] Once counsel receive final clearances, they will promptly receive additional read-ins, at which time they will also be able to access additional SCI compartments for which they have a need-to-know.

CASE NO. 23-80101-CR-CANNON-3

security clearance as determined by the CISO.

18.     Any additional persons whose assistance the defense reasonably requires may have access to classified information in this case only if they are granted an appropriate security clearance through the CISO, obtain approval from this Court with prior notice of the identity of the additional persons to the U.S. government, and satisfy the other requirements described in this Order for access to classified information.

19.     An individual with a security clearance and a need-to-know as determined by any government entity is not automatically authorized to disclose any classified information to any other individual, even if that other individual also has a security clearance.   Rather, any individual who receives classified information may only disclose that information to an individual who has been determined by the CISO, in consultation with the appropriate government entity, to have both the required security clearance and a need-to-know the information.

20.     Defendant's counsel and the Defendant agree they are subject to the terms of this Protective Order and any other Orders of this Court.   The substitution, departure, or removal for any reason from this case of any counsel for the Defendant or any other member of the defense, shall not release that individual from the provisions of this Order.

21.     *Secure Area of Review*. The CISO shall establish procedures to assure a SCIF is accessible during business hours to the defense, and at other times upon reasonable request as approved by the CISO in consultation with the Court and United States Marshals Service. The SCIF shall contain a working area for the defense and will be outfitted with any secure office equipment requested by the defense that is reasonable and necessary to the preparation of the Defendant's case.   The CISO, in consultation with counsel for the

9

Defendant, shall establish procedures to assure that the SCIF may be maintained and operated in the most efficient manner consistent with the protection of classified information and in compliance with security requirements. No classified documents, material, recordings, or other information may be removed from the SCIF unless so authorized by the CISO. Should the CISO overhear any defense conversations or see any defense work product (excluding filings intended to be provided to the Court and the government), the CISO shall not reveal to the government (or anyone else) the content of any conversations they may overhear among the defense, the nature of the documents being reviewed, or the work being generated. The presence of the CISO or any of his designees shall not operate to waive, limit, or otherwise render inapplicable, the attorney-client privilege.

22. *Filings with the Court.* Any pleading or other document filed by the defense that Defendant's counsel knows or reasonably should know contains classified information as defined in paragraph 3(c) shall be filed as follows:

   a. Pleadings and other documents shall be filed under seal with the CISO or an appropriately cleared designee and shall be marked, "Filed in Camera and Under Seal with the Classified Information Security Officer." The time of physical submission to the CISO or an appropriately cleared designee shall be considered the date and time of filing and should occur no later than 5:00 p.m. Within a reasonable time after making a submission to the CISO or an appropriately cleared designee, the defense shall file on the public record in the CM/ECF system a "Notice of Filing" notifying the Court that the submission was made to the CISO or an appropriately cleared designee. The notice should

10

CASE NO. 23-80101-CR-CANNON-3

contain only the case caption and an unclassified title of the filing.

b. The CISO or an appropriately cleared designee shall immediately deliver under seal to the Court and counsel for the government any pleading or document to be filed by the defense that contains classified information, unless the pleading or document is an *ex parte* and in camera filing.   The CISO shall promptly consult with representatives of the appropriate agencies to determine whether the pleading or document contains classified information.   If it is determined that the pleading or document contains classified information, the CISO shall ensure that the pleading or document is marked with the appropriate classification markings and that the pleading or document remains under seal.

23.   *Filing of Papers by the Government*.   Any pleading or other document filed by the government that counsel for the government knows or reasonably should know contains classified information as defined herein, shall be filed as follows:

a. The document shall be filed under seal with the CISO or an appropriately cleared designee and shall be marked, "Filed in Camera and Under Seal with the Classified Information Security Officer."   The time of physical submission to the CISO or an appropriately cleared designee shall be considered the date and time of filing and should occur no later than 5:00 p.m.   Within a reasonable time after making a submission to the CISO, counsel for the government shall file on the public record in the CM/ECF system a "Notice of Filing" notifying the Court that the submission was made to the CISO.   The notice should contain only the case caption and an unclassified title of the filing.

b. The CISO shall immediately deliver under seal to the Court and counsel for the

11

CASE NO. 23-80101-CR-CANNON-3

defense any pleading or document to be filed by the government that contains classified information, unless the pleading or document is an *ex parte* filing.

24. *Record and Maintenance of Classified Filings*. The CISO shall maintain a separate sealed record for those materials which are classified. The CISO shall be responsible for maintaining the secured records for purposes of later proceedings or appeal.

25. *The Classified Information Procedures Act*. Procedures for public disclosure of classified information in this case shall be those established by CIPA. The defense shall comply with the requirements of CIPA Section 5 prior to any disclosure of classified information during any proceeding in this case. As set forth in Section 5, the defense shall not disclose any information known or believed to be classified in connection with any proceeding until notice has been given to counsel for the government and until the government has been afforded a reasonable opportunity to seek a determination pursuant to the procedures set forth in CIPA Section 6, and until the time for the government to appeal any adverse determination under CIPA Section 7 has expired or any appeal under Section 7 by the government is decided. Any conferences with the Court involving classified information shall be conducted in camera in the interest of the national security, be attended only by persons granted access to classified information and a need-to-know, and the transcripts of such proceedings shall be maintained under seal.

26. *Access to Classified Information*. In the interest of the national security, representatives of the defense granted access to classified information shall have access to classified information only as follows:

   a. All classified information produced, possessed, created or maintained by the defense, including notes and any other work product, and all classified

CASE NO. 23-80101-CR-CANNON-3

information disclosed by the United States government to the defense, shall be stored, maintained and used only in the SCIF established by the CISO, unless otherwise authorized by the CISO.

b. *Special procedures for audio recordings.* Any classified audio recordings that the government discloses to the defense shall be maintained by the CISO in the SCIF. Such recordings may only be reviewed on a stand-alone, non-networked computer or other device within the SCIF that does not have the capability to duplicate or transmit information. The defense must use headphones to review such recordings, and the headphones must be wired and not have any wireless capability.

c. The defense shall have free access to the classified information in the SCIF established by the CISO and shall be allowed to take notes and prepare documents with respect to those materials.

d. The defense shall not copy or reproduce any classified information in any manner or form, except with the approval of the CISO and in accordance with the procedures established by the CISO for the operation of the SCIF.

e. All documents prepared by the defense (including, without limitation, pleadings or other documents intended for filing with the Court) that do or may contain classified information must be prepared in the SCIF on word processing equipment approved by the CISO. All such documents and any associated materials (such as notes, drafts, copies, typewriter ribbons, magnetic recordings, exhibits, thumb drives, discs, CDs, DVDs exhibits, and electronic or digital copies) that may contain classified information shall be maintained in

13

the SCIF unless and until the CISO determines those documents or associated materials are unclassified in their entirety, or if secure removal is authorized by the CISO. None of these materials shall be disclosed to counsel for the government or any other party.

f. The defense shall discuss classified information only within the SCIF or in an area authorized by the CISO.

g. The defense shall not disclose, without prior approval of the Court, classified information to any person not named in this Order except to the Court, Court personnel, and government personnel identified by the CISO as having the appropriate clearances and the need-to-know. Counsel for the government shall be given an opportunity to be heard in response to any defense request for disclosure to a person not identified in this Order. Any person approved by this Court for access to classified information under this paragraph shall be required to obtain the appropriate security clearance and to comply with all the terms and conditions of the Order. As set forth above, the defense shall not disclose classified information, even to an individual with the appropriate security clearance, without following the procedures referenced in this Order.

h. The defense shall not discuss classified information over any standard commercial telephone instrument or office intercommunication systems, including but not limited to the Internet and electronic mail, or in the presence of any person who has not been granted access to classified information by the Court.

i. Any documents written by the defense that do or may contain classified

14

information shall be transcribed, recorded, typed, duplicated, copied, or otherwise prepared only by persons who have received an appropriate approval for access to classified information.

j. Any future disclosures of classified information to Defendant shall be governed by subsequent order.

27. Any unauthorized disclosure or mishandling of classified information may constitute violations of federal criminal law.   In addition, any violation of the terms of this Order shall be brought immediately to the attention of the Court and may result in a charge of contempt of Court and possible referral for criminal prosecution.   Any breach of this Order may also result in termination of an individual's access to classified information. Persons subject to this Order are advised that direct or indirect unauthorized disclosure, retention or handling of classified documents or information could cause serious damage, and in some cases exceptionally grave damage, to the national security of the United States, or may be used to the advantage of a foreign nation against the interests of the United States.   The purpose of this Order is to ensure that those authorized to receive classified information in connection with this case will never divulge that information to anyone not authorized to receive it.

28. All classified documents and information to which the defense has access in this case are now and will remain the property of the United States.   Upon demand of the CISO, all persons shall return to the CISO all classified information in their possession obtained through discovery from the government in this case, or for which they are responsible because of access to classified information.   The notes, summaries, and other documents prepared by the defense that do or may contain classified information shall remain at all

15

times in the custody of the CISO for the duration of the case.   At the conclusion of this case, including any appeals or ancillary proceedings thereto, all such notes, summaries, and other documents are to be destroyed by the CISO in the presence of counsel for the Defendant if they choose to be present.

29.   Nothing contained in this Order shall be construed as a waiver of any right of the Defendant.   No admission made by the Defendant or his counsel during pretrial conferences may be used against the Defendant unless it is in writing and signed by the Defendant.   *See* CIPA § 2.

30.   A copy of this Order shall be issued forthwith to counsel for the Defendant who shall be responsible for advising the Defendant and representatives of the defense of the contents of this Order.

SO ORDERED in Chambers at Fort Pierce, Florida, this 13th day of September 2023.

_____

**HON. AILEEN M. CANNON**
**UNITED STATES DISTRICT COURT JUDGE**

cc:     counsel of record

16

# Doc. 685

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

UNITED STATES OF AMERICA,

vs.

WALTINE NAUTA, *et ano.*,

Defendants.

**Case No. 23-80101-CR
CANNON/REINHART**

<u>**DEFENDANTS' NOTICE REGARDING RECENT IMPROPER DOJ DISCLOSURES**</u>

The Defendants respectfully submit this Notice with respect to recent improper disclosures by the Attorney General and DOJ to the Eleventh Circuit and Congress. The disclosures were inconsistent with the still-pending Emergency Motion seeking to enjoin Jack Smith from transmitting the "Final Report" to the Attorney General, *see* ECF No. 679 at 15-19; ECF No. 681 at 4-5—which Smith wrongly mooted in bad-faith by ignoring this Court's authority and transmitting the Final Report despite the Emergency Motion—and the Court's January 7, 2025 Order, ECF No. 682.[1] We reserve the right to seek further relief, including a contempt finding and sanctions, in the event the Eleventh Circuit remands the proceedings to this Court.

## I.   Background

On January 6, 2025, Defendants Waltine Nauta and Carlos De Oliveira filed an Emergency Motion seeking to enjoin Smith from transmitting his Final Report to the Attorney General, and to enjoin the Attorney General from releasing the Final Report to the public. ECF No. 679. Defendants Nauta and De Oliveira filed a similar motion in the Eleventh Circuit.

---

[1] President Donald J. Trump joins this motion subject to the pending motion to intervene. *See* ECF No. 681 at 2-3.

1

At approximately 1:46 a.m. on January 7, 2025, the Special Counsel's Office filed a "Notice" suggesting that they planned to ignore the pending motions and transmit both Volumes of the Final Report to the Attorney General.  ECF No. 680.  Later that morning, President Trump filed a motion to intervene, or participate as *amicus curiae*, in order to support the pending arguments regarding both forms of injunctive relief sought by Nauta and De Oliveira.  ECF No. 681.

At approximately 11:38 a.m. on January 7, 2025, the Court entered an Order prohibiting "Attorney General Garland, the Department of Justice, Special Counsel Smith" and related parties under Federal Rule of Civil Procedure 65(d)(2) from, *inter alia*, "sharing with anyone outside the Department of Justice any *information* or conclusions in the Final Report or in drafts thereof." ECF No. 682 (emphasis added).  The Order "remains in effect until three days after resolution by the Eleventh Circuit of the Emergency Motion, unless the Eleventh Circuit orders otherwise." *Id.* As of this filing, there has been no such order from the Eleventh Circuit.  The Court's Order preserved the status quo but did not specifically address the aspect of the Defendants' still-pending motions seeking to enjoin transmission of the Final Report, which defense counsel understood to result from the rapid succession of late-night and early-morning filings.

On January 8, 2025, DOJ sent a private email to President Trump's counsel that included the following:

> When permitted to do so by the [District] Court, but no sooner than 10:00 a.m. on Friday, January 10, 2025, the Department intends to release to Congress and the public Volume One of the Report, consistent with 28 C.F.R. § 600.9(c) and in furtherance of the public interest in informing a co-equal branch and the public regarding this significant matter.

On the same day, DOJ filed a public brief reflecting the Attorney General's misguided findings, pursuant to the Special Counsel Regulations, that (1) the Final Report concerns a "significant matter," (2) releasing Volume One of the Final Report to Congress and the public is "in furtherance

of the public interest," and (3) releasing Volume Two of the Final Report to "congressional leadership" would "further the public interest" because the Attorney General believes Volume Two also relates to a "significant matter."  ECF No. 90 at 13-14, *United States v. Nauta and De Oliveira*, No. 24-12311 (11th Cir. Jan. 8, 2025).

Also on January 8, 2025, the Attorney General sent the letter attached as Exhibit A to certain congressional leadership.  The letter claimed, inaccurately, that Smith has "concluded" his investigation.  In fact, Smith has been forced to shut down his Office by Presidential immunity and the election results, and he handed off the entire pending case to the local U.S. Attorney's Office.  Ex. A at 1.  Similar to the Eleventh Circuit filing, the Attorney General committed to Congress that he would make disclosures regarding the Final Report based on his findings that the disclosures were in the "public interest" because they relate to a "significant matter." *Id.* at 2.

## II.    Discussion

"As a fundamental proposition, orders of the court "*must be obeyed . . . .*" *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1208 (11th Cir. 1985) (emphasis in original, cleaned up).  To proceed otherwise "would be to cripple orderly processes of trial and appeal on which enforcement of the laws depends." *Id.*  Thus, "[d]isobedience of a court order unequivocally merits punishment save in instances in which compliance would necessarily result in an irrevocable and permanent surrender of a constitutional right." *Id.*

DOJ's public disclosures regarding the supposed "significance" of the Final Report, the Attorney General's commitments to Congress prior to the resolution of the Emergency Motion, and the Attorney General's incorrect assessment of the public's interest in the discredited work of Smith and his team, are all inconsistent with the Court's January 7, 2025 Order.  Specifically, the Attorney General's assertions concern "information . . . in the Final Report."  ECF No. 682 at 2

¶ 1.  The findings that the Attorney General has thrust into the public sphere, and promised to Congress, concern issues that are disputed in these proceedings and in the Eleventh Circuit. Moreover, in improperly issuing those findings, the Attorney General invoked provisions of the Special Counsel Regulations whose applicability to private-citizen Smith is also disputed in these proceedings and in the Eleventh Circuit.

The disclosures at issue are plainly part of an effort to improperly pressure the judges addressing the pending motions through extrajudicial statements about unresolved issues at the heart of the parties' disputes.  As we noted on January 7, the Attorney General and DOJ have flouted this Court's authority and, consistent with Smith's prior actions, displayed improper disregard for a coordinate branch of the government.  *See* ECF No. 681 at 4, 6.  And, as we noted on January 7, each of the All Writs Act, the Court's ancillary jurisdiction, and the Court's supervisory power serves as a basis for addressing this conduct in order to deter future violations.

### III.    Conclusion

The Defendants respectfully submit that the disclosures by DOJ and the Attorney General to Congress, which reflect findings regarding information in the Final Report and disclosure commitments with respect to disputed issues, were improper.  We reserve the right to seek further relief, including a contempt finding and sanctions, in the event the Eleventh Circuit remands the proceedings to this Court.

Dated: January 9, 2025

Respectfully submitted,

*/s/ Todd Blanche / Emil Bove*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
Kendra L. Wharton (Fla. Bar No. 1048540)
k.wharton@whartonlawpllc.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*Counsel for President Donald J. Trump*

*/s/Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr.
BRAND WOODWARD LAW, LP
400 Fifth Street NW, Ste 350
Washington, DC 20001
(202) 996-7447 (telephone)
(202) 996-0113 (facsimile)
stanley@brandwoodwardlaw.com

*/s/ Richard C. Klugh*
Richard C. Klugh
Fla. Bar No. 109069
LAW OFFICE OF RICHARD C. KLUGH
40 N.W. 3rd Street, PH1
Miami, FL 33128
(305) 536-1191 (telephone)
(305) 536-2170 (facsimile)
rickklu@aol.com

*Counsel for Waltine Nauta*

*/s/ John S. Irving, IV*
John S. Irving, IV
E&W LAW, LLC
1455 Pennsylvania Ave NW
Ste 400
Washington, DC 20004
(301) 807-5670
john.irving@earthandwatergroup.com

*/s/ Larry Donald Murrell, Jr.*
Larry Donald Murrell, Jr.
Fla. Bar No. 326641
L.D. MURRELL, P.A.
400 Executive Center Drive, Ste 201
West Palm Beach, FL 33401
(561) 686-2700 (telephone)
(561) 686-4567 (facsimile)
ldmpa@bellsouth.net

*Counsel for Carlos De Oliveira*

**CERTIFICATE OF SERVICE**

I, Kendra L. Wharton, certify that on January 9, 2025, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF.

*/s/ Kendra L. Wharton*
Kendra L. Wharton

1

# EXHIBIT A



# Office of the Attorney General
## Washington, D. C. 20530

January 8, 2025

The Honorable Charles Grassley
Chairman, Committee on the Judiciary
United States Senate
Washington, D.C. 20510

The Honorable Jim Jordan
Chairman, Committee on the Judiciary
United States House of Representatives
Washington, D.C. 20515

The Honorable Dick Durbin
Ranking Member, Committee on the
Judiciary
United States Senate
Washington, D.C. 20510

The Honorable Jamie Raskin
Ranking Member, Committee on the
Judiciary
United States House of Representatives
Washington, D.C. 20515

Dear Chairman Grassley, Chairman Jordan, Ranking Member Durbin, and Ranking Member Raskin:

Pursuant to 28 C.F.R. § 600.9(a)(3), I write to inform you that Special Counsel John L. Smith has concluded his investigation. *See* Attorney General Order 5559-2022 (November 18, 2022).

In addition to this notification, the Special Counsel regulations provide that, when the Attorney General notifies Congress of the closure of a Special Counsel investigation, that notification is to include, consistent with applicable law, "a description and explanation of instances (if any) in which the Attorney General concluded that a proposed action by a Special Counsel was so inappropriate or unwarranted under established Departmental practices that it should not be pursued." 28 C.F.R. § 600.9(a)(3). There were no such instances during Special Counsel Smith's investigation.

On January 7, 2025, consistent with 28 C.F.R. § 600.8(c), Special Counsel Smith submitted to me a two-volume final report with appendices (Report), a transmittal letter, a letter from counsel for President Trump, and a letter from Special Counsel Smith in response. This is the only report Special Counsel Smith submitted to me. Pursuant to an Order issued on January 7, 2025, by Southern District of Florida United States District Judge Aileen M. Cannon, the Department of Justice is temporarily enjoined from sharing the Report outside the Department of Justice and may not share any information or conclusions in the Report. *United States v. Waltine Nauta and Carlos De Oliveira*, No. 23-80101-CR-Cannon, ECF No. 89 (S.D. Fla. Jan. 7, 2025).

As I have made clear regarding every Special Counsel who has serve since I took office, I am committed to making as much of the Special Counsel's report public as possible, consistent

with legal requirements and Department policy.  As stated in the Department's filings in the Eleventh Circuit Court of Appeals today, when permitted to do so by the court, I intend to provide to you and to the public Volume One of the Report.  I have determined that releasing these materials to you and the public at this time is consistent with 28 C.F.R. § 600.9(c) and other applicable law, and that this release is in furtherance of the public interest in informing a co-equal branch and the public regarding this significant matter.

Consistent with local court rules and Department policy, and to avoid any risk of prejudice to defendants Waltine Nauta and Carlos De Oliveira, whose criminal cases remain pending, I have determined, at the recommendation of the Special Counsel, that Volume Two should not be made public so long as those defendants' criminal proceedings are ongoing. Therefore, when permitted to do so by the court, I intend to make available to you for in camera review Volume Two of the Report upon your request and agreement not to release any information from Volume Two publicly.  I have determined that once those criminal proceedings have concluded, releasing Volume Two of the Report to you and to the public would also be in the public interest, consistent with law and Department policy.

Finally, consistent with 28 C.F.R. § 600.9(c), I will disclose this letter to the public after delivering it to you.

Sincerely,

Merrick B. Garland
Attorney General

2

# Doc. 687

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| | ) |
| WALTINE NAUTA, and | ) |
| CARLOS DE OLIVEIRA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**RESPONSE TO NOTICE**

Defendants' "Notice" alleging a violation of this Court's temporary injunction is incorrect. There is nothing about the government's email to counsel for President-elect Trump, the government's submission to the Eleventh Circuit, nor the Attorney General's letter to Congress that violates this Court's Order. Nor did the Special Counsel's transmission of the Final Report to the Attorney General in any way violate the Order. The Court's order prohibited (1) "releasing, sharing, or transmitting the Final Report or any drafts of such Report outside the Department of Justice" or (2) "otherwise releasing, distributing, conveying, or sharing with anyone outside the Department of Justice any information or conclusions in the Final Report or in drafts thereof." Order, ECF No. 682. The government has complied with those instructions in all respects.

To begin, Defendants are incorrect to suggest that the Special Counsel acted inappropriately in transmitting his Final Report to the Attorney General. *See* Notice, ECF No. 685, at 1-2. Nothing in the Court's Order prohibited the Special Counsel from doing

1

so. Rather, the Court's Order was explicit that the government was temporarily enjoined only from "releasing, sharing, or transmitting the Final Report or any drafts of such Report *outside the Department of Justice*." Order, ECF No. 682, at 2 (emphasis added). Providing the Final Report to the Attorney General is in no way inconsistent with the clear terms of the Order. *See also* 28 C.F.R. 600.8(c) (stating that "[a]t the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a confidential report" concerning his or her decisions).

Nor did any of the government's other statements identified by Defendants violate the Order in any way.  The relevant portion of the Order temporarily enjoined the government from sharing outside the Department "any information or conclusions *in the Final Report* or in drafts thereof." Order, ECF No. 682, at 2 (emphasis added).  The Department of Justice's description of the matter as "significant" and conclusion that disclosure, when permitted, "is in furtherance of the public interest," *see* ECF No. 685-1, at 3, did not reveal information in the Report.  Rather, those statements reflect the Department's characterization of the underlying investigations and prosecutions (which cannot reasonably be described as anything other than "significant") and the Department's determination of whether release of the Final Report "would be in the public interest," a determination that the Attorney General is expressly authorized to make under Department regulations. 28 C.F.R. § 600.9(c).  Moreover, the Attorney General expressly acknowledged this Court's injunction as a reason why neither the Final Report nor any of its contents could be transmitted at this time.  *See* ECF No. 685-1, at 1 ("Pursuant to an Order issued on January 7, 2025, by Southern District of Florida United States District Judge Aileen M. Cannon, the Department of Justice is temporarily enjoined from sharing

2

the Report outside the Department of Justice and may not share any information or conclusions in the Report. *United States v. Waltine Nauta and Carlos De Oliveira,* No. 23-80101-CR-Cannon, ECF No. 89 (S.D. Fla. Jan. 7, 2025")); *see also id.* at 2 (stating that the Department would not make public the Final Report until "permitted to do so by the court"). Indicating  that the Department would provide the Final Report "when permitted to do so by the Court" does not reveal any information in the Final Report and obviously does not violate the Court's order.

The government is in full compliance with the Court's Order.

Dated:  January 10, 2025

Respectfully submitted,

JACK SMITH
Special Counsel
New York Bar No. 2678084

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General


_s/ Elizabeth J. Shapiro_
ELIZABETH J. SHAPIRO
D.C. Bar No. 418925
Special Bar ID #A5502352
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 514-5302 / Fax: (202) 616-8460
E-mail: elizabeth.shapiro@usdoj.gov

3

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 9, 2025, I electronically filed the foregoing paper

with the Clerk of the Court using the ECF system, which sends notice to all counsel of

record.

*/s/ Elizabeth J. Shapiro*
Elizabeth J. Shapiro

# Doc. 712

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **Case No. 23-cr-80101-CANNON** |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| WALTINE NAUTA, and | ) | |
| CARLOS DE OLIVEIRA, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO PRECLUDE RELEASE OF VOLUME TWO

| | |
|---|---|
| Stanley E. Woodward, Jr. | John S. Irving, IV |
| BRAND WOODWARD LAW, LP | E&W LAW, LLC |
| | |
| Richard C. Klugh | Larry Donald Murrell, Jr. |
| KLUGH WILSON, LLC | L.D. MURRELL, P.A. |
| | |
| *Counsel for Defendant* | *Counsel for Defendant* |
| *Waltine Nauta* | *Carlos De Oliveira* |

The release of Volume Two of the Final Report will create irreparable harm to the defendants in this pending criminal matter—a matter the government is welcome to dismiss if its priorities are to provide the public information about its effort to prosecute President Trump and these defendants.  The unenforceable disclosure conditions proposed by the government fail to alleviate the direct, pervasive threat of prejudice and more significantly will leave this Court without recourse should confidential information, or the reactions to or depictions of that information by the would-be designated recipients (including partisan figures who have supported the prosecutive endeavor) enter the public domain.  The harm will be of an irreparable, ongoing nature, and tempering the prejudice will be functionally impossible, due to both separation of powers principles and the uniquely high-profile nature of the case.

This Court has the authority to control the flow of information relating to its own criminal trials.  The government cites no urgency for why the Report must be released now, while the case is still pending.  And worse yet, the government declares for the first time that this Court does not have authority to bind the Justice Department in relation to a pending criminal matter initiated in the Department's name, by an unauthorized Special Counsel.  The government's claim is a remarkable assertion that calls into question the validity of the previously entered protective orders, to which the government had no prior objection throughout the case.  The government cannot in good faith suggest that this Court may only bind defense speech and disclosure related to the trial, but may not bind the Justice Department.  The government used its investigative and law enforcement power to obtain confidential information for use in a federal criminal proceeding, including federal grand jury authority to bring the indictment in this Court.  The government cannot now turn around and say that it is wholly insulated from court intervention when it attempts to use that information for political immediacy rather than prosecutorial purposes. As with so many aspects of this case, the government complains of problems of its own making.

1

The government concedes that the public release of Volume II would be unfairly prejudicial to the two pending codefendants and instead attempts to create a work-around—by referring the pending matter to the U.S. Attorney's Office to claim that the Special Counsel's investigation has "concluded"; and by arguing to this Court that its proposed conditions adequately insulate against leaks. But the government's proposals are insufficient: Where partisan political advantage is at stake, leaking—even subject to whatever congressional oversight that may occur—still results.

I.      **Even limited *in camera* review of Volume Two is highly inappropriate here.**

The government relies on civil case law to suggest that defendants are not entitled to an injunction (or, effectively, a protective order precluding disclosure beyond that provided for in this Court's protective orders). In so doing, the government misses the mark: "To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 378 (1979). "And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary." *Id*. The Supreme Court in *Gannett* also noted the specific concerns about release of prejudicial information *at the pretrial stage*, where publicity can "pose[ ] special risks of unfairness," because it can "influence public opinion against a defendant and inform potential jurors of inculpatory information wholly inadmissible at the actual trial." *Id*.

The dangers associated with pretrial publicity are "particularly acute" because it is "difficult to measure with any degree of certainty the effects of such publicity on the fairness of the trial." *Id*. "After the commencement of the trial itself, inadmissible prejudicial information can be kept from a jury by a variety of means," but when "such information is publicized during a pretrial proceeding, however, it may never be altogether kept from potential jurors." *Id*. at 378-79. This Court acts well within its authority to limit the flow of information to "insure that the

2

fairness of a trial will not be jeopardized by the dissemination of such information throughout the community before the trial itself has even begun." *Id*. at 379.

Release of a report will obviously compromise the defendants' fundamental and constitutionally-protected rights to a fair trial.  The government argues that because this Court dismissed the prosecution, "whether it will ever proceed is uncertain."  DE:703 at 2.  The government cannot speak out of both sides of its mouth in this fashion.  On the one hand, it has devoted substantial time and energy to arguing that this Court's dismissal order was wrong, and still to this day actively pursues that argument in the Eleventh Circuit.  It has not withdrawn its appeal of the dismissal order.  Indeed, the government's every action—including, notably, Jack Smith's preparing the Final Report and continuing to work on the case after he was disqualified— has indicated that it does not take this Court's dismissal order seriously.  Only now for the first time does the government reverse course and suggest that it views the dismissal order as a correct statement of the law that will be upheld by the Eleventh Circuit.  The government switches course here only for the purposes of evading the restrictions it knows this Court must impose in a pending criminal prosecution, especially one as highly publicized as this one.

The government cites to *Trump v. Mazars USA, LLP*, 591 U.S. 848, 862-63 (2020), for the proposition that providing such information to Congress facilitates that branch's ability to "legislate wisely [or] effectively."  DE:703 at 3.  The *Mazars* case does not mandate release of the Report here for several reasons.  First, the Supreme Court made that comment in the *civil subpoena* context, not in the criminal law context, and even there noted that congressional power was limited. Civil subpoenas must "serve a 'valid legislative purpose'" and "concern a subject on which legislation could be had."  591 U.S. at 863.  The government oddly asserts that Congress has a "particularized legislative interest in information about Special Counsel investigations, in order to consider possible legislative reforms regarding the use of special counsels."  DE:703 at 3n.2.  It is

absurd to suggest that release of Volume Two of the Report—bearing on a still-pending criminal matter—is necessary to allow Congress to "consider possible legislative reforms regarding the use of special counsels." Congress can of course examine ways to lawfully appoint special counsels, as it has since the 1978 Ethics in Government [Independent Counsel] Act. and it does not need Volume Two to do that. In suggesting that release of Volume Two is necessary to allow Congress to reform the use of special counsels, the government acknowledges what the defense has asserted all along: that information in the Report and reactions to the Report, if shared with the four members of Congress proposed by the government, will inevitably be disclosed to other members of Congress and to the public more broadly.

Second, and more importantly, the Supreme Court in *Mazars* explicitly stated that congressional powers in this regard are limited; significantly, "Congress may not issue a subpoena for the purpose of 'law enforcement,' because 'those powers are assigned under our Constitution to the Executive and the Judiciary.'" 591 U.S. at 863. "Congress may not use subpoenas to 'try' someone 'before [a] committee for any crime or wrongdoing.'" *Id*. "Congress has no 'general' power to inquire into private affairs and compel disclosures,'" and it certainly has no power to demand access to confidential and grand jury information in a pending criminal case. "[T]here is no congressional power to expose for the sake of exposure," and "[in]vestigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible." *Id*. (citing *Watkins v. United States*, 354 U.S. 178, 200, 187 (1957)). These principles apply with full force to this dispute.

The government fundamentally misunderstands separation-of-powers principles. It cites to Article II, Section 3 of the Constitution for the principle that the Court has no authority to bind the Executive Branch's disclosure of confidential pretrial information but notably does not cite a constitutional provision that permits the Executive Branch to override the Court in this way—

4

because no such clause exists in our Constitution.  The government can easily separate itself from the powers of this Court—powers that it does not want to acknowledge exist—by dismissing its appeal of this Court's order.  What the government cannot do, however, is invoke the jurisdiction of this Court by filing an indictment and then complain about the Court's exercise of its own jurisdiction.

In proposing certain conditions under which it plans to share Volume II of the Report with Congress, the government misses several areas and does not quell the risks of prejudicial pretrial publicity.  The government says that "as a condition of viewing the report, [members of Congress] would also have to agree not to share information in Volume Two publicly."  But it does not prohibit them from sharing their reactions to, or characterizations of, Volume Two, which risks being even more prejudicial than disclosure of Volume Two.[1]  And it proposes no conditions whatsoever regarding sharing of the information in Volume Two with congressional staffers; or with other members of Congress, who would not be bound by the Department of Justice's proposed and unenforceable measures to protect confidentiality.  That is the biggest problem with the conditions proposed by the DOJ: There is absolutely no enforcement mechanism as to what Congress does with the information once it is in its possession.  Notably, members of Congress have immunity for assertions made on the floor in session.  The likelihood of a substantial leak increases where

---

[1] *See, e.g.* Mary Clare Jalonick*, In rowdy scene, House censures Rep. Adam Schiff over Trump-Russia investigations*, AP News (June 21, 2023), available at https://apnews.com/article/schiff-censure-house-republicans-russia-trump-318300df0f7b4f51c5b0ba5dd91edd23 (last accessed January 16, 2025). *See also* H. Res. 521, Congressional Record Vol. 169, No. 108 (June 21, 2023), available at https://www.congress.gov/congressional-record/volume-169/issue-108/house-section/article/H3013-1 (noting that Representative Adam Schiff was "afford[ed] access to sensitive intelligence unavailable to most members of Congress"; "abused this trust"; "perpetuated false allegations from the Steele Dossier"; "abus[ed] his privileged access to classified information" by "release[ing] a memo justifying the accuracy of the Foreign Intelligence Surveillance Act (FISA) warrant application on Trump associate Carter Page . . . provoking FISA Court presiding Judge Rosemary Collyer to state unequivocally that the Federal Bureau of Investigation 'misled the FISC'"; "publicly, falsely den[ied] that his staff communicated with a whistleblower"; and "misled the public by reading a false retelling of a phone call between President Trump and Ukranian President Volodymyr Zelensky."

partisan political advantage can best be achieved.  Once the information is leaked, there will be nothing that can be done to cure the prejudice.

The government's citation to the Mueller Report is also telling.  In the Mueller case—which again involved a civil subpoena, not a pending criminal case—the government agreed to redact from the Report "sensitive information related to ongoing cases and investigations."  *In re Application of the Committee on the Judiciary*, U.S. House of Representatives, No. 1:19-gj-00048-BAH, DE:37 at 3 (D.D.C. Oct. 8, 2019).  Here, Volume Two is comprised *entirely* of "sensitive information relating to ongoing cases and investigations."  That distinguishes it from FBI 302 forms from the *closed* Mueller investigation after the Department of Justice publicly released that Report.  If the Mueller case is instructive, as the government argues, then it counsels in favor of enjoinment, not of release.

Here, the government takes a much narrower view of confidentiality than that which it advanced in the Mueller matter.  The government suggests that it need only redact grand jury information from this Report, but the government's argument in this respect is a illusory: As defendants have previously noted, the government's proposed redactions with respect to grand jury information are insufficient, and the Report contains far more confidential and privileged information, including argument and information that would have been the subject of motions in limine and pursuant to Fed. R. Crim. P. 404(b), that is inappropriate for disclosure at this juncture of the case.  *See United States v. Herring*, 568 F.2d 1099, 1103 (11th Cir. 1978) (some cases involve "publicity so pervasive and expressly prejudicial that it occasions a violation of the fifth (or fourteenth) amendment's due process clause" and "[i]n such cases, the record of the trial proceedings, and the publicity attendant thereto, will lead an appellate court to the presumption that the question of a defendant's guilt was prejudiced by the publicity preceding or contemporaneous with that defendant's trial").

In *Herring*, the Eleventh Circuit reversed and remanded a defendant's conviction due to the effect of prejudicial publicity and noted that it "would have to speculate to conclude that undue prejudice did not exist." *Id*. at 1106. The government asks this Court to engage in the same rampant speculation here. Binding Circuit precedent makes clear, however, that "[i]n the interests of justice, we must give the defendant the benefit of the doubt." *Id*. The government's assertion— that "no reasonable person would expect that a limited and highly regulated *in camera* review by four members of Congress, contingent on their good faith commitment to confidentiality, would result in the dissemination of information contained in Volume Two by public communication or that a reasonable likelihood exists that such dissemination would interfere with a fair trial or otherwise prejudice the due administration of justice"—is at variance with this binding Circuit case law.

And, yet again, the government takes care in stating its positions to promise only that *information* in the Report will not be shared publicly, while remaining notably silent on the question whether impactful characterizations of the Report can be shared freely. Given the high-profile nature of the case, and the lack of any enforcement mechanism to ensure confidentiality, the benefit of the doubt must be given to the defendants. The government's arguments about "the options available to the Court to protect the Defendants from prejudice" when the inevitable leaks occur is another red herring, especially in light of its simultaneous position that the Court cannot bind it. The government cites "dismissal or reversal" as a possible remedy, but that argument simply highlights the stakes of disclosure and concedes that such disclosure is improper in the first instance. It suggests that the Department of Justice is focused more on politics than on just prosecution. If the Executive Branch's aims are political, and unrelated to enforcement of the law, it can dismiss the case on its own volition. The government's suggestion—that the Report should be released and then the case dismissed when inevitable prejudice occurs—makes a mockery of

7

this Court's proceedings and reflects an irresponsible approach to the expenditure of taxpayer dollars.

The government's separation of powers argument ignores established rules and procedures, required by the Constitution and as recognized by the Supreme Court, to prevent prejudice. The government does not cite a single case where it has been permitted to disclose to Congress confidential material in a *pending* criminal prosecution.

**II.      The relief requested by defendants is wholly consistent with the law.**

The government again tries to cabin the question of release into civil injunction case law, but the reality is that this is a criminal prosecution and the only relief requested is enforcement of this Court's previously entered protective orders and other well-established rules governing criminal trial confidentiality. Such orders do not, as the government contends, "intrude[ ] on the Attorney General's prerogative to manage the affairs of the Justice Department." DE:703 at 6. And to the extent that they do, criminal due process rights trump administrative affairs management. Rules regarding confidentiality make clear that information such as grand jury material can *only* be shared, even within the government, to further a law enforcement function. The government's own brief asserts that it wants to share the material with Congress for a political policy purpose—and the government's actions demonstrate that the true purpose is neither legislative nor law enforcement, but rather political.

The government again contradicts itself, in one breath portraying the Report as "prepared by subordinate officials within the Department," and in the next arguing that regulations allow the Attorney General to "make a report to Congress upon the conclusion of a Special Counsel's investigation." *Id*. The government's blatant attempt to exploit these loopholes should be swiftly rejected. Though Jack Smith has resigned, the investigation he initiated continues. It cannot be deemed complete for purposes of the federal regulation. And, in any event, the Final Report is a

legal nullity as it was prepared pursuant to a misuse of appropriated funds by a disqualified government actor.  It is not subject to the regulation.

The government incorrectly suggests that the Eleventh Circuit answered a merits question in this matter, even though it has not spoken as to any merits or other ruling by this Court in this matter.  The Eleventh Circuit's Jan. 9, 2025, order denying emergency relief in that court is best understood on jurisdictional grounds, and the government should be well aware of that reality; the Court of Appeals made clear that if the government had a problem with this Court's jurisdiction, it has the same appellate rights as any other party.  No clear manifestation could be made that the Eleventh Circuit entertained, much less resolved, the merits issue.  Instead, the court of appeals left to the government the opportunity to either appeal or to litigate the matter in this Court, the government having failed at that point even to file a response to the emergency motion for protective order.  If the government sincerely believed that the Eleventh Circuit had ruled on the merits question, it would also have deemed itself free to release the Report at that time.  The government knows full well that the Eleventh Circuit's order is not properly read as allowing release, and its efforts to portray it as otherwise reveal the weakness of its merits arguments.  The concerns about prejudicial publicity are far from "now-allayed," *cf. id.*, and there is ample basis—indeed, constitutional requirement—to enjoin release of Volume Two while this matter is ongoing.

The disqualification of the Special Counsel is eminently relevant to the question whether release is appropriate, and even more relevant to the question—raised by the government's own arguments—of whether the regulations should override the defendants' constitutional rights.  The government's brief either wholly ignores or fundamentally misunderstands the concept of fruit-of-the-poisonous-tree.  The DOJ cannot cite regulations that are necessarily predicated on constitutional authority to prepare a report and to argue for its release, while also claiming that the lawfulness of preparation is of no import because the Report was already transmitted to the

9

Attorney General.  The government spends several pages expounding the general authority of the Attorney General but it never explains why in its view that authority divests this Court of jurisdiction.  And that is because there is no defensible explanation to support the government's position.   The interests of the Fifth and Sixth Amendment in a criminal prosecution cannot be superseded by the very government seeking both to prosecute the defendants to prejudice them in derogation of the protections of fair trial rights.

**CONCLUSION**

Defendants respectfully request that this Court enjoin release of Volume II of the Final Report pending resolution of this case.

Dated: January 16, 2025                    Respectfully submitted:

/s/ Stanley E. Woodward, Jr.                     /s/ John S. Irving, IV
Stanley E. Woodward, Jr. (pro hac vice)          John S. Irving, IV (pro hac vice)
BRAND WOODWARD LAW, LP                           E&W LAW, LLC
400 Fifth Street NW, Ste 350                     1455 Pennsylvania Ave NW, Ste 400
Washington, DC 20001                             Washington, DC 20004
(202) 996-7447 (telephone)                       (301) 807-5670 (telephone)
stanley@brandwoodwardlaw.com                     john.irving@earthandwatergroup.com


/s/ Richard C. Klugh                             /s/ Larry Donald Murrell, Jr.
Richard C. Klugh                                 Larry Donald Murrell, Jr.
Fla. Bar No. 305294                              Fla. Bar No. 326641
KLUGH WILSON, LLC                                L.D. MURRELL, P.A.
40 N.W. 3rd Street, PH1                          400 Executive Center Drive, Ste 201
Miami, FL 33128                                  West Palm Beach, FL 33401
(305) 536-1191 (telephone)                       (561) 686-2700 (telephone)
klughlaw@gmail.com                               ldmpa@bellsouth.net

*Counsel for Defendant Waltine Nauta*            *Counsel for Defendant Carlos De Oliveira*

# Doc. 769

# ELEVENTH CIRCUIT TRANSCRIPT ORDER FORM
*Provide all required information and check the appropriate box(es)*

**PART I.**                                    **Transcript Information**

*Within 14 days of the filing of the* notice *of appeal, the appellant* **must** *complete Part I and file this form in* **the District Court**. See *FRAP 10(b)(1)*.

**Case Information:**

Short Case Style:_____ vs _____

District Court No.:_____ Date Notice of Appeal Filed:_____

Court of Appeals No. (if available): _____

**Transcript Order Information:**

☐ No hearing   ☐ No transcript is required for appeal purposes   ☐ All necessary transcript(s) already on file

☐ I am ordering a transcript of the following proceedings:

HEARING DATE(S)  /  JUDGE/MAGISTRATE  /  COURT REPORTER NAME(S)

☐ Pre-Trial Proceedings_____

☐ Trial_____

☐ Sentence_____

☐ Plea_____

☐ Other_____
1/17/2025

**Criminal Appeals:**

In a criminal appeal, if the appellant pleaded guilty and intends to raise an issue regarding the guilty plea, the record must include a transcript of the guilty plea colloquy, and if the appellant intends to raise an issue regarding the sentence, the record must include a transcript of the sentencing hearing. *If such transcripts are not ordered, you must check the appropriate box(es) below:*

Transcript of Guilty Plea Colloquy

☐      A transcript of the guilty plea colloquy is already on file.

☐      A transcript of a guilty plea colloquy is not being ordered and is not already on file, and I certify that no issue regarding a guilty plea will be raised in a merits brief in this appeal.

Transcript of Sentencing Hearing

☐      A transcript of the sentencing hearing is already on file.

☐      A transcript of the sentencing hearing is not being ordered and is not already on file, and I certify that no issue regarding sentencing will be raised in a merits brief in this appeal.

**Note: Counsel who seek leave to withdraw pursuant to** *Anders v. California*, **386 U.S. 738 (1967), must ensure the record contains transcripts of all relevant proceedings.** *See* **11th Cir. R. 27-1(a)(9).**

**Financial Arrangements:**

☐ I certify that I have made satisfactory arrangements with the Court Reporter(s) for paying the cost of the transcript(s).

☐ Criminal Justice Act: My completed AUTH-24 for government payment of transcripts has been uploaded in eVoucher and is ready for submission to the magistrate judge or district judge [if appointed by the district court] or to the circuit judge [if ordered by or appointed by the circuit court].

Ordering Counsel/Party:_____

Address:_____

E-mail:_____   Phone No.:_____

☐ **I certify that I have completed and filed Part I with the District Court, served all parties, AND sent a copy to the appropriate Court Reporter(s) if ordering a transcript.** *See* **FRAP 10(b)(1).**

Date:_____   Signature:_____

Attorney for:_____

## PART II.                    Court Reporter Acknowledgment

*Within 14 days of receipt, the Court Reporter* **must** *complete this section, file this form with the District Court,* ***AND send a copy of this form to the Court of Appeals*** *and all parties. The transcript must be filed within 30 days of the date satisfactory arrangements for paying the cost of the transcript were made unless the Court Reporter obtains an extension of time to file the transcript.*

Date Transcript Order received:_____

☐ Satisfactory arrangements for paying the cost of the transcript were made on:_____

☐ Satisfactory arrangements for paying the cost of the transcript have not been made.

No. of hearing days:_____   Hearing Date: 1/17/2025

Estimated no. of transcript pages:_____

Estimated filing date:_____

☐ **I certify that I have completed and filed Part II with the District Court AND sent a copy of this form to the Court of Appeals and all parties.**

Date:_____   Signature:_~~Smelton~~_____   Phone No.:_____

## PART III.                    Notification That Transcript Has Been Filed In District Court

*On the date the transcript is filed in the district court, the Court Reporter* **must** *complete this section, file this form with the District Court,* ***AND send a copy of this form to the Court of Appeals.***

x ☐ **I certify that the transcript has been completed and filed with the district court on (date)**: 1/12/2026 **AND that I have sent a copy of this form to the Court of Appeals.**

Date:___1/12/2026___   Signature:_~~Smelton~~_____

Rev. 12/24

## Certificate of Service

I, Kendra L. Wharton, counsel for Defendant-Appellee President Donald J. Trump and a member of the Bar of this Court, certify, that, on July 14, 2026, the attached Joint Supplemental Appendix was filed through the Court's electronic filing system. I certify that all participants in the case are registered users with the electronic filing system and that service will be accomplished by that system.

July 14, 2026

By: /s/ Kendra L. Wharton
Kendra L. Wharton

2