**No. 25-14507; 26-10674**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

United States of America,

*Plaintiff-Appellee*,

v.

Knight First Amendment Institute at Columbia University, American Oversight,

*Interested Parties-Appellants*

Donald J. Trump; Waltine Nauta; Carlos de Oliveira,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Florida

No. 9:23-cr-80101-AMC

---

**CONSOLIDATED REPLY BRIEF
OF APPELLANT AMERICAN OVERSIGHT**

---

Loree Stark
Elizabeth Haddix
American Oversight
1030 15th Street NW, B255
Washington, DC 20005
Tel: (304) 913-6114
loree.stark@americanoversight.org

Barbara R. Llanes
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Ste. 2600
Miami, FL 33131
Tel: (305) 728-0950
bllanes@gsgpa.com

*Attorneys for Interested Party-Appellant American Oversight*

**Certificate of Interested Persons and
Corporate Disclosure Statement**

Pursuant to Eleventh Circuit Rule 26.1-1, counsel of record for American Oversight certifies that the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the case or this appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

1.    Abdo, Alexander, counsel for Prospective Intervenor Knight Institute

2.    America First Legal Foundation, amicus curiae

3.    American Oversight, Appellant/Prospective Intervenor

4.    Balkin, Jack, amicus curiae

5.    Blanche, Todd, counsel for former Defendant/Appellee President Donald J. Trump

6.    Blumenthal, Senator Richard, amicus curiae

7.    Bove, Hon. Emil, counsel for former Defendant/Appellee President Donald J. Trump

8.    Buckner, David M., counsel for Prospective Intervenor Knight Institute

9.    Cai, Angela, counsel for amicus curiae Richard Blumenthal and Adam Schiff

C-1 of C-5

10.    Cannon, Hon. Aileen, Judge of the United States District Court, Southern District of Florida

11.    Clanton, Crystal, counsel for amicus curiae America First Legal Foundation

12.    De Oliveira, Carlos, former Defendant/Appellee

13.    Delgado, Jorge, counsel for the United States of America

14.    Doty, III, George Espy, counsel for the United States of America

15.    Eisen, Norman Larry, counsel for amicus curiae Richard Blumenthal and Adam Schiff

16.    Haddix, Elizabeth, counsel for Appellant/Prospective Intervenor American Oversight

17.    Irving, IV, John S., counsel for former Defendant/Appellee De Oliveira

18.    Jaffer, Jameel, counsel for Prospective Intervenor Knight Institute

19.    Jonas, Stephen Allen, counsel for amicus curiae Richard Blumenthal and Adam Schiff

20.    Kitrosser, Heidi, amicus curiae

21.    Klugh, Richard C., counsel for former Defendant/Appellee Waltine Nauta

22.    Kolb, Joshua Gabriel, counsel for amicus curiae Richard Blumenthal and Adam Schiff

23.    Koningisor, Christina, amicus curiae

24.    Knight First Amendment Institute, Prospective Intervenor

25.    Lakier, Genevieve, amicus curiae

26.    Langford, John, counsel for amicus curiae First Amendment Professors Jack Balkin, Heidi Kitrosser, Christina Koningisor, Genevieve Lakier, Greg Magarian, Burt Neuborne, Francesca Procaccini, and Sonja R. West

27.    Llanes, Barbara, counsel for Appellant/Prospective Intervenor American Oversight

28.    Magarian, Greg, amicus curiae

29.    Murrell, Jr., Larry Donald, counsel for former Defendant/Appellee De Oliveira

30.    Nauta, Waltine, former Defendant/Appellee

31.    Neuborne, Burt, amicus curiae

32.    Platkin, Matthew J., counsel for amicus curiae Richard Blumenthal and Adam Schiff

33.    Porter, Michael D., counsel for the United States of America

34.    Procaccini, Francesca, amicus curiae

35.    Kitrosser, Heidi, amicus curiae

36.    Reboso, Manolo, counsel for the United States of America

C-3 of C-5

37. Schachter, Adam, counsel for Appellant/Prospective Intervenor American Oversight in the below proceedings

38. Schiff, Senator Adam, amicus curiae

39. Smachetti, Emily, counsel for the United States of America

40. Stark, Loree, counsel for Appellant/Prospective Intervenor American Oversight

41. Trump, President Donald J., former Defendant/appellee

42. United States Department of Justice

43. Wharton, Kendra, counsel for former Defendant/appellee President Donald J. Trump

44. Sonja R. West, amicus curiae

45. Wilkens, Scott, counsel for Prospective Intervenor Knight Institute

46. Wilson, Jenny, counsel for former Defendant Waltine Nauta

*/s/ Loree Stark*
Loree Stark
Elizabeth Haddix
American Oversight
1030 15th Street NW, B255
Washington, DC 20005
Tel: (304) 913-6114
loree.stark@americanoversight.org

Barbara R. Llanes
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Ste. 2600
Miami, FL 33131

Tel: (305) 728-0950
bllanes@gsgpa.com

*Attorneys for Interested Party-Appellant American Oversight*

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement.................C-1

Table of Contents ...................................................................................................i

Table of Citations ................................................................................................ ii

INTRODUCTION..................................................................................................1

ARGUMENT .........................................................................................................3

    I.     De Novo is the Appropriate Standard of Review for the Issues of Law Before the Court...................................................................................3

    II.    This Court Should Reject Appellees' Overly Cramped View of Intervention Rights in Criminal Cases.....................................................5

    III.   This Court has Jurisdiction to Address Whether the District Court Erred in Precluding Release of Volume II and Has the Power to Reverse the Permanent Injunction .......................................................15

         A.    The District Court's Decisions on Intervention are Necessarily Intertwined with its Treatment of Volume II ...........................15

         B.    This Court has Jurisdiction to Consider the District Court's Order Permanently Enjoining the Release of Volume II..........16

         C.    Even if This Court Determines that the District Court Order Permanently Enjoining Release of Volume II is Not Properly Before the Court, it is Still Empowered to Reverse the Injunction.................................................................................19

CONCLUSION ....................................................................................................21

Certificate of Compliance ..................................................................................22

## Table of Citations

**Page(s)**

**Cases**

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
  925 F.3d 1205 (11th Cir. 2019)....................................................................3

*Am. Oversight v. U.S. Dep't of Just.*,
  No. 25-cv-383 (D.D.C. Feb. 10, 2025)...................................................11, 12

*Blickley v. Ford*,
  390 F. App'x 890 (11th Cir. 2010)................................................................3

*Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*,
  263 F.3d 1304 (11th Cir. 2001)....................................................................9

*CREW V. U.S. Dep't of Just.*,
  746 F.3d 1082 (D.C. Cir. 2014).................................................................7, 8

*Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush*,
  261 F.3d 1037 (11th Cir. 2001)..................................................................16

*Drazen v. Pinto*,
  106 F.4th 1302 (11th Cir. 2024).................................................................19

*Elec. Priv. Info. Ctr. v. United States Dep't of Just.*,
  18 F.4th 712 (D.C. Cir. 2021) .....................................................................1

*Gravel v. U.S.*,
  408 U.S. 606 (1972) ....................................................................................6

*Heritage v. United States Dep't of Just.*,
  No. 26-5235 (D.C. Cir. July 20, 2026)........................................................2, 7

*Hormel v. Helvering*,
  312 U.S. 552 (1941) ..................................................................................19

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ....................................................................................8

*Newman v. Graddick*,
   696 F.2d 796 (11th Cir. 1983)..................................................................9

*Nuclear Regulatory Commission v. Texas*,
   605 U.S. 665 (2025) ...........................................................................18, 19

*Richmond Newspapers, Inc. v. Virginia*,
   448 U.S. 555 (1980) ..................................................................................8

*Rose v. Sec'y, State of Georgia*,
   No. 22-12593, 2024 WL 1710472 (11th Cir. Apr. 16, 2024)...............................20

*Seminole Tribe of Fla. v Stranburg*,
   799 F.3d 1324 (11th Cir. 2015)...............................................................17

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ..................................................................................8

*Thomas v. Crosby*,
   371 F.3d 782 (11th Cir. 2004).................................................................19

*U.S. v. Alcatel-Lucent*,
   688 F.3d 1301 (11th Cir. 2012)............................................................13, 14

*U.S. v. Aref*,
   533 F.3d 72 (2d Cir. 2008) ....................................................................4, 6

*U.S. v. Baez-Alcaino*,
   718 F. Supp. 1503 (M.D. Fla. 1989) ........................................................6

*U.S. v.  Burney*,
   515 F.2d 1228 (5th Cir. 1975)...................................................................14

*U.S. v. Carmichael*,
   342 F. Supp. 2d 1070 (M.D. Ala. 2004)....................................................6

*U.S. v. Couch*,
   Crim. No. 15-0088-CG-B, 2017 WL 3016923 (S.D. Ala. July 14, 2017) .......7, 11

*U.S. v. Couch*,
  906 F.3d 1223 (11th Cir. 2018)......................................................3, 4, 10, 11, 12

*U.S. v. Hernandez*,
  124 F. Supp. 2d 698 (S.D. Fla. 2000).......................................................................6

*U.S. v. Hunter*,
  548 F.3d 1308 (10th Cir. 2008).............................................................................14

*U.S. v. Moussaoui*,
  483 F. 3d 220 (4th Cir. 2007).....................................................................7, 12, 13

*U.S. v. Noriega*,
  917 F.2d 1543 (11th Cir. 1990)..............................................................................20

*United States v. Ruan*,
  814 F. App'x 439 (11th Cir. 2020)....................................................................9, 10

*Weaver v. Fla. Power & Light Co.*,
  172 F.3d 771 (11th Cir. 1999)................................................................................16

**Statutes**

5 U.S.C. § 552 ...............................................................................................1, 8, 10

**Rules**

Fed. R. App. P. 32(a)(5) ............................................................................................22

Fed. R. Civ. P. 24 .................................................................................................4, 5

**Regulations**

28 C.F.R § 600.8(c) ...................................................................................................1

**Other Authorities**

Comm. Notes to Fed. R. App. P. 3, 2021 Amendments ........................................18

iv

**INTRODUCTION**

Appellant American Oversight first sought intervention in *United States v. Trump* more than seventeen months ago for the limited purpose of challenging the district court's injunction[1] barring the federal government from releasing former Special Counsel Jack Smith's report on the Department of Justice's investigations into allegations of President Trump's mishandling of a trove classified documents after leaving office following his first term (Volume II).

Volume II is a final report prepared by an executive branch agency of the United States government for the express purpose of summarizing a special counsel's decisions to prosecute—or not—alleged crimes under federal law. Volume II was prepared for use *outside of*, not *for*, the criminal proceedings previously at issue in the district court.[2] Special counsel reports have been considered public records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, with careful exemptions of material including grand jury information and certain law enforcement records as required by federal law.[3] Yet Volume II, a report of

---

[1] Case No. 23-cr-80101, Doc. 714.

[2] *See* 28 C.F.R § 600.8(c) ("At the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel.").

[3] *See, e.g.*, *Elec. Priv. Info. Ctr. v. United States Dep't of Just.*, 18 F.4th 712, 715-16 (D.C. Cir. 2021) (providing background on the public release of a redacted version of former Special Counsel Robert Mueller's investigative report following a lawsuit by the Electronic Privacy Information Center, including the unchallenged decision of the lower court to require redaction of grand jury information pursuant to FOIA

significant public interest and import, remains entirely hidden from the public by virtue of one district court's injunction enjoining the federal government from releasing any part of it pursuant to statutory requirements. Intervention in the criminal case is the only way American Oversight can vindicate its FOIA right of access to Volume II. If this Court accepts Appellees' alarming and unfounded arguments that American Oversight is barred from participating in the below proceedings because FOIA does not expressly authorize intervention in criminal cases, the impact will extend far beyond public access to Volume II: it will effectively allow any former federal defendant in a case of significant public interest to move the court overseeing its criminal proceedings to permanently enjoin the government from releasing information Congress intended to be available to the public. If the government does not oppose that motion, and the court grants it, that information, no matter its public import, will remain forever hidden because there is no avenue for a third party to challenge the order.

---

Exemption 3 and Criminal Rule of Procedure 6(e), and granting in part the lower court's decision to permit limited redactions based on law enforcement exemptions); *cf. Heritage v. United States Dep't of Just.*, No. 26-5235, slip op. at 2-4 (D.C. Cir. July 20, 2026) (affirming the district court's denial of former President Biden's request for an injunction—based on privacy concerns—to prevent disclosure of materials obtained by a special counsel into Biden's handling of classified materials, noting that redactions of sensitive material would protect Biden's privacy interests).

2

Congress passed FOIA in recognition of the value of an informed public in a functional democratic society and appropriately balanced the need for transparency against limited confidentiality interests through the statute's exemption scheme. Cutting off a third party's ability to advocate for proper application of FOIA to records of public importance directly contravenes congressional intent. This is not how a just system works.

This Court should reverse the district court's denials of American Oversight's motions for intervention. Moreover, this Court has the jurisdiction and the power to lift the district court's permanent injunction on the release of Volume II, and American Oversight respectfully requests it do so.

## ARGUMENT

### I. De Novo is the Appropriate Standard of Review for the Issues of Law Before the Court

Before this Court are issues of law, which are reviewed *de novo*. *See, e.g.*, *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019) (standing determinations are reviewed *de novo*); *U.S. v. Couch*, 906 F.3d 1223, 1227 (11th Cir. 2018) ("*Couch II*") (reviewing *de novo* question of prospective intervenor's standing to intervene in  criminal action, as well as the Court's jurisdiction to decide whether statute at issue conferred procedural right on prospective intervenor); *Blickley v. Ford*, 390 F. App'x 890, 892 (11th Cir. 2010)

3

(whether employee's speech was protected by First Amendment is reviewed *de novo*).

Specifically, the Court is asked to decide whether the lower court erred as a matter of law in ruling that, notwithstanding American Oversight's rights under FOIA, it cannot intervene in a criminal case to protect those rights. This Court's analysis in *Couch II*, discussed fully below, makes clear that this question is one of law and is reviewed *de novo*. *See Couch II*, 906 F.3d at 1226-28 (reviewing whether the alternate-remedy provision allows qui tam plaintiffs to intervene in criminal forfeiture proceedings). In contrast, the out-of-Circuit decision on which the government relies in urging the Court to apply an abuse of discretion standard involved no such question of law or statutory interpretation. *See* Gov't App. Br. at 18, Doc. 91 (Gov't App. Br.) (citing *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008). Instead, unlike the issues before this Court, that appeal involved a motion to intervene to assert a First Amendment right of access to criminal proceedings—a motion the Second Circuit noted was "common," and for which the court saw "no reason to apply" a different standard of review than the one applied in civil cases. *Id*.

Similarly, the Joint Consolidated Brief of Defendants-Appellees contends that Federal Rule of Civil Procedure 24(b) should control here. Joint Consol. App. Br. at 34, Doc. 93 (Joint App. Br.). But that rule cannot serve as a basis for a motion to

4

intervene in a criminal proceeding and played no role in either of American Oversight's motions in the underlying proceedings, Docs 717, 775,  or the lower court's order, *see* Doc. 760 at 7 ("Unlike the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure do not provide for a non-party to intervene in a criminal proceeding."). This Court is not being asked to determine whether the lower court erred in denying either "permissive intervention," Fed. R. Civ. P. 24(b), or "intervention as of right," Fed. R. Civ. P. 24(a). Rather, it is being asked to decide the question of law that has remained open in this Circuit since *Couch II*: whether intervention is proper when (1) a federal statute creates a substantive right belonging to the prospective intervenor and neither authorizes nor forecloses intervention; (2) that substantive right is ancillary to the criminal proceeding; and (3) there exists no alternative mechanism for the prospective intervenor to vindicate that right absent intervention. The Court should review that open question of law *de novo*.

## II. This Court Should Reject Appellees' Overly Cramped View of Intervention Rights in Criminal Cases

Contrary to Appellees' assertions, neither case law nor the Federal Rules of Criminal Procedure requires express statutory authorization for a third party to intervene in a criminal proceeding for the limited purpose of seeking a remedy for impairment to its federal statutory rights. The Federal Rules of Criminal Procedure are silent as to intervention, but courts have permitted it for just such purposes. Specifically, while intervention in criminal cases is "generally limited," it is

5

appropriate in "instances in which a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case." *Carmichael*, 342 F. Supp. 2d at1072; *see also Gravel v. U.S.*, 408 U.S. 606, 608–09 n.1 (1972) (noting that district court permitted Senator to intervene to move to quash grand jury subpoenas of witnesses where testimony would implicate his privilege under the Speech or Debate Clause of the U.S. Constitution); *U.S. v. Hernandez*, 124 F. Supp. 2d 698, 701 (S.D. Fla. 2000) (permitting press to intervene for access to court proceedings); *U.S. v. Baez-Alcaino*, 718 F. Supp. 1503, 1505, 1508 (M.D. Fla. 1989) (granting media limited intervention in criminal proceeding); *U.S. v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (holding that motion to intervene by a non-profit organization to assert right to access is procedurally proper despite the "Federal Rules of Criminal Procedure mak[ing] no reference to a motion to intervene in a criminal case.").

Appellees' flawed analysis of intervention rights in criminal proceedings would require this Court to fashion new precedent prohibiting any third party from intervening, even for a limited purpose to vindicate a federal right, absent express statutory authorization. This analysis is overly restrictive and unsupported by case law. Indeed, analysis of relevant case law shows the opposite: where federal rights wholly collateral to the underlying criminal prosecution are implicated and there is no express statutory *bar*, intervention for a limited purpose is appropriate. *See, e.g.*,

6

*U.S. v. Carmichael*, 342 F. Supp. 2d 1070, 1072 (M.D. Ala. 2004). This is especially so where the prospective intervenor has no other forum available to vindicate the right. *See, e.g.*, *U.S. v. Couch* (*"Couch I"*), Crim. No. 15-0088-CG-B, 2017 WL 3016923, at *2 n.1 (S.D. Ala. July 14, 2017); *U.S. v. Moussaoui*, 483 F. 3d 220, 236 (4th Cir. 2007).

Ignoring the import of this precedent and based on an unsound statutory analysis, Appellees urge this Court to bar American Oversight's intervention in the district court based on a fundamental misunderstanding of American Oversight's interest as a prospective intervenor. Because it had *no other recourse* to vindicate its rights under FOIA,[4] Appellant sought intervention in the below proceedings—which

---

[4] Former Defendant-Appellees suggest that Volume II is not releasable under FOIA, relying on *amicus curiae* American First Legal Foundation's argument that no FOIA-based exception to the Privacy Act applies. *See* Joint App. Br. at 41 n.12 (citing Br. of *Amicus Curiae* Am. First Legal Found. Supporting Defs.-Appellees & Supporting Affirmance at 20–26). The D.C. Circuit recently rejected a similar argument under curiously familiar circumstances. In *Heritage v. United States Dep't of Just.*, a FOIA plaintiff sought access to materials gathered by Special Counsel Robert Hur during his investigation into then-President Biden's handling of classified information during and after his vice presidency, which ultimately resulted in a decision not to issue criminal charges. No. 26-5235, slip op. at 1-2 (July 20, 2026). Former President Biden intervened to move for an injunction preventing release of the materials—transcripts and audio recordings of conversations with his memoir writing partner. The district court denied and the D.C. Circuit affirmed and rejected Biden's request for an injunction pending appeal, finding he had not shown a likelihood of success on the merits that FOIA's privacy exemptions and the Privacy Act barred disclosure of the records. *Id.* at 2. The D.C. Circuit noted the public's "'weighty' and 'significant' interest in 'shining a light' on the Special Counsel's investigation of a former Vice President for alleged mishandling and disclosure of classified information," even though the investigation

were governed by federal criminal statutes related to alleged mishandling of classified government documents—to seek dissolution of an injunction prohibiting the federal government from releasing Volume II. *See Taylor v. Sturgell*, 553 U.S. 880, 885 (2008) ("[FOIA] accords 'any person' a right to request any records held by a federal agency."); *see also* 5 U.S.C. § 552; Freedom of Information Act, Pub. L. No. 89-487, 80 Stat. 250 (July 4, 1966) (codifying Act's purpose to "clarify and protect the right of the public to information"). Statutory access to non-exempt portions of the report is the interest that Petitioner seeks to protect through the relief it requests here. *See, e.g.*, *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989) ("This Court repeatedly has stressed the fundamental principle of public access to Government documents that animates the FOIA.").

Unlike in many of the cases cited by Appellees, here, American Oversight's statutory rights do not govern the underlying criminal proceedings, nor has it asserted any interest related to "the prosecution or nonprosecution" of the former defendants. *See* Gov't App. Br. at 21 American Oversight's interest is more akin to that of media organizations that seek and are granted intervention in criminal cases for access to judicial records or to closed proceedings. *See, e.g., Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580, (1980) (plurality opinion); *Chicago*

---

ended in a decision not to charge, *id.* at 3 (citing *CREW v. U.S. Dep't of Just.*, 746 F.3d 1082, 1092-93 (D.C. Cir. 2014)), and noted that DOJ's proposed redactions would adequately protect Biden's privacy interests in the materials, *id.* at 4.

*Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001); *Newman v. Graddick*, 696 F.2d 796, 802 (11th Cir. 1983). Namely, its interest is limited to asserting a federal right that was directly impeded by the district court's order.

Confusingly, Appellees' briefs are rife with citations to cases where a third party sought intervention in criminal proceedings for the purpose of vindicating a statutory right *tied directly to* the underlying criminal prosecutions.  Gov't App. Br. at 21–27; Joint App. Br. at 38–41. Those cases are largely inapposite to this case, because the prospective intervenors' interests were governed by the same statutes governing the proceedings themselves, and those statutes explicitly addressed how related property or other third-party interests should be handled by the courts.

For example, the federal government relies heavily on *United States v. Ruan*, an Eleventh Circuit case in which a non-party to a criminal forfeiture case sought intervention to seek reconsideration of a court order that voided a transfer of property to the non-party. 814 F. App'x 439, 442 (11th Cir. 2020). As the federal government correctly notes, the Fair Debt Collection Practices Act (FDCPA) "governed the government's restitution collection efforts," and provided explicit mechanisms by which individuals with an interest in the property at stake in the forfeiture proceedings could assert their interests. *See* Gov't App. Br. at 22. Because the FDCPA specifically contemplated scenarios in which a third party would have an

9

interest in forfeiture proceedings and provided the steps third parties must take to assert that interest, and where the prospective intervenor had not taken those steps, the motion to intervene was denied. *See Ruan,* 814 F. App'x at 442–43.

Here, of course, FOIA does not govern the underlying criminal proceedings but provides American Oversight with a federal right, implicated by the district court's order barring the release of Volume II, to seek non-exempt public records from the federal government. *See* 5 U.S.C. § 552. Appellees do not even attempt to argue that the criminal statutes governing the proceedings below explicitly or implicitly bar American Oversight from seeking intervention to protect its implicated federal statutory right under FOIA—because they do not, and intervention is appropriate here.

Appellees also point to *Couch II*, in which the Eleventh Circuit held that the district court properly denied a *qui tam* plaintiff's motion to intervene in criminal forfeiture proceedings, because the statute governing criminal forfeiture proceedings specifically barred intervention. *See* Gov't App. Br. at 23. But nothing in the *Couch II* opinion applies to a prospective intervenor like American Oversight, whose federal right to seek non-exempt public records under FOIA is impaired by a district court's injunction barring dissemination of the materials the intervenor seeks, where neither the statute governing the underlying proceedings nor the statute pertaining to the prospective intervenor's asserted right implicitly or explicitly bars

10

intervention. *See id.* Importantly, the district court's opinion in *Couch I* specifically differentiated the prospective intervenor from a "member of the public with an interest in open access to court records or . . . a private party [seeking] to defend against the production of confidential or privileged documents,"[5] noting that the prospective intervenor could pursue claims in another forum. *Couch I*, 2017 WL 3016923, at *2 n.1.

This Court, in *Couch II*, highlighted a similar point, finding that because the motion to intervene was—as it is here—motivated by an interest "materially different from an attempt to compel a criminal prosecution or alter a sentence," 906 F.3d at 1227, the Court had jurisdiction to decide whether the criminal forfeiture statutes at issue protected or precluded the right to intervene. *See id*. Because those statutes expressly barred intervention except through an ancillary proceeding, the Court affirmed the lower court's denial of the motion to intervene. *See id*. at 1228.

In contrast, here, the relevant statute imposes no such bar, nor is there any alternative forum in which Appellant can gain relief from the district court's order. *See Am. Oversight v. U.S. Dep't of Just.*, No. 25-cv-383 (D.D.C. Feb. 10, 2025), Doc. 11 (denying American Oversight's motion for a preliminary injunction to

---

[5] Regardless of whether Volume II is considered a court record, American Oversight's interest in accessing it through FOIA is analogous to that hypothetical "member of the public with an interest in open access to court records." The analogy lies in the distinct right, entirely separate from the underlying criminal statute, and not in the categorization of the document at issue.

compel release of Volume II and noting that Petitioner must "argue before Judge Cannon (and possibly the Eleventh Circuit) that the order is invalid or should be dissolved."). *Id.* at 14.

Further, although this Court in *Couch II* held that the district court correctly decided that the *qui tam* plaintiff could not intervene because the criminal forfeiture statutes explicitly barred intervention, it also noted that "the general principle that private parties lack standing to intervene in criminal proceedings has no application here . . . . [A] forfeiture proceeding to enforce an alleged property interest is materially different from an attempt to compel a criminal prosecution or alter a sentence." *Couch II*, 906 F.3d at 1227. In other words, when a prospective intervenor's federal statutory interests are not in the prosecution or sentencing of defendants, a court should consider those interests instead of reflexively closing the door to intervention because it is a criminal proceeding.

The former defendants cite to another inapposite case, *United States v. Moussaoui*, 483 F. 3d 220 (4th Cir. 2007), to support their argument that American Oversight should be foreclosed from intervention. *See* Joint App. Br. at 40. In that case, the Fourth Circuit reversed and vacated a lower court decision allowing victims of the September 11 terrorist attacks to intervene to access non-public discovery materials related to the prosecution for use in their own civil action. *Moussaoui*, 483 F. 3d at 224. But the *Moussaoui* Court relied in part on the reasoning that the

materials the victims sought could be obtained in their federal civil action through civil discovery. *Id.* at 236. In sharp contrast, American Oversight has been foreclosed from seeking a remedy through civil litigation as a direct result of the district court's injunction.

Further, the Court in *Moussaoui* considered the authority of the district court in relation to the remedy the intervenor sought and was granted: an order requiring the government to turn over discovery materials to intervenors. Here, American Oversight did not seek intervention to ask the district court to compel the government to release Volume II to American Oversight. Rather, American Oversight sought intervention to request that the district court lift its own order enjoining the government from releasing the report, an action well within the district court's own authority.

The federal government's reliance on this Court's decision in *U.S. v. Alcatel-Lucent* is also misplaced. *See* Gov't App. Br. at 24. In *Alcatel-Lucent*, a crime victim sought to intervene pursuant to the Crime Victims' Rights Act to appeal a defendant's sentence in a criminal prosecution under the Foreign Corrupt Practices Act. 688 F.3d 1301, 1303–04 (11th Cir. 2012). This Court held that crime victims generally have no standing to appeal a defendant's sentence in a criminal proceeding, in part because the CVRA explicitly provided mandamus as the exclusive route for petitioners to assert their rights under the statute, none of which

13

included the right to appeal a defendant's sentencing. *Id.* at 1307. Further, the Court recognized some exceptions in other circuits permitting crime victims to participate in criminal proceedings to which they were not a party but noted that they were not applicable in *Alcatel-Lucent* and were distinguishable because the cases "all related to specific trial issues and did not disturb a final judgment." *Id.* (citing and quoting *U.S. v. Hunter*, 548 F.3d 1308, 1314 (10th Cir. 2008)).

The Courts' discussions of circumstances that could warrant intervention in cases cited by Appellees support American Oversight's requests for intervention in the district court proceedings. Further, they comport with the reasoning of the former Fifth Circuit in *U.S. v Burney*, where the parents of a defendant charged with possession of peyote successfully sought intervention in appellate proceedings pertaining to their son's criminal conviction to recoup money they had deposited with the lower court as bond to ensure their son's appearance that had been rerouted to compensate their son's appointed counsel. 515 F.2d 1228, 1231-32 (5th Cir. 1975). The Court determined that intervention was appropriate because not allowing it "would run counter to Congress' design in enacting" a statutory bail deposit scheme that did not anticipate the commingling of money deposited for bond by a third party with compensation to reimburse the appointed counsel of a defendant. *Id* at 1237. Here, similarly, American Oversight is seeking to vindicate a right that is separate from the core criminal proceedings in the district court, and to bar it from

14

intervention would run counter to Congress' intent that non-exempt public records be made accessible (subject to appropriate redactions) to the public under FOIA.

American Oversight did not seek intervention to participate in the government's prosecution, or lack thereof, of the former defendants. Nor is it seeking to disturb the final judgments in the case concerning those prosecutions. American Oversight sought limited intervention to lift the injunction on Volume II, which impaired its own rights under FOIA, and then sought intervention a second time in order to stay the district court proceedings pending its appeal of the first intervention denial. This Court should reject Appellees' flawed and overly narrow framing of intervention rights in criminal cases and reverse the district court orders denying American Oversight the right to intervene.

**III.   This Court has Jurisdiction to Address Whether the District Court Erred in Precluding Release of Volume II and Has the Power to Reverse the Permanent Injunction**

    **A.   The District Court's Decisions on Intervention are Necessarily Intertwined with its Treatment of Volume II**

Appellees' arguments that the district court was correct to permanently enjoin release of Volume II without waiting for this Court to address Appellants' appeals challenging the denials of their initial motions to intervene are unpersuasive. The federal government, for example, argues that the district court's decision to permanently enjoin the release of Volume II is "separate and distinct" from consideration of the issues raised by Appellants in their first motions to intervene.

15

*See* Gov't App. Br. at 51–52 (quoting Weaver v. Fla. Power & Light Co., 172 F.3d 771, 773 (11th Cir. 1999). But of course the question of whether American Oversight can intervene in the district court to challenge the injunction is intertwined with any decision by the district court related to the injunction itself. Had American Oversight been permitted to intervene after filing its first motion, it would have had the opportunity to argue to the district court directly why enjoinment of the release of Volume II is not warranted and would contradict Congress' intent in enacting FOIA. Similarly, had the district court granted Appellants' second motion to intervene, the district court then would have had to consider arguments by Appellants that a stay of proceedings relating to Volume II was warranted until this Court considered Appellants' first motions to intervene. Because consideration of the enjoinment of release of Volume II "affect[s] the questions presented on appeal," *see Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush*, 261 F.3d 1037, 1064 (11th Cir. 2001) (internal citations omitted), American Oversight's filing of its first notice of appeal divested the district court of jurisdiction to issue an order barring the release of Volume II.

**B.     This Court has Jurisdiction to Consider the District Court's Order Permanently Enjoining the Release of Volume II**

Appellees elect not to engage with the merits of American Oversight's argument challenging the district court's order permanently enjoining the federal government from releasing Volume II and instead argue incorrectly that this Court cannot consider the injunction within these consolidated appeals. The federal

16

government argues more specifically that this Court lacks jurisdiction to consider "an appeal of an order not specifically mentioned in the appellant[s'] Notice of Appeal." Gov't App. Br. at 50 (quoting *Seminole Tribe of Fla. v Stranburg*, 799 F.3d 1324, 1343 (11th Cir. 2015)). But this proposition, and the cases to which the federal government cites, fail to contend with the unique procedural posture of this case and significant amendments to the Federal Rules of Appellate Procedure in 2021 designed to preserve appellate rights.

In the underlying proceedings, the district court dismissed the indictment against all former defendants, thus concluding the criminal proceedings, on July 15, 2024. *See* Doc 672; *see also* Doc 779 at 3 (permanently enjoining the federal government from releasing Volume II and stating that "the Court's Dismissal Order was always, and still remains, an enforceable, final order in this proceeding"). Former Defendants filed motions seeking a prohibition on the release of Volume II months later, on January 6, 2025. *See* Doc 679. American Oversight filed its first motion to intervene, Doc 717, on February 14, 2025, and a notice of appeal following the denial of that motion, Doc 763, on December 29, 2025. American Oversight filed its second motion, a joint motion to intervene with the Knight Institute, Doc 775, on February 9, 2026, seeking to stay district court proceedings concerning the continued enjoinment of Volume II until this Court could consider Appellants' first motions to

17

intervene, and, following the district court's denial of the joint motion, filed a second notice of appeal, Doc 784.

The 2021 Amendments to the Federal Rules of Appellate Procedure addressed the complexity that may arise when a party seeks to appeal multiple district court orders and prescribed the proper notice for appellants to do so. The committee notes supplementing the amended Federal Rules of Appellate Procedure provide:

> In an effort to avoid the misconception that it is necessary or appropriate to designate each and every order of the district court that the appellant may wish to challenge on appeal, Rule 3(c)(1) is amended to require the designation of "the judgment--or the appealable order--from which the appeal is taken," and the phrase "or part thereof" is deleted.

Comm. Notes to Fed. R. App. P. 3, 2021 Amendments.

Here, should this Court reverse the district court's denial of Appellants' motions to intervene, at minimum the injunction should not stand because Appellants were not able to participate in the below proceedings and challenge the motions seeking permanent enjoinment.[6] Appellees read too strictly the Federal

---

[6] The federal government cites to a recent Supreme Court decision that is inapposite to this case because of the differing procedural postures of appellants in the respective cases. *See* Gov't App. Br. at 49. In *Nuclear Regulatory Commission v. Texas*, 605 U.S. 665 (2025), the Court determined that a party who was denied intervention in a licensing proceeding under the Commission's standards and challenged the denial before the Commission and the D.C. Circuit—but who did not then seek en banc review from the D.C. Circuit or certiorari in the Supreme Court— could not "collaterally attack" the denial of intervention by seeking judicial review of the Commission's decision in the licensing proceeding in the Fifth Circuit. *Id.* at

Rules of Appellate Procedure and American Oversight's notices of appeal are sufficient to challenge the district court's order permanently enjoining release of Volume II.

> **C.** **Even if This Court Determines that the District Court Order Permanently Enjoining Release of Volume II is Not Properly Before the Court, it is Still Empowered to Reverse the Injunction**

Even if this Court determines that the propriety of the district court's permanent injunction is not properly before it, it may use its *sua sponte* powers, available in exceptional cases, to order reversal or to lift the injunction itself. *See e.g.*, *Drazen v. Pinto*, 106 F.4th 1302, 1334 (11th Cir. 2024) ("[T]here may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court . . . below") (quoting *Hormel v. Helvering*, 312 U.S. 552, 557 (1941)); *Thomas v. Crosby*, 371 F.3d 782, 793 (11th Cir. 2004) (J. Tjoflat, concurring) ( "It is beyond dispute that, in general, we have the power to consider issues that a party fails to raise on appeal, even though the petitioner does not have the right to demand such consideration.").

---

679. Because review of the intervention denial was not sought following an initial challenge to the D.C. Circuit, "[t]he decision on intervention is final." *Id.* Here, American Oversight has put squarely before this Court appeals of the district court's denials of its motions to intervene, and, if this Court determines that American Oversight should have been permitted to intervene, it should then be permitted to consider the issues American Oversight sought to challenge as an intervenor.

19

This Court has exercised its powers before to resolve issues that, because of the procedural posture of the case, may not be directly before the Court on appeal, or to prevent injustice. For example, in *U.S. v. Noriega*, this Court treated an appeal from a media outlet challenging a prior restraint as a request for a writ of prohibition or mandamus because the oral orders from which the appellant sought review were not technically appealable. 917 F.2d 1543, 1546 (11th Cir. 1990). And in *Rose v. Secretary State of Georgia*, this Court stayed a district court's permanent injunction months after it reversed a district court's order that had enjoined the Georgia Secretary of State from administering elections for vacancies on the Public Service Commission. *See Rose v. Sec'y, State of Georgia*, No. 22-12593, 2024 WL 1710472, at *1 (11th Cir. Apr. 16, 2024) (cert. denied).

Here, the Court has the authority to address the propriety of the injunction. American Oversight has sought to challenge enjoinment of the release of Volume II, a report of significant public import, in the district court for more than seventeen months. Should American Oversight be required to again make its arguments challenging the release of Volume II upon any reversal of the denials of its motions to intervene, it will almost certainly face barriers and delay until it is before this Court again with the same arguments it seeks and hopes to resolve now. This Court should reverse the district court's decision enjoining release of Volume II.

20

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's denials of American Oversight's motions to intervene and reverse the district court's enjoinment of the release of Volume II.

*/s/ Loree Stark*
Loree Stark
Elizabeth Haddix
American Oversight
1030 15th Street NW, B255
Washington, DC 20005
Tel: (304) 913-6114
loree.stark@americanoversight.org
elizabeth.haddix@americanoversight.org

Barbara R. Llanes
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Ste. 2600
Miami, FL 33131
Tel: (305) 728-0950
bllanes@gsgpa.com

*Attorneys for Interested Party-Appellant*
*American Oversight*

## Certificate of Compliance

I certify that this petition complies with the Court's May 28, 2026 Order (No 25-14507, ECF No. 68), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 5,214 words. The petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

*/s/  Loree Stark*
Loree Stark
Elizabeth Haddix
American Oversight
1030 15th Street NW, B255
Washington, DC 20005
Tel: (304) 913-6114
loree.stark@americanoversight.org


Barbara R. Llanes
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Ste. 2600
Miami, FL 33131
Tel: (305) 728-0950
bllanes@gsgpa.com

*Attorneys for Interested Party-Appellant American Oversight*
