**Nos. 25-14507, 26-10674**

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

United States of America,
*Plaintiff–Appellee,*
v.

Knight First Amendment Institute at Columbia University; American Oversight,
*Interested Parties–Appellants,*

Donald J. Trump; Waltine Nauta; Carlos De Oliveira,
*Defendants–Appellees.*

On appeal from the United States District Court for the
Southern District of Florida — No. 9:23-cr-80101-AMC
(Judge Aileen M. Cannon)

### CONSOLIDATED REPLY BRIEF OF APPELLANT
### KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY

David Buckner
Buckner + Miles
2020 Salzedo Street
Suite 302
Coral Gables, FL 33134
(305) 964-8003

Scott Wilkens
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute at
 Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Appellant Knight First
Amendment Institute at Columbia University*

**Certificate of Interested Persons and Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellant Knight First Amendment Institute at Columbia University certifies that the following have an interest in the outcome of this appeal.

1. Abdo, Alex

2. America First Legal Foundation

3. American Oversight

4. Balkin, Jack

5. Blumenthal, Senator Richard

6. Buckner & Miles, P.A.

7. Buckner, David

8. Cai, Angela

9. Cannon, Hon. Aileen

10. Clanton, Crystal

11. Crossin, Robert

12. De Oliveira, Carlos

13. Delgado, Jorge

14. E & W Law

15. Eisen, Norman Larry

16. Epstein, Daniel

17. Gelber Schachter & Greenberg, P.A.

18. Griffin, Kelsey

19. Haddix, Elizabeth

20. Irving, John

21. Jaffer, Jameel

22. Johnson, Ara

23. Jonas, Stephen Allen

24. Kim, Noah

25. Kitrosser, Heidi

26. Klugh Jr., Richard

27. Knight First Amendment Institute at Columbia University

28. Kolb, Joshua Gabriel

29. Koningisor, Christina

30. Lakier, Genevieve

31. Langford, John

32. Llanes, Barbara

33. Magarian, Greg

34. Media Freedom & Information Access Clinic, Abrams Institute, Yale Law School

35. Murrell Jr., Larry

36. Nauta, Waltine

37. Neuborne, Burt

38. O'Byrne, Haden

39. Percival, Emily

40. Platkin, Matthew J.

41. Porter, Michael

42. Procaccini, Francesca

43. Schachter, Adam

44. Schiff, Senator Adam

45. Schulz, David

46. Selbrede, Anna

47. Siblesz, Alessandra M.

48. Smachetti, Emily

49. Stark, Lorree

50. Trump, Donald

51. United States Department of Justice

52. West, Sonja

53. Wharton, Kendra

54. Wilkens, Scott

The Knight First Amendment Institute at Columbia University further certifies that it has no parent corporation and that no publicly held corporation owns 10 percent or more of its stock.

/s/ Scott Wilkens
Scott Wilken

**Table of Contents**

Table of Authorities .................................................................................. iii

Introduction ...................................................................................................1

Argument........................................................................................................2

    I.     The issues on appeal are reviewed *de novo*, not for abuse of discretion. ....................................................................................2

    II.    The Knight Institute has standing to intervene...........................4

        A.    The Institute has standing to intervene to assert a right of access to Volume II under the common law and the First Amendment. .....................................................................4

        B.    The Institute also has standing to intervene to challenge the injunctions nullifying its rights under FOIA....................................5

    III.   Volume II is subject to the presumptive public right of access under the common law and the First Amendment, and that presumption cannot be overcome in this case...........................9

        A.    Volume II is a "judicial record" subject to the presumptive public right of access under the common law................................9

        B.    Volume II is subject to the presumptive public right of access under the First Amendment. .................................................19

        C.    The presumptive right of access under the common law and the First Amendment has not been overcome...............................21

    IV.   The Permanent Injunction barring the Institute's FOIA rights should be vacated because the district court's justifications lack merit....................................................................................26

    V.    This Court has jurisdiction to grant complete relief................27

        A.    Reversal of the intervention denials permits review of the orders injuring the Institute. ........................................................27

i

B.    The government's notice-of-appeal argument disregards the 2021 amendments to Federal Rule of Appellate Procedure 3(c). ...............................................................................29

C.    The district court lacked jurisdiction under *Griggs* to enter the Permanent Injunction Order, and this Court should reach the merits rather than remand.......................................................31

Conclusion ............................................................................................33

Certificate of Compliance .....................................................................35

Certificate of Service .............................................................................36

ii

# Table of Authorities

**Cases**

*American Oversight v. U.S. Dep't of Justice,*
779 F. Supp. 3d 40 (D.D.C. 2025)....................................................................7

*Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.,*
953 F.3d 707 (11th Cir. 2020) .......................................................................29

*Boyes v. Shell Oil Prods. Co.,*
199 F.3d 1260 (11th Cir. 2000) ......................................................................25

*Burke v. Ocwen Fin. Corp.,*
No. 21-12160, 2022 WL 599153 (11th Cir. Mar. 1, 2022) ..............................32

*Callahan v. United Network for Organ Sharing,*
17 F.4th 1356 (11th Cir. 2021) ........................................ 9, 11, 14, 15, 16, 17, 22

*Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,*
263 F.3d 1304 (11th Cir. 2001) .....................................................................3, 14

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice,*
746 F.3d 1082 (D.C. Cir. 2014)......................................................................26

*Comm'r, Ala. Dep't .of Corr. v. Advance Local Media,*
918 F.3d 1161 (11th Cir. 2019) ........................................ 2, 3, 10, 14, 15, 16, 17

*Comparelli v. Republica Bolivariana De Venez.,*
891 F.3d 1311 (11th Cir. 2018) .........................................................................2

*Fla. Agency for Health Care Admin. v. Adm'r for Ctrs. for Medicare
& Medicaid Servs.,*
161 F.4th 765 (11th Cir. 2025) .......................................................................25

*Globe Newspaper Co. v. Superior Court,*
457 U.S. 596 (1982).................................................................................. 21, 22

*Griggs v. Provident Consumer Disc. Co.,*
459 U.S. 56 (1982)................................................................................. 31, 32, 33

iii

*Hamm v. Dunn*,
No. 17-CV-02083, 2018 WL 2431340 (N.D. Ala. May 30, 2018) ....................16

*Heritage Found. v. U.S. Dep't of Justice*,
No. 26-5235 (D.C. Cir. July 20, 2026) .............................................................25

*In re IBM Arbitration Agreement Litig.*,
76 F.4th 74 (2d Cir. 2023) ........................................................................ 17, 18

*Koon v. United States,*
518 U.S. 81 (1996)..........................................................................................2

*Mary Ann Pensiero, Inc. v. Lingle*,
847 F.2d 90 (3d Cir. 1988) ..............................................................................33

*Newman v. Graddick*,
696 F.2d 796 (11th Cir. 1983) ......................................................................3, 16

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025).................................................................................. 27, 31

*N.Y. Times Co. v. U.S. Dep't of Justice*
No. 1:25-cv-00562, 2025 WL 2549435 (S.D.N.Y. Sep. 5, 2025).......................7

*PDVSA US Litig. Tr. v. Lukoil Pan Americas LLC*,
65 F.4th 556 (11th Cir. 2023) ..........................................................................24

*Petition of Tribune Co.*,
784 F.2d 1518 (11th Cir. 1986)  .......................................................................27

*Romero v. Drummond Co.*,
480 F.3d 1234 (11th Cir. 2007) ........................................... 9, 11, 12, 13, 17, 22

*Ruckh v. Salus Rehab., LLC*,
963 F.3d 1089 (11th Cir. 2020) .......................................................................23

*Seminole Tribe of Fla. v. Stranburg*,
799 F.3d 1324 (11th Cir. 2015) .......................................................................29

*Stone v. First Union Corp.*,
371 F.3d 1305 (11th Cir. 2004) .......................................................................28

iv

*Taylor v. Food World, Inc.*,
   133 F.3d 1419 (11th Cir. 1998) ........................................................................25

*Thomas v. Cooper Lighting, Inc.*,
   506 F.3d 1361 (11th Cir. 2007) ........................................................................23

*Trump v. Mazars USA, LLP*,
   591 U.S. 848 (2020) .........................................................................................18

*United States v. Alcatel-Lucent France, SA,*
   688 F.3d 1301 (11th Cir. 2012) ......................................................................7, 8

*United States v. Anderson*,
   799 F.2d 1438 (11th Cir. 1986) ........................................................................15

*United States v. Atesiano*,
   Case No. 18-20479-CR-Moore/Simonton, 2018 WL 5831092
   (S.D. Fla. Nov. 7, 2018).....................................................................................5

*United States v. Campbell*,
   26 F.4th 860 (11th Cir. 2022) ...........................................................................23

*United States v. Carmichael*,
   342 F. Supp. 2d 1070 (M.D. Ala. 2004)..............................................................5

*United States v. Castillo*,
   730 F. App'x 892 (11th Cir. 2018) ....................................................................20

*United States v. Corces,*
   No. 92-28-CR-T-17B, 1997 WL 447979 (M.D. Fla. July 28, 1997) .................20

*United States v. Couch,*
   906 F.3d 1223 (11th Cir. 2018) .......................................................................8, 9

*United States v. Cox*,
   No. 14-CR-140, 2015 WL 13741738 (M.D. Fla. Oct. 7, 2015)...........................5

*United States v. Curtin*,
   78 F.4th 1299 (11th Cir. 2023) ...........................................................................2

*United States v. Gallo*,
  Case No. 2:24-cr-00712, 2026 WL 1707592
  (D.N.J. June 12, 2026) ...................................................................................5

*United States v. Lee*,
  No. 23-11975, 2025 WL 1912444 (11th Cir. July 11, 2025) .............................33

*United States v. Moussaoui,*
  483 F.3d 220 (4th Cir. 2007) ........................................................................7, 8

*United States v. Nickens*,
  809 F. App'x 584 (11th Cir. 2020)............................................................. 15, 20

*United States v. Ochoa-Vasquez,*
  428 F.3d 1015 (11th Cir. 2005) ............................................................ 19, 20, 22

*United States v. Ruan,*
  814 F. App'x 439 (11th Cir. 2020)..................................................................3, 8

*United States v. Sineneng-Smith,*
  590 U.S. 371 (2020)......................................................................................24

*United States v. Wolfson*,
  55 F.3d 58 (2d Cir. 1995) ..............................................................................15

*Young v. Grand Canyon Univ., Inc.*,
  980 F.3d 814 (11th Cir. 2020) .......................................................................23

**Statutes**

28 U.S.C. § 1291 ...........................................................................................28

**Rules**

11th Cir. R. 28-5 .............................................................................................2

Fed. R. App. P. 3 ..................................................................................... 30, 31

Fed. R. App. P. 12.1...................................................................................33

Fed. R. Crim. P. 16........................................................................................13

**Regulations**

28 C.F.R. § 600.8(c) ....................................................................................... 13, 15

**Other Authorities**

Wright & Miller's Federal Practice and Procedure
   § 3949.4 (5th ed. Apr. 2026 Update) ................................................................30

**Introduction**

The district court enjoined the release of Volume II in January 2025 for one reason: to protect the fair-trial rights of Defendants Nauta and De Oliveira, whose criminal charges remained pending. The criminal case ended several weeks later, in February 2025, but rather than lift the injunction when the rationale evaporated, the district court kept it in place for a year and then replaced it with a permanent injunction, substituting new justifications for the old one. These new justifications are unpersuasive, which is presumably why none of the Appellees makes any effort to defend them.

Appellees' arguments relating to the Knight Institute's common law and constitutional claims are unpersuasive, too. The common law and First Amendment rights of access attach to Volume II for reasons that the Institute has already addressed and that it addresses further here. Tellingly, none of the Appellees argues that the presumption of access, once it attaches, can be overcome. In other words, they make no attempt to justify the suppression of Volume II on the merits. The arguments they do make—focusing, for example, on perceived deficiencies in the Institute's notices of appeal, and ostensible problems with the Institute's standing— are without merit, as the Institute explains below.

This Court should reverse, vacate the Permanent Injunction, and order Volume II placed on the public docket.

1

**Argument**

**I.    The issues on appeal are reviewed *de novo*, not for abuse of discretion.**

Appellees argue that the standard of review applicable to the district court's

denials of intervention is abuse of discretion. U.S. Br. at 1–3, 17–19; Defs. Br. at 6–

7, 65, 72–73. Even if that were correct—it is not—it would make no difference here,

because "[a] district court by definition abuses its discretion when it makes an error

of law." *United States v. Curtin*, 78 F.4th 1299, 1310 (11th Cir. 2023) (quoting *Koon*

*v. United States*, 518 U.S. 81, 100 (1996)). Defendants agree that "[u]nderlying

questions of law are reviewed *de novo*." Defs. Br. at 34.

The district court denied the Knight Institute's motions to intervene based on

two questions of law—first, whether a non-party's statutory interests under FOIA

provide a basis for intervention in a criminal case, and second, whether Volume II

is a "judicial record" subject to the common law right of access. Dkt. 760 at 11–18.[1]

The first question is one of standing, which this Court reviews *de novo. See*

*Comparelli v. Republica Bolivariana De Venez.*, 891 F.3d 1311, 1318 (11th Cir.

2018). As for the second question, this Court made clear in *Comm'r, Ala. Dep't .of*

*Corr. v. Advance Local Media* that "[w]hether a document is a 'judicial record'

---

[1] Pursuant to 11th Cir. R. 28-5, citations to documents in the docket below are cited herein as "Dkt. [#] at [Page #]."

subject to the common law right of access is a question [the Court] review[s] *de novo*." 918 F.3d 1161, 1165 (11th Cir. 2019).

In arguing that abuse of discretion applies, the government relies on this Court's decisions in *Newman v. Graddick*, 696 F.2d 796 (11th Cir. 1983), and *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304 (11th Cir. 2001) (per curiam), which held that abuse-of-discretion review applies to a district court's balancing of competing interests to determine whether the common law presumption of access has been overcome. *Newman*, 696 F.2d at 803 ("The historic presumption of access to judicial records must be considered in the balance of competing interests. A district court's resolution of this balancing task is reviewable for abuse of discretion." (citation omitted)); *Chicago Tribune*, 263 F.3d at 1311 ("The right to inspect and copy is not absolute, however, and a judge's exercise of discretion in deciding whether to release judicial records . . . requires a balancing of competing interests."). Here, the district court did not engage in a balancing of interests, instead relying on its determination that the common law and First Amendment right of access did not attach to Volume II. Dkt. 760 at 15–18; *see also* Defs. Br. at 67–68.

For their part, Defendants rely primarily on this Court's decision in *United States v. Ruan* in asserting that abuse of discretion applies. Defs. Br. at 34 (citing Ruan, 814 F. App'x 439, 441 (11th Cir. 2020)). But as Defendants concede, *Ruan*

"left undecided the question of the appropriate standard [of review] in criminal proceedings." Defs. Br. at 34 n.9.

## II.    The Knight Institute has standing to intervene.

### A.    The Institute has standing to intervene to assert a right of access to Volume II under the common law and the First Amendment.

For reasons already explained, the district court was wrong to hold that the Institute lacks standing to assert its common law and First Amendment right of access to Volume II. Knight Br. at 22–23. The district court adopted that holding because it concluded that the Institute's claims fail on the merits, but the court was wrong to conflate standing and the merits, and in any event it was wrong about the merits, as the Institute has already explained. *Id.* at 22–35.

Defendants argue that the district court ruled on the merits, not on standing. Defs. Br. at 67–68. This is incorrect, but it doesn't matter. The Institute agrees with Defendants that the district court's ultimate conclusion rested on an assessment of the merits—whether Volume II constitutes a "judicial record" subject to the public right of access. This Court must address the merits for that reason, and it should conclude that Volume II is subject to the common law and First Amendment right of access, and that the presumption of access cannot be overcome. Knight Br. at 28–48; *see infra* Parts II-III.

**B.**    **The Institute also has standing to intervene to challenge the injunctions nullifying its rights under FOIA.**

As the Institute explained in its opening brief, intervention in criminal cases is rarely sought but is permitted when the prospective intervenor's "constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case." *United States v. Carmichael*, 342 F. Supp. 2d 1070, 1072 (M.D. Ala. 2004); *see also United States v. Cox*, No. 14-CR-140, 2015 WL 13741738, at *3 (M.D. Fla. Oct. 7, 2015); *United States v. Atesiano*, Case No. 18-20479-CR-Moore/Simonton, 2018 WL 5831092, at *2–*4 (S.D. Fla. Nov. 7, 2018).[2] The Knight Institute's statutory right of access to Volume II under FOIA is a federal right directly implicated—effectively nullified—by the district court's Permanent Injunction. The Institute therefore has standing to intervene.

---

[2] The government attempts to recast these cases as underscoring the "highly limited" nature of intervention in criminal cases. U.S. Br. at 27–28. The government's argument is misguided; *Carmichael*, *Atesiano*, and *Cox* make clear that courts have permitted intervention in criminal cases in situations that would fall afoul of Appellees' proposed limitations. A case cited by Defendants—*United States v. Gallo*, Case No. 2:24-cr-00712, 2026 WL 1707592 (D.N.J. June 12, 2026)— further undermines Appellees' narrow interpretation of intervention in criminal cases. In *Gallo*, the district court allowed a non-party to intervene in a criminal case to oppose the district court's stay of arbitration proceedings, which prevented the non-party from "enforcing an arbitration agreement, which is a federal right under the Federal Arbitration Act." *Id.* at *3.

5

Appellees claim that the Institute lacks standing because FOIA does not itself authorize intervention in criminal cases. U.S. Br. at 24–25; Defs. Br. at 39–41. Defendants argue, for example, that "FOIA does not bestow requesters with collateral participatory rights in criminal proceedings," reasoning that FOIA "establishes a 'comprehensive scheme' for requesting agency records, and for seeking judicial relief," that FOIA's scheme is "explicitly exclusive," and that "[a] requester's dissatisfaction with FOIA's scheme does not, therefore, confer a collateral right of entitlement or procedural mechanism to seek relief in an alternative forum." Defs. Br. at 40–41; *see also* U.S. Br. at 24–25. That argument, however, is based on a fundamental misunderstanding of the Knight Institute's motions to intervene. The Institute is not seeking to litigate its FOIA rights *in this case*. To the contrary, the Institute seeks to intervene to lift the district court's injunction so that the Institute can actually pursue its statutory rights under FOIA through the normal FOIA process.

The Institute has already initiated that process under FOIA—filing a request with DOJ and an administrative appeal, both of which DOJ denied, citing the district court's injunction. Knight Br. at 14. The Institute has not yet filed a lawsuit against DOJ, because doing so while the injunction remains in place would be futile. Indeed, two FOIA lawsuits against DOJ seeking Volume II have already been dismissed because of the injunction. *See N.Y. Times Co. v. U.S. Dep't of Justice*, No. 1:25-cv-

00562, 2025 WL 2549435, at *5 (S.D.N.Y. Sep. 5, 2025) ("Because Plaintiffs have failed to establish that Judge Cannon lacked jurisdiction to enter the Permanent Injunction, the Court holds that the DOJ did not improperly withhold Volume II, and therefore Plaintiffs' complaint fails to state a claim under FOIA for the release of Volume II"); *American Oversight v. U.S. Dep't of Justice*, 779 F. Supp. 3d 40, 43 (D.D.C. 2025) ("DOJ lacks discretion to release Volume II while subject to a court order prohibiting it from doing so. . . . FOIA does not require DOJ or any other agency to violate a court order, so American Oversight's use of it to collaterally attack another court's injunction is misguided and unavailing."). The government is thus incorrect in asserting that the Knight Institute "skipped" filing a lawsuit to enforce its FOIA rights. U.S. Br. at 24. Once the injunction is lifted, the Knight Institute will sue DOJ to obtain Volume II under FOIA, which is precisely the mechanism for judicial review that the statute provides.

Appellees' reliance on *United States v. Alcatel-Lucent France, SA* and *United States v. Moussaoui* illustrates the misunderstanding. U.S. Br. at 22–24; Defs. Br. at 39–40. In those cases, courts barred crime victims from intervening in criminal proceedings under the Crime Victims' Rights Act (CVRA). In *Alcatel-Lucent*, a crime victim asserted a statutory right to intervene in a sentencing proceeding to seek restitution. This Court found no "basis for reading an implied right of intervention into the CVRA," because the statute "do[es] not vest a victim with a substantive

interest in the outcome of a sentencing proceeding." *United States v. Alcatel-Lucent France, SA*, 688 F.3d 1301, 1306–07 (11th Cir. 2012) (per curiam). In *Moussaoui*, crime victims asserted a statutory right to intervene to obtain non-public discovery materials from the prosecution for use in their civil litigation against the defendants. 483 F.3d 220, 224–26 (4th Cir. 2007). The Fourth Circuit held that the CVRA was "unconcerned with victims' rights to file civil claims against their assailants." *Id.* at 235. Unlike the prospective intervenors in those cases, the Knight Institute is not asserting a statutory right to intervene, and it is not attempting to litigate its statutory claim in the criminal case. Instead, the Institute is seeking to intervene to lift the injunction preventing it from pursuing its statutory rights under FOIA in other forums.

Appellees' reliance on *United States v. Ruan* and *United States v. Couch*—which involved criminal forfeiture proceedings—is equally misplaced. In *Ruan*, the ex-wife of the criminal defendant claimed ownership of property seized after he was convicted. 814 F. App'x at 440–41. The district court ordered his assets forfeited, and his ex-wife, relying on her divorce decree, tried to intervene, claiming half of the forfeited property. *Id.* This Court held that the Fair Debt Collection Practices Act (FDCPA) provided the "proper means" for the ex-wife to "adjudicate her ownership interest in the transferred property." *Id.* at 442. In *Couch*, a *qui tam* relator moved to intervene in forfeiture proceedings, asserting a right to some of the forfeited assets.

8

906 F.3d 1223, 1226 (11th Cir. 2018). She argued the False Claims Act alternate-remedy provision permitted her to intervene. This Court disagreed, interpreting the alternative remedy provision's general terms in light of three criminal forfeiture statutes that expressly barred intervention. *Id.* at 1228. In this case, by contrast, no statute provides a mechanism for third parties to challenge the district court's injunction, and no statute prohibits intervention. Instead, the district court's injunction prevents the Institute from vindicating its rights under FOIA, effectively nullifying them. The Institute's motion to intervene is its only avenue for challenging the injunction so that the Institute can pursue its statutory rights under FOIA.

III.    **Volume II is subject to the presumptive public right of access under the common law and the First Amendment, and that presumption cannot be overcome in this case.**

   A.    **Volume II is a "judicial record" subject to the presumptive public right of access under the common law.**

Appellees' arguments that Volume II is not a judicial record subject to the common law right of access conflate two distinct rules this Court has set forth. The first governs documents filed with the court, and the second governs documents submitted to but not formally filed with the court. Documents filed with the court are subject to the common law right of access if they are "'filed in connection with any substantive pretrial motion, unrelated to discovery.'" *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1362 (11th Cir. 2021) (quoting *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007)). The motion need not be

9

dispositive; any motion "presented to the court to invoke its powers or affect its decisions" is subject to the public right of access. *Id.* Documents not filed with the court qualify as judicial records if they are submitted in connection with any substantive pretrial motion, unrelated to discovery, and are "integral to the judicial resolution of the merits in any action taken by that court." *Id.* (quoting *Advance Local Media*, 918 F.3d at 1167).

Volume II qualifies as a judicial record under the rule that applies to unfiled documents: it was submitted to the district court for *in camera* review in connection with the Emergency Motion—a substantive motion unrelated to discovery—and it was integral to the district court's resolution of that motion, which is the relevant "action taken by th[e] court." *Advance Local Media*, 918 F.3d at 1167. Appellees resist that conclusion on four grounds: that the Emergency Motion was not "substantive"; that the proceeding was a discovery proceeding and Volume II discovery material; that the district court's *in camera* review cannot count; and that a ruling for the Institute would open a loophole. None of these arguments withstands scrutiny.

Appellees do not dispute the underlying facts. The district court ordered DOJ to deliver Volume II to chambers to "facilitate" the court's consideration of the Emergency Motion; the court reviewed Volume II *in camera*; it discussed Volume II with the parties at the January 17, 2025 hearing in open and closed sessions; and

10

it explained that its "independent judicial review" of Volume II was "important to make a considered determination" of the question presented. Dkt. 705; Dkt. 714 at 5 & n.8.

The government's principal argument is that the Emergency Motion was not substantive because it did not "require judicial resolution of the merits of an action," which the government interprets to mean the merits of the criminal case. U.S. Br. at 36 (quoting *Callahan*, 17 F.4th at 1362). The Emergency Motion cannot be substantive, the government says, because "the district court had dismissed the indictment six months earlier." *Id.* at 31–32. But that argument is foreclosed by this Court's decisions in *Romero* and *Callahan*, which make clear that a substantive motion need not be "dispositive" for the common law presumption to attach. *Romero*, 480 F.3d at 1246; *Callahan*, 17 F.4th at 1362.

The reasoning and outcome of *Romero* are illustrative. The defendants there—a U.S. coal mining company and its Colombian subsidiary—were sued under the Alien Tort Claims Act for hiring paramilitaries to kill and torture union members at Colombian coal mines. 480 F.3d at 1238. After the district court denied their motion to dismiss on political-question and international-comity grounds, and barred the parties from communicating with the State Department absent the court's permission, the plaintiffs moved for leave to submit two declarations to that agency. *Id.* at 1238–40. The district court sealed the declarations and later sealed the

11

plaintiffs' motion for reconsideration, holding that the sealed materials were not subject to the common law right of access because no dispositive motion was before the court. *Id.* at 1240. This Court reversed: "[a] motion that is 'presented to the court to invoke its powers or affect its decisions,' whether or not characterized as dispositive, is subject to the public right of access." *Id.* at 1245.

The government argues that the motions at issue in *Romero* were "substantive" because they "directly implicated" the defendant's political question doctrine and international comity defenses, and thus "directly concerned whether the case would continue or yield as the defendant hoped." U.S. Br. at 38. But nowhere in *Romero* does this Court tie the presumption of access to the motions' bearing on the defendant's defenses. This Court was clear—it was enough that the motions "invoke[d] [the court's] powers or affect[ed] its decisions," *Romero*, 480 F.3d at 1246, which is precisely what the Emergency Motion did here. Furthermore, granting the motions in *Romero* would not have resolved anything about those defenses. It would only have allowed the plaintiffs to submit declarations to the State Department.

The government next argues that the Emergency Motion is not substantive because it is "akin to a discovery motion seeking to protect against the wrongful disclosure of discovery." U.S. Br. at 40. But in filing the Emergency Motion, Nauta and De Oliveira did not seek to compel or resist the production of anything. Nor

12

could they, because, as the government points out, "the district court had dismissed the indictment six months earlier." *Id.* at 31–32. As in *Romero*, "[t]he object of the motion . . . was not discovery." 480 F.3d at 1246. Instead, the Emergency Motion asked the district court to affirmatively bar the executive branch from disseminating Volume II—within the executive branch itself, to senior members of Congress, and to the public. Dkt. 679 at 1, 24. According to the district court, the motion required it to "to make a considered determination" regarding "whether review of substantive case information by Congress, during the pendency of a criminal proceeding, accord[ed] with Defendants' constitutional rights, applicable law, and [the district court's] rules." Dkt. 714 at 5 n.8.

Nor does Volume II constitute discovery material. U.S. Br. at 40–41; Defs. Br. at 46–47. It is the Special Counsel's final report to the Attorney General, prepared under 28 C.F.R. § 600.8(c). The government acknowledges as much: Volume II "was prepared for the Attorney General of the United States, 28 C.F.R. § 600.8(c), *not for use in this criminal case*." U.S. Br. at 31 (emphasis added). That cannot be squared with its later insistence that "[t]here is also no meaningful distinction between Volume II and general discovery materials." U.S. Br. at 40. This claim is simply wrong: No party produced Volume II in discovery; no party obtained it under Fed. R. Crim. P. 16; Defendants never had a copy, Dkt. 760 at 17 n.15; and it did not exist until well after the indictment was dismissed. Dkt. 740 at 11. That

13

Volume II and the government's discovery productions to Defendants share a common source—the Special Counsel's investigative files—does not transform Volume II into discovery.

Even if Volume II contains information deemed to be discovery material, that does not disqualify Volume II from being a judicial record. This Court held in *Chicago Tribune* that "material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right." 263 F.3d at 1312 (emphasis added); *see also Callahan*, 17 F.4th at 1362 ("[T]hough discovery materials do not automatically qualify as judicial records subject to the common-law right of access, they take on that status once they are filed in connection with a substantive motion."). Volume II was submitted to the district court in connection with a substantive motion and thus qualifies as a judicial record even it is deemed to contain discovery material.

There is also no merit to the government's argument that "[t]he same rationale that exempts discovery from the public applies" to Volume II, because "[l]ike the gathering of discovery, the preparation of a Special Counsel's report is 'essentially a private process.'" U.S. Br. at 40 (quoting *Advance Local Media*, 918 F.3d at 1167). The phrase "essentially a private process" comes from *Advance Local Media*. The government omits the phrase that follows, which is the one that matters: "discovery

14

is 'essentially a private process' meant to 'assist trial preparation.'" 918 F.3d at 1167 (emphasis added) (quoting *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986)). Discovery is an exchange between adverse litigants undertaken solely to prepare for trial. A Special Counsel's report is neither: it is the government's account, addressed to the Attorney General, of its own exercise of prosecutorial power, and its purpose is not to prepare for trial but to explain "the prosecution or declination decisions reached by the Special Counsel," 28 C.F.R. § 600.8(c). And such reports are routinely made public, rebutting any claim that they are anything like the "private process" of discovery.

Finally, Defendants' reliance on cases involving a "district court's *in camera* inspection of the government's investigative file to determine if it contained *Brady* material" is misplaced, because that is "a quintessential discovery proceeding." *United States v. Nickens*, 809 F. App'x 584, 591 (11th Cir. 2020) (per curiam); *see also United States v. Wolfson*, 55 F.3d 58, 61 (2d Cir. 1995). *Brady* material must be turned over as part of discovery, and a district court's review of files to enforce that obligation is of course a part of discovery.

Appellees' argument that the district court's *in camera* review cannot count fares no better. They argue that the court's *in camera* review of Volume II is not relevant to whether the common law right attaches, citing this Court's statement in *Callahan* that it has "consistently rejected any test that would make a document's

15

status as a judicial record dependent upon 'whether it played a discernible role in the resolution of the case' or that would require us to determine 'the actual role the document played.'" *Callahan*, 17 F.4th at 1362; *see* U.S. Br. at 41; Defs. Br. at 52. But this statement in *Callahan* was addressing documents *filed with the court*. 17 F.4th at 1363. The *Callahan* Court went on to explain that *Advance Local Media* "expanded the definition of judicial records to include a narrow class of documents not formally filed with the court," writing that these documents are judicial records if they are "integral to the judicial resolution of the merits in any action taken by that court." *Id.* Thus, for unfiled documents like Volume II, the role the document played in the court's decision-making is directly relevant in determining whether the document is subject to the common law right of access.

Echoing the district court, Appellees emphasize that none of the parties voluntarily submitted Volume II to the court. U.S. Br. at 35; Defs. Br. at 55. But this Court's precedent makes clear that there is no voluntary submission requirement. In *Newman v. Graddick*, this Court held that the common law right of access applied to lists of inmates that "the district court ordered the Department of Corrections to submit." 696 F.2d at 799. In *Advance Local Media*, Alabama produced its protocol only after the court "notified the parties that it would need to review" it. *Hamm v. Dunn*, No. 17-CV-02083, 2018 WL 2431340, at *1 (N.D. Ala. May 30, 2018). If

16

anything, a document the court itself compelled to be submitted has a stronger claim to the presumption than one a party chose to place before it.

Appellees' remaining objection is consequentialist. The government warns that "a document cannot become a judicial record for right-of-access purposes simply because the question of its release becomes litigated," and that a contrary holding would create a "legal loophole" and "be a poison pill for litigants seeking to prevent the wrongful dissemination of information." U.S. Br. at 20, 33. The warning is misplaced. The Emergency Motion was not a discovery motion seeking a protective order against the disclosure of confidential material produced in discovery. As the government itself emphasizes, "Volume II was not the subject of the criminal case," and "the district court had dismissed the indictment six months earlier." U.S. Br. at 31–32. Holding that Volume II is a judicial record is fully consistent with *Romero*, *Advance Local Media*, and *Callahan*, and poses no more risk to protective orders than did this Court's conclusion that the protocol in *Advance Local Media* was a judicial record. Indeed, it is the government's argument that would create a loophole by allowing litigants to enlist federal courts in the suppression of information while disabling the common law and constitutional guarantees that give judicial authority its legitimacy.

*In re IBM Arbitration Agreement Litig.*, 76 F.4th 74 (2d Cir. 2023), is of no help to the government. U.S. Br. at 33. In fact, it undermines that argument by

demonstrating that the proper safeguard against opportunistic filings lies in the good-cause balancing test after the right attaches—not the determination of whether the right attaches in the first instance. The Second Circuit explained that "courts should consider personal motives" at the "balancing step of the inquiry, in connection with any asserted privacy interests, based on an anticipated injury as a result of disclosure." 76 F.4th at 86 (citation omitted). The court went on to hold that the presumption of access was outweighed by the federal policy favoring arbitral confidentiality and the "impropriety" of counsel's attempt to evade the agreement. *Id.*

The government's *Mazars* analogy, U.S. Br. at 34, fails for a more basic reason still: no one there sought access to judicial records. *Mazars* concerned a legislative committee's subpoena to third-party custodians for the President's personal financial records—an interbranch dispute over Congress's investigative authority—not the public's right of access to judicial records. *See Trump v. Mazars USA, LLP*, 591 U.S. 848, 856 (2020).

Volume II is a judicial record under this Court's rule governing documents submitted to but not formally filed with the court. It was submitted in connection with a substantive motion unrelated to discovery, and it was integral to the district court's resolution of that motion. The common law presumption of access attaches.

18

**B.      Volume II is subject to the presumptive public right of access under the First Amendment.**

As the Knight Institute explained in its opening brief, Volume II is also subject to the First Amendment right of access. It was submitted to the district court in connection with the hearing on Nauta and De Oliveira's Emergency Motion, and that proceeding was itself subject to the First Amendment right under the Supreme Court's "experience and logic" test. Knight Br. at 35–48. Defendants say the district court "appl[ied] the experience and logic tests for the purposes of its First Amendment analysis," Defs. Br. at 63, but the district court conducted no First Amendment analysis at all. It rejected the First Amendment right of access based solely on its conclusion that Volume II is not a "judicial record" subject to the common law right of access, Dkt. 760 at 15, and mentioned the experience and logic test only in a parenthetical to a case citation, *id.* at 9.

Appellees do not apply the test either. The government does not even mention it, arguing instead that the First Amendment right of access applies only to judicial "proceedings," not documents submitted in connection with those proceedings. U.S. Br. at 45–46. That is not the law of this Circuit. In *United States v. Ochoa-Vasquez*, this Court applied the First Amendment right of access to plea agreements, sentencing memoranda, and downward-departure motions. 428 F.3d 1015, 1028–31 (11th Cir. 2005). It has since described the right as reaching "court documents," subject to a presumption of openness that a party may overcome only by showing

19

"an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *United States v. Castillo*, 730 F. App'x 892, 893 (11th Cir. 2018) (per curiam) (quoting *Ochoa-Vasquez*, 428 F.3d at 1030). *Castillo* applied that presumption to a post-trial notice and affidavit submitted to the court *in camera. Id.*

Defendants do not dispute that the First Amendment right of access applies to documents submitted to a district court in connection with proceedings that are themselves subject to that right. They argue, however, that the Emergency Motion proceedings fall within recognized exceptions to the First Amendment right of access for discovery motions and grand jury proceedings. Defs. Br. at 56–63. Defendants' argument that the Emergency Motion is a discovery motion and that Volume II is discovery material fails for the reasons already given with respect to the common law right of access. Defendants rely largely on the same authorities. Their reliance on *United States v. Corces* is equally misplaced, because it involved the *in camera*, *ex parte* review of documents to determine whether they had to be disclosed to the defense "under *Brady* or the Jencks Act." No. 92-28-CR-T-17B, 1997 WL 447979, at *2 (M.D. Fla. July 28, 1997), which, as already noted, is a "quintessential discovery proceeding." *Nickens*, 809 F. App'x at 591.

Defendants fare no better in arguing that the Emergency Motion proceedings are exempt from the First Amendment right of access because they concerned the

20

potential disclosure of grand jury material. Defs. Br. at 61–63. As Defendants concede, the Emergency Motion proceedings concerned a version of Volume II that was redacted by the Special Counsel to remove grand jury material. If any Rule 6(e) material in Volume II remains unredacted, it should be addressed through additional targeted redactions, not the wholesale suppression of Volume II. Knight Br. at 46–48; Knight Supp. Br. at 11–12. Indeed, at the January 17, 2025 hearing on the Emergency Motion, the district court discussed with the parties whether additional Rule 6(e) material would need redaction before Volume II could go to Members of Congress. Dkt. 770 (Jan. 17, 2025 Hr'g Tr.) at 14:23–17:12; 22:9–23:4; 34:9–37:8; *see also* Defs. Br. at 19–20; U.S. Br. at 10.

Volume II is therefore subject to the First Amendment right of access as well. And because that right applies, the presumption may be overcome only by a showing that suppression is "necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest," *Globe Newspaper*, 457 U.S. at 607—a showing no Appellee has attempted.

### C. The presumptive right of access under the common law and the First Amendment has not been overcome.

No Appellee argues that the presumption of access is overcome. That silence is dispositive. Once the presumption of access attaches, the burden shifts to the party resisting disclosure. "The common law right of access may be overcome by a showing of good cause," and that showing rests on "the party seeking to keep the

information confidential." *Romero*, 480 F.3d at 1246; *accord Callahan*, 17 F.4th at 1362–63. The First Amendment standard is more demanding still: suppression must be necessitated by a compelling governmental interest and narrowly tailored to serve it. *Globe Newspaper*, 457 U.S. at 607; *see Ochoa-Vasquez*, 428 F.3d at 1030. The district court never reached those inquiries. Having held that no presumption attached under either the common law or the First Amendment, it had no occasion to weigh the public's interest in access against any countervailing interest, and it did not do so. Defendants Nauta and De Oliveira addressed the common law balancing of interests below; Defendant Trump did not and neither did the government. On appeal, no Appellee—neither the government nor Defendants—addresses the balancing of interests under the common law or the First Amendment, or argues that any interest is sufficient to overcome the presumption.

Notwithstanding that silence, the government asks this Court either to affirm on the alternative ground that the district court's reasons for permanently enjoining DOJ from releasing Volume II "would also support the denial of intervention," U.S. Br. at 43, or to remand so the district court may "directly evaluate the good-cause factors" in the first instance, U.S. Br. at 43 n.15. Neither course is open to this Court, because Appellees have abandoned the good-cause question on appeal.

The failure to raise an issue in an initial brief on appeal is considered a forfeiture of the issue. *United States v. Campbell*, 26 F.4th 860, 873–74 & n.7 (11th

22

Cir. 2022) (en banc). The rule applies with equal force to an appellee. Although an appellee may urge affirmance on any basis supported by the record, *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007), it nonetheless "abandons any position that it fail[s] to list or otherwise state . . . as an issue on appeal." *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 821 n.4 (11th Cir. 2020) (citation omitted). Nor does having pressed a point below preserve it here.

Appellees' abandonment is doubly established. The government never addressed the balancing of interests in the district court, and so had nothing to carry forward. *See Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1110–11 (11th Cir. 2020); Knight Br. at 39 n.31. Defendants addressed it below only to assert, in a single sentence, that "[t]here is no less restrictive alternative to keeping the document private," Dkt. 739 at 16—an assertion too conclusory to preserve the argument. *Ruckh*, 963 F.3d at 1110–11; Knight Br. at 47. And neither made the argument here. Because no Appellee argued in its brief that the presumption of access has been overcome—by a showing of good cause, a compelling interest, or otherwise—they have abandoned any argument to that effect. This is abandonment by choice, not oversight. Appellees had the district court's orders, the Institute's briefs, and every incentive to defend the suppression of Volume II on the merits. They elected not to.

That abandonment defeats the government's request for alternative affirmance. The rule that this Court "may affirm on any ground supported by the

23

record," *PDVSA US Litig. Tr. v. Lukoil Pan Americas LLC*, 65 F.4th 556, 562 (11th Cir. 2023), does not license the Court to construct a ground no party has briefed. *See United States v. Sineneng-Smith,* 590 U.S. 371, 376 (2020). Nor can the government fill the gap by pointing to Dkt. 714 and Dkt. 779. Those orders catalogue what Volume II contains; they do not weigh the public's interest in access against any interest in confidentiality, and they were entered in a different posture—to address whether Volume II could be shared with Members of Congress while an appeal was pending. A description of a document's contents is not a good-cause balancing, and there is no such balancing in this record for this Court to affirm.

For the same reason, there is no basis to remand. A court of appeals decides the appeal on the arguments the parties properly present; it does not remand to afford a party a fresh opportunity to litigate an issue that party has abandoned. The government's fallback request for a remand "to directly evaluate the good-cause factors," U.S. Br. at 43 n.15, is in truth a request for a second chance to make an argument it never made—one that it abandoned first in the district court, and now here. The predicate for a remand is a live, preserved dispute that requires resolution below. There is none: with the burden-bearing parties having abandoned the only issue a remand could address, the presumption of access stands unrebutted.

If this Court concludes that it must independently consider the balance of interests to decide whether the presumption of access has been overcome—

24

notwithstanding Appellees' silence—it should do so now without remand, and it should resolve the balance in favor of disclosure. A remand is unnecessary to resolve the balance of interests in disclosure in this case. There is no question that this Court has the authority to reach and resolve a legal question that the court below never reached. *See, e.g., Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1266 n.13 (11th Cir. 2000); *Taylor v. Food World, Inc.*, 133 F.3d 1419, 1423 n.2 (11th Cir. 1998); *Fla. Agency for Health Care Admin. v. Adm'r for Ctrs. for Medicare & Medicaid Servs.*, 161 F.4th 765, 780 n.4 (11th Cir. 2025). Doing so here would be particularly appropriate given that the questions in issue—whether the balance of interests favors disclosure and whether any redactions are narrowly tailored to the interests in closure—are purely legal questions. Moreover, the record on this issue is fully developed: the parties have described Volume II's contents and the district court twice catalogued them. Dkt. 714; Dkt. 779. The Court is thus equipped to fully resolve the Institute's claims for relief, and a remand would only further delay a matter pending since February 2025—and the case would, in all likelihood, only end up back in this Court after yet another appeal.

As the Institute explained in its opening brief, on the merits, the balance is not close. Knight Br. at 39–46. The D.C. Circuit's recent decision in *Heritage Found. v. U.S. Dep't of Justice* underscores the strong public interest in the disclosure of Volume II. No. 26-5235 (D.C. Cir. July 20, 2026) (per curiam), available at

25

https://perma.cc/TX8W-VQMS. The court found that "[t]he public has a 'weighty'

and 'significant' interest in 'shining a light' on the Special Counsel's investigation

of a former Vice President for alleged mishandling and disclosure of classified

information." *Id.*, slip op. at 3 (quoting *Citizens for Resp. & Ethics in Wash. v. U.S.

Dep't of Justice*, 746 F.3d 1082, 1092–93 (D.C. Cir. 2014)). The court reasoned that

"[w]hen a highly visible investigation of a prominent public figure ends in a decision

not to charge, the public has a strong interest in evaluating 'whether the government

had the evidence but nevertheless pulled its punches.'" *Id.* (quoting *Citizens for

Resp. & Ethics in Wash.*, 746 F.3d at 1093). Here, where charges were brought and

the prosecution of the then-former president ensued, the public has a strong interest

in evaluating the Special Counsel's decision to file charges and to proceed with the

prosecution.

## IV.    The Permanent Injunction barring the Institute's FOIA rights should be vacated because the district court's justifications lack merit.

In its Supplemental Opening Brief, the Knight Institute explained why the

district court's rationales for entering the Permanent Injunction are without merit.

Knight Supp. Br. at 7–13. No Appellee defends those rationales. The government

does not defend the Permanent Injunction Order; it argues only that "[t]his Court

lacks jurisdiction to address whether the district court erred in precluding release of

Volume II." U.S. Br. at 48. Defendants do not defend it either; they argue only that

"[e]ven if this Court determines that the District Court abused its discretion in

26

denying any motion to intervene (it did not), the Court should remand to the District Court for further proceedings." Defs. Br. at 73. Neither the government nor Defendants engage the four rationales the district court actually gave.

As explained below, Appellees are wrong about jurisdiction, *see infra* Part V, and the district court's rationales fail for the reasons given in the Institute's Supplemental Opening Brief, Knight Supp. Br. at 7–13—reasons no Appellee contests.

Accordingly, this Court should vacate the Permanent Injunction.

## V.    This Court has jurisdiction to grant complete relief.

### A.    Reversal of the intervention denials permits review of the orders injuring the Institute.

The parties agree this Court's jurisdiction follows the anomalous rule: it is provisional at the outset, and it becomes definitive once the Court concludes that intervention was wrongly denied. *Petition of Tribune Co.*, 784 F.2d 1518, 1521 (11th Cir. 1986); U.S. Br. at 49. And the government agrees that a nonparty may obtain review of the orders that injure it once "the denial of intervention is reversed." U.S. Br. at 49 (quoting *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 679 (2025)). That is the Institute's position exactly. However, Appellees dispute is whether the denials of intervention should be reversed—and for the reasons given above and in the Institute's opening briefs, they should. *See supra* Parts II–III; Knight Br. at 22–35; Knight Supp. Br. at 5.

27

Once the denials are reversed, the rest follows. The Institute sought intervention for one purpose: to challenge the orders suppressing Volume II. Its first motion asked the district court to rescind the Jan. 21, 2025 Injunction and to post the redacted version of Volume II on the public docket; its Second Intervention Motion sought a stay of the very proceedings that produced the Permanent Injunction Order. Dkt. 721; Dkt. 775. With the Institute a party, those orders—the source of its injury and the subject of both appeals—are properly before this Court. The government cannot resist that conclusion while simultaneously urging the Court to affirm based on the district court's rationales for issuing the Permanent Injunction. U.S. Br. at 42–45. The same order cannot be beyond this Court's reach when the Institute challenges it, yet available to the government as a ground for affirmance. The anomalous rule is the path to complete relief, not an obstacle to it.

Complete relief here means vacating the Permanent Injunction and directing the district court to place on the public docket the redacted copy of Volume II in its possession. When a court concludes that intervention was wrongly denied, the anomalous rule does not merely permit review—it empowers this Court to correct the error. *Stone v. First Union Corp.*, 371 F.3d 1305, 1308–09 (11th Cir. 2004). The rule exists because a denial of intervention is ordinarily an interlocutory order in continuing litigation, not a final decision under 28 U.S.C. § 1291, *see id.* at 1308; and its usual disposition—reverse and remand so the wrongly excluded intervenor

28

may join the ongoing case—is tailored to that posture. That posture is absent here. The criminal case ended in February 2025, and since then the sole remaining issue has been public access to Volume II. Simply remanding to allow the Institute to participate in the proceedings below would not correct the district court's errors. The only way to correct them is for this Court to vacate the Permanent Injunction and resolve the public right of access question. A remand is also unwarranted and unnecessary because Appellees bore the burden of overcoming the presumption of access and abandoned it on appeal, *see supra* Part III.C, and they likewise declined to defend the rationales underlying the Permanent Injunction Order, *see supra* Part IV.

### B.   The government's notice-of-appeal argument disregards the 2021 amendments to Federal Rule of Appellate Procedure 3(c).

The government recognizes that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment," U.S. Br. at 48 (citation omitted), and yet faults the Knight Institute for failing to appeal the Permanent Injunction Order, *id.* at 50–51. According to the government, because the Institute's notices of appeal designated only the orders denying intervention, this Court's review is confined to those orders. *Id.* (citing *Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324, 1343 (11th Cir. 2015); *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 722 (11th Cir. 2020)). But the government's authorities applied the pre-2021 version of Federal Rule of Appellate Procedure 3(c),

29

under which some courts—"using an *expressio unius* rationale"—treated the designation of a particular order on a notice of appeal as a limit on the scope of the appeal. Fed. R. App. P. 3(c) advisory committee's note to 2021 amendment. The 2021 amendments were adopted for the express purpose of abrogating that line of authority. *See* 16A *Wright & Miller's Federal Practice and Procedure* § 3949.4 (5th ed. Apr. 2026 Update).

The current rule forecloses the government's position twice over. Rule 3(c)(6) provides that an appellant may limit its appeal "only . . . by expressly stating that the notice of appeal is so limited," and that "[w]ithout such an express statement, specific designations do not limit the scope of the notice of appeal." Fed. R. App. P. 3(c)(6). Neither of the Institute's notices contains any statement of limitation. Dkt. 762; Dkt. 783. And Rule 3(c)(4) provides that a notice "encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order," and that "[i]t is not necessary to designate those orders in the notice of appeal." Fed. R. App. P. 3(c)(4).

The government's only answer is that the intervention denials "were not final judgments into which other orders merged." U.S. Br. at 50. That response misunderstands both the rule and the Institute's position. Rule 3(c)(6) applies to every notice of appeal, not only those designating final judgments; whatever the outer bounds of merger, the Institute's designations cannot narrow its appeals absent

an express limitation. And the Institute does not need merger doctrine to reach the Jan. 21, 2025 Injunction Order or the Permanent Injunction Order. As the government itself explains, a nonparty's appeal from the denial of intervention is the vehicle through which the underlying orders become reviewable. U.S. Br. at 49 (quoting *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 679 (2025)). The Institute designated precisely the orders that a nonparty can appeal. *See supra* Part V.A. That is not a defect; it is the anomalous rule working as designed. Indeed, the Second Intervention Motion's very object was a stay of the proceedings that produced the Permanent Injunction Order, so review of its denial necessarily entails that order. *See infra* Part V.C.

The Institute's notices left no doubt about what it seeks—access to Volume II and rescission of the orders suppressing it. Rule 3(c) no longer permits the "trap for the unwary" the government asks this Court to spring. Fed. R. App. P. 3(c) advisory committee's note to 2021 amendment.

**C.    The district court lacked jurisdiction under *Griggs* to enter the Permanent Injunction Order, and this Court should reach the merits rather than remand.**

As the Institute's Supplemental Opening brief explained, Knight Supp. Br. at 5–7, a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). The aspect of this case involved in the First Appeal is public access

31

to Volume II. Yet while that appeal was pending, the district court entertained and granted unopposed (by the parties in front of it) motions seeking Volume II's permanent suppression—resolving anew the central question this Court had been asked to decide, in proceedings from which the Institute remained excluded. Dkt. 772; Dkt. 774; Dkt. 779. Under *Griggs*, the district court lacked jurisdiction to do so. Knight Supp. Br. at 5–7.

The government's answer is that the Permanent Injunction Order was "collateral" to the First Appeal. U.S. Br. at 51; *see also* Defs. Br. at 71–72. The government concedes, however, that "collateral" matters are those that are "separate and distinct from the questions presented on appeal." U.S. Br. at 52 (quoting *Burke v. Ocwen Fin. Corp.*, No. 21-12160, 2022 WL 599153, at *1 (11th Cir. Mar. 1, 2022)). An order that permanently adjudicates the very subject of a pending appeal—here, whether Volume II may be released—is not "collateral" to that appeal. Nor can the order be recast as mere "enforce[ment]" of the Dismissal Order and the Protective Order, as the district court suggested. Dkt. 779 at 7–8 n.4. Neither order supports the Permanent Injunction Order, and *Griggs* applies to the aspects of the case involved in the appeal regardless of whether the district court ties its ruling to earlier orders. Knight Supp. Br. at 6.

The ordinary remedy for a *Griggs* violation is vacatur—as the government acknowledges. U.S. Br. at 53 n.18. But as the Institute has explained, vacatur

followed by remand would invite the district court simply to reissue the order, forcing a third appeal while Volume II remains suppressed—a result that would "defeat [the] purpose of achieving judicial economy" the *Griggs* rule serves. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 97 (3d Cir. 1988); Knight Supp. Br. at 6–7. The Court should instead reach the merits—by declining to apply *Griggs* on prudential grounds or by treating the Permanent Injunction Order as an indicative ruling under Fed. R. App. P. 12.1. *See United States v. Lee*, No. 23-11975, 2025 WL 1912444, at *2 (11th Cir. July 11, 2025); Knight Supp. Br. at 7 n.1. And on the merits, this Court should vacate the Permanent Injunction for the reasons given in Part III.

## Conclusion

For these reasons, this Court should reverse the district court's denials of the Knight Institute's motions to intervene, vacate the Permanent Injunction, and direct the district court to post on the public docket the redacted copy of Volume II in its possession.

July 27, 2026

David Buckner
Buckner + Miles
2020 Salzedo Street
Suite 302
Coral Gables, FL 33134
(305) 964-8003

Respectfully submitted,

 /s/ Scott Wilkens

Scott Wilkens
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute at
    Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Appellant Knight First
    Amendment Institute at Columbia
    University*

34

## Certificate of Compliance

This brief complies with the Court's May 26, 2026 Order (No. 25-14507, ECF No. 68), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 8,261 words. This brief also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6) because it was prepared using Microsoft Word in 14-point Times New Roman font, a proportionally spaced typeface.

Dated: July 27, 2026                                   */s/ Scott Wilkens*
                                                        Scott Wilkens

**Certificate of Service**

I hereby certify that on July 27, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated: July 27, 2026                    */s/ David Buckner*
                                         David M. Buckner

36